**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | |
|---|---|
| **BRIAN WALTON**<br>5047 Small Gains Way<br>Frederick, MD 21703<br>(Frederick County) | Case No. 25-cv-1948 |
| **DIONYSIOS TSIRKAS**<br>Vallejo, CA | **CLASS ACTION COMPLAINT** |
| **LYLE LIBERMAN**<br>Greenwich, CT | **JURY TRIAL DEMANDED** |
| **GRAHAM HULSEY**<br>Washington, DC | |
| **JOSEPH CONTOIS**<br>Jacksonville, FL | |
| **ADRIAN WASHINGTON**<br>Des Plaines, IL | |
| **SCOTT B. JOHNSON**<br>Minneapolis, MN | |
| and | |
| **MICAH MASON**<br>Spokane Valley, WA | |
| individually and on behalf of all others<br>similarly situated, | |
| Plaintiffs, | |
| v. | |
| **W.L. GORE & ASSOCIATES**,<br>The Corporation Trust Incorporated<br>2405 York Road, Suite 201<br>Lutherville Timonium, Maryland 21093<br>(Cecil County) | |
| Defendant. | |

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................................................1

II.  JURISDICTION AND VENUE .............................................................................8

III.  THE PARTIES.......................................................................................................13

    A.  Plaintiffs....................................................................................................13

        1.  Maryland Plaintiff.........................................................................13

        2.  California Plaintiff.........................................................................14

        3.  Connecticut and New York Plaintiff.............................................15

        4.  District of Columbia Plaintiff .......................................................17

        5.  Florida Plaintiff.............................................................................18

        6.  Illinois Plaintiff.............................................................................19

        7.  Minnesota Plaintiff........................................................................20

        8.  Washington Plaintiff .....................................................................21

    B.  Defendant...................................................................................................22

IV.  FACTUAL ALLEGATIONS .................................................................................23

    A.  Gore-Tex Fabric is a waterproof, yet breathable, textile commonly used in outdoor clothing and gear. ......................................................................23

    B.  Gore-Tex Fabric is manufactured using PFAS, a "forever chemical" with a toxic legacy. ..............................................................................25

    C.  PFAS pose unique and devastating dangers to the environment. ..........................29

    D.  Gore has long been aware of the environmental harm posed by using PFAS. ..............................................................................................32

    E.  More recently, Gore faces multiple lawsuits by local stakeholders seeking damages related to PFAS containment and cleanup................................33

    F.  In response to significant concerns about environmental and health impacts, Gore promised consumers it was removing PFAS from its products and manufacturing processes. ................................................35

G.     Gore's Hang Tags for Gore-Tex Fabric provide Gore's stated but false commitment at point-of-sale regarding the ePTFE membrane and Gore's manufacturing processes. ...................................................38

H.     Gore misleads consumers by omitting material information about its use of PFAS in its products and during the manufacturing process for Gore-Tex Fabric. ..............................................................39

     1.     Gore hides from consumers its continued use of PFAS to manufacture its Gore-Tex Fabric. ............................................40

     2.     Gore's manufacturing processes have contaminated areas adjacent to its facilities with extremely high levels of PFAS. ..........................................................................................41

     3.     Gore products leach PFAS into the environment via ordinary use. .........................................................................42

     4.     Gore's "PFC* Free Laminate" label misleads consumers by unilaterally excluding ePTFE and PTFE. ..................................44

     5.     Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably. ................................................................45

I.     Gore knows that its environmental stewardship is material to consumers. ....................................................................48

J.     Gore's promotion of its purported commitment to environmental stewardship in its corporate literature evidences the materiality of the Common Omissions and Misrepresentations....................................50

     1.     Gore's "Sustainability Commitment" website promotes environmental stewardship and prominently features "green" images because Gore understood these claims to be material to a reasonable consumer. ............................................54

     2.     Gore keeps a YouTube channel with similar misleading claims about its environmental stewardship because Gore knows this information is material to a reasonable consumer. ........................................................................57

     3.     Senior Gore employees consistently reinforce Defendant's message that its commitment to environmental stewardship is synonymous to its commitment to performance because Gore knows this information is material to a reasonable consumer. ........................................................................58

K.    Gore's practices violate the FTC Green Guides and state consumer protection statutes. .................................................................................................59

L.    Gore has actively concealed the truth about the Common Omissions and Misrepresentations from consumers.............................................66

M.    Gore can easily remediate its current practices so that they become not misleading to consumers...........................................................................67

  1.    Gore-Tex can be manufactured without any detectable levels of PFAS. ...........................................................................................67

  2.    Gore can follow expert guidance on how to more accurately label its Gore-Tex products so they are not misleading to consumers..............................................................................68

N.    TOLLING OF THE STATUTES OF LIMITATIONS .......................................76

  1.    Discovery rule tolling .................................................................................76

  2.    Fraudulent concealment tolling..................................................................78

  3.    Estoppel.......................................................................................................78

V.    CLASS ACTION ALLEGATIONS .................................................................................78

VI.    CLAIMS FOR RELIEF .................................................................................................85

A.    Claim brought on behalf of the Maryland Class ........................................85

COUNT I VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT (MD. CODE, COM. LAW § 13-101, *ET SEQ.*) .....................................85

COUNT II FRAUDULENT CONCEALMENT (BASED ON MARYLAND LAW).........................................................................................................................86

B.    Claims brought on behalf of the California Class.......................................88

COUNT III VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, ET SEQ.)...................................88

COUNT IV VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500, ET SEQ.)..................................90

COUNT V VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *et seq.*)......................................92

COUNT VI FRAUDULENT CONCEALMENT (BASED ON CALIFORNIA LAW).........................................................................................................................93

C.     Claims brought on behalf of the Connecticut Class................................95

COUNT VII VIOLATION OF THE CONNECTICUT UNFAIR  TRADE
PRACTICES ACT (Conn. Gen. Stat. § 42-110A, *et seq*.) ................................95

COUNT VIII FRAUDULENT CONCEALMENT (BASED ON CONNECTICUT
LAW) ...........................................................................................................97

D.     Claims brought on behalf of the District of Columbia ("DC")............................99

COUNT IX CONSUMER PROTECTION PROCEDURES ACT (CPPA) (D.C.
Code § 28-3901 *et seq*.) ...........................................................................99

COUNT X FRAUDULENT CONCEALMENT (BASED ON DC LAW)................................100

E.     Claims brought on behalf of the Florida Class ....................................102

COUNT XI VIOLATION OF THE FLORIDA'S UNFAIR &  DECEPTIVE
TRADE PRACTICES ACT (Fla. Stat. § 501.201, *et seq*.) ................................102

COUNT XII FRAUDULENT CONCEALMENT (BASED ON FLORIDA LAW) ................105

F.     Claims brought on behalf of the Illinois Class....................................107

COUNT XIII VIOLATION OF THE ILLINOIS CONSUMER FRAUD  AND
DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1, *et seq*.
AND 720 ILCS 295/1A)................................................................107

COUNT XIV FRAUD BY CONCEALMENT (BASED ON ILLINOIS LAW)......................109

G.     Claims brought on behalf of the Minnesota Class ...............................111

COUNT XV VIOLATIONS OF MINNESOTA DECEPTIVE TRADE
PRACTICES; ENVIRONMENTAL MARKETING CLAIMS (MINN.
STAT. § 325E.41, *et seq*.)...........................................................111

COUNT XVI FRAUDULENT CONCEALMENT (BASED ON MINNESOTA
LAW) .......................................................................................114

H.     Claims brought on behalf of the New York Class ...............................116

COUNT XVII VIOLATION OF THE NEW YORK GENERAL BUSINESS
LAW (N.Y. GEN. BUS. LAW §§ 349-350)....................................................116

COUNT XVIII FRAUDULENT CONCEALMENT (BASED ON NEW YORK
LAW) .......................................................................................117

I.     Claims brought on behalf of the Washington Class............................119

COUNT XIX VIOLATION OF THE WASHINGTON CONSUMER
PROTECTION ACT (WASH. REV. CODE ANN. § 19.86.010, *et seq.*) ......................119

COUNT XX FRAUDULENT CONCEALMENT (BASED ON WASHINGTON
LAW) ...............................................................................................................121

    J.    Claims brought on behalf of the Alabama Class ..................................123

COUNT XXI VIOLATION OF THE ALABAMA DECEPTIVE TRADE
PRACTICES ACT (Alabama Code Section 8-19-1, et seq.)............................123

COUNT XXII FRAUDULENT CONCEALMENT (BASED ON ALABAMA
LAW) ...............................................................................................................124

    K.    Claims brought on behalf of the Alaska Class....................................126

COUNT XXIII VIOLATION OF THE ALASKA UNFAIR TRADE
PRACTICES AND CONSUMER PROTECTION ACT (Alaska Stat. Ann.
§ 45.50.471, *et seq.*)..........................................................................................126

COUNT XXIV FRAUDULENT CONCEALMENT (BASED ON ALASKA
LAW) ...............................................................................................................127

    L.    Claims brought on behalf of the Arizona Class ..................................129

COUNT XXV VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT
(ARIZONA REV. STAT. § 44-1521, *et seq*.) ..................................................129

COUNT XXVI FRAUDULENT CONCEALMENT (BASED ON ARIZONA
LAW) ...............................................................................................................131

    M.    Claims brought on behalf of the Georgia Class ..................................133

COUNT XXVII VIOLATION OF THE GEORGIA FAIR BUSINESS
PRACTICES ACT (Ga. Code Ann. § 10-1-390, et seq.) ................................133

COUNT XXVIII FRAUDULENT CONCEALMENT (BASED ON GEORGIA
LAW) ...............................................................................................................134

    N.    Claims brought on behalf of the Idaho Class......................................136

COUNT XXIX VIOLATION OF THE IDAHO CONSUMER PROTECTION
ACT (IDAHO CODE ANN. § 48-601, *ET SEQ.*) ..........................................136

COUNT XXX FRAUDULENT CONCEALMENT (BASED ON IDAHO LAW)...................138

    O.    Claims brought on behalf of the Indiana Class ...................................140

COUNT XXXI VIOLATION OF THE INDIANA DECEPTIVE CONSUMER
SALES ACT (Ind. Code § 24-5-0.5-3)............................................................140

COUNT XXXII FRAUDULENT CONCEALMENT (BASED ON INDIANA
LAW)..............................................................................................................141

P.    Claims brought on behalf of the Maine Class......................................143

COUNT XXXIII VIOLATION OF MAINE UNFAIR TRADE PRACTICES
ACT (Me. Rev. Stat. Ann. tit. 5, § 205-A, et seq) ...........................................143

COUNT XXXIV FRAUDULENT CONCEALMENT (BASED ON MAINE
LAW)..............................................................................................................143

Q.    Claims brought on behalf of the Massachusetts Class........................145

COUNT XXXV VIOLATION OF THE MASSACHUSETTS GENERAL LAW
CHAPTER 93(A) (Mass. Gen. Laws Ch. 93A § 1, et seq.)..............................145

COUNT XXXVI FRAUD BY CONCEALMENT (BASED ON
MASSACHUSETTS LAW).............................................................................146

R.    Claim brought on behalf of the Michigan Class .................................148

COUNT XXXVII VIOLATION OF THE MICHIGAN CONSUMER
PROTECTION ACT (MICH. COMP. LAWS § 445.903, ET SEQ.).............148

COUNT XXXVIII FRAUDULENT CONCEALMENT (BASED ON
MICHIGAN LAW).........................................................................................150

S.    Claims brought on behalf of the Montana Class.................................152

COUNT XXXIX VIOLATION OF THE MONTANA UNFAIR TRADE
PRACTICES  AND CONSUMER PROTECTION ACT OF 1973
(MONT. CODE ANN. § 30-14-101, ET SEQ.).................................................152

COUNT XL FRAUDULENT CONCEALMENT (BASED ON MONTANA
LAW)..............................................................................................................154

T.    Claims brought on behalf of the New Hampshire Class......................156

COUNT XLI VIOLATION OF THE NEW HAMPSHIRE CONSUMER
PROTECTION ACT (N.H. Rev. Stat. Ann. § 358-A:1, et seq.)......................156

COUNT XLII FRAUDULENT CONCEALMENT (BASED ON NEW
HAMPSHIRE LAW).......................................................................................157

U.    Claims on behalf of the New Mexico Class.........................................159

COUNT XLIII VIOLATION OF THE NEW MEXICO UNFAIR TRADE
PRACTICES ACT (N.M. STAT. ANN. §§ 57-12-1, *ET SEQ.*)......................................159

COUNT XLIV FRAUDULENT CONCEALMENT (BASED ON NEW
MEXICO LAW) ......................................................................................161

    V.      Claims brought on behalf of the Ohio Class ........................................163

COUNT XLV VIOLATION OF THE OHIO CONSUMER SALES PRACTICES
ACT (OHIO REV. CODE ANN. § 1345.01, *ET SEQ.*) ....................................163

COUNT XLVI FRAUDULENT CONCEALMENT (BASED ON OHIO LAW)......................165

    W.    Claims brought on behalf of the Pennsylvania Class............................167

COUNT XLVII VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE
PRACTICES  AND CONSUMER PROTECTION LAW (73 PA. CONS.
STAT. § 201-1, *ET SEQ.*)......................................................................167

COUNT XLVIII FRAUDULENT CONCEALMENT (BASED ON
PENNSYLVANIA LAW) ........................................................................168

    X.      Claims brought on behalf of the South Carolina Class........................170

COUNT XLIX VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE
PRACTICES ACT (S.C. CODE ANN. § 39-5-10, *ET SEQ.*) ..........................170

COUNT L FRAUDULENT CONCEALMENT (BASED ON SOUTH
CAROLINA LAW) ................................................................................172

    Y.      Claims brought on behalf of the Tennessee Class ...............................174

COUNT LI VIOLATION OF THE TENNESSEE CONSUMER PROTECTION
ACT (Tenn. Code Ann. § 47-18-101, *et seq*.) ..................................174

COUNT LII FRAUDULENT CONCEALMENT (BASED ON TENNESSEE
LAW) ................................................................................................176

    Z.      Claims brought on behalf of the Texas Class .....................................178

COUNT LIII VIOLATIONS OF THE TEXAS DECEPTIVE TRADE
PRACTICES AND CONSUMER PROTECTION ACT  (Tex. Bus. &
Com. Code § 17.4, *et seq*)...................................................................178

COUNT LIV FRAUDULENT CONCEALMENT (BASED ON TEXAS LAW)....................182

    AA.   Claims brought on behalf of the Utah Class .......................................183

COUNT LV VIOLATION OF THE UTAH CONSUMER SALE PRACTICES
ACT (UTAH CODE ANN. § 13-11-1, *ET SEQ.*)...........................................................183

COUNT LVI FRAUDULENT CONCEALMENT (BASED ON UTAH LAW) ......................185

BB.    Claims brought on behalf of the Vermont Class.....................................187

COUNT LVII VIOLATION OF THE VERMONT CONSUMER FRAUD ACT
(VT. STAT. ANN. TIT. 9, § 2451 *ET SEQ.*)....................................................187

COUNT LVIII FRAUDULENT CONCEALMENT (BASED ON VERMONT
LAW) ......................................................................................................................188

CC.    Claims brought on behalf of the West Virginia Class .........................190

COUNT LIX VIOLATION OF THE WEST VIRGINIA CONSUMER CREDIT
AND PROTECTION ACT (W. VA. CODE § 46A-1-101, ET SEQ.)...........................190

COUNT LX FRAUDULENT CONCEALMENT (BASED ON WEST
VIRGINIA LAW)......................................................................................................192

PRAYER FOR RELIEF ...........................................................................................................194

JURY DEMAND ......................................................................................................................195

Plaintiffs Brian Walton, Joseph Contois, Scott B. Johnson, Graham Hulsey, Lyle Liberman, Micah Mason, Dionysios Tsirkas, and Adrian Washington (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned attorneys, bring this Class Action Complaint against Defendant W.L. Gore & Associates (also referred to herein as "Gore" or "Defendant"). Plaintiffs allege the following based upon personal knowledge, as well as investigation by their counsel as to themselves, and as to all other matters, upon information and belief. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    INTRODUCTION

1.    Consumers increasingly care about the environmental impact of products when making purchasing decisions, with many stating they are willing to pay more for sustainable options and prioritize brands with environmentally conscious practices. Considering these trends, companies are increasingly using their point-of-sale ("POS") advertising and corporate literature to represent that their products and supply chains are environmentally responsible. W.L. Gore & Associates is no exception. Gore manufactures Gore-Tex Fabric,[1] a waterproof yet breathable material used in outdoor clothing and footwear.

2.    Gore spends considerable marketing resources to represent itself as an exemplary environmental steward while also promising that its products represent a sound choice for both reasonable consumers and the environment. For example, Gore's website and corporate literature inundate consumers with acknowledgments that sustainability is a "top" priority for the company, while also positioning environmental stewardship as one of Gore's founding principles. Gore makes these claims because it knows that preserving the environment matters to consumers. Below is an example of Gore's claims of environmental stewardship:

---

[1] Gore-Tex Fabric means material produced by Gore and consisting of an ePTFE (expanded polytetrafluoroethylene) based Gore-Tex membrane and/or a durable water treatment ("DWR") that contains PFAS (per- and polyfluoroalkyl substances).



3.      Gore also invites point-of-sale consumers to scan a QR code, which then directs them to the following environmental claims:



4.      And as a reflection of Gore's awareness that sustainability is material to consumers, Gore also reassures consumers that they can trust that their Gore-Tex Fabric is a sensible choice for those seeking outdoor adventure with a small ecological footprint:



RESPONSIBILITY

# OUR PRODUCTS ARE ENVIRONMENTALLY SOUND AND SAFE TO WEAR

For Gore's Fabrics Division, acting responsibly is a natural outgrowth of Gore's culture. We respect the environment and treat our associates and partners fairly.



As the GORE-TEX Brand, we take sustainability as seriously as we take performance.

 *"Being fair and responsible to the environment while offering durable products which provide the best in class level of protection lies at the very heart of our culture. This is our founders, Bill and Vieve Gore's, legacy, and we are proud to continue this tradition."* 

 ROSS MACLAINE
Gore Fabrics Division Sustainability Leader

5.      In addition to these corporate statements, Gore communicates the same messages in a consumer-facing manner at point-of-sale. The primary way Gore does so is via its distinctive "Hang Tags," or labels. Gore's Hang Tags display the company's logo and are attached to all products that are made with Gore-Tex Fabric. The Hang Tags are designed and produced by Gore who also then sends the Hang Tags to the garment manufacturer to affix to the finished product. The Hang Tags are oversized when compared to the size of the finished product and are affixed in a very prominent location (usually in front of the garment and often immediately next to the price tag). Because of their size and conspicuous location, Gore's Hang Tags must be removed prior to use. As such, all consumers are uniformly exposed to any misrepresentation or material omission included on Gore's Hang Tags. Gore typically provides product information and care instructions on its Hang Tags, with the expectation that they will be exposed to consumers at point-of-sale. A few examples of Gore's oversized Hang Tags are included below:

 



6.      Starting around 2018, Gore also began making environmental claims on its Hang Tags because Gore knew that environmental claims are material to consumers. More specifically, Gore began to state on the Hang Tags that it is "committed to sustainability" and that products made with Gore-Tex fabric were "environmentally sound." Examples of these statements can be found in the photographs below on the left-hand side. Gore also included a second Hang Tag that promised consumers that Gore-Tex Fabric was "PFC* Free," and that "no PFCs of Environmental Concern" were used "over the lifecycle of the product." Gore also explains that it accomplishes this goal via the use of "non-fluorinated materials." These statements can be found on the Hang Tag displayed below on the right-hand side. Gore produced and uniformly distributed the second Hang Tag because Gore also knows that these statements are material to consumers:







7.      There is a strong scientific consensus that PFC and PFAS are toxic, mobile, and persistent in the environment—and that their use in manufacturing causes extensive and long-lasting environmental contamination.[2] As such, Gore's statements promising that it is eliminating PFCs both in the product itself and in Gore's manufacturing process give consumers the overall impression that Gore is taking serious and measurable steps to reduce the environmental toll resulting from the manufacturing and sale of products with Gore-Tex Fabric.

8.      But Gore's impression is misleading and untrue. Instead, Gore actively conceals from consumers the following common omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses

---

[2] *Per- and Polyfluoroalkyl Substances (PFASs)*, UN Environment Programme, https://www.unep.org/topics/chemicals-and-pollution-action/pollution-and-health/persistent-organic-pollutants-pops/and (last accessed June 16, 2025); Sarah E. Hale, et al., *Persistent, mobile and toxic (PMT) and very persistent and very mobile (vPvM) substances pose an equivalent level of concern to persistent, bioaccumulative and toxic (PBT) and very persistent and very bioaccumulative (vPvB) substances under REACH*, Environmental Sciences Europe 32, 155 (Dec. 10, 2020), https://enveurope.springeropen.com/articles/10.1186/s12302-020-00440-4 (last accessed June 16, 2025); Ian T. Cousins, et al., *The High Persistence of PFAS is Sufficient for their Management as a Chemical Class*, Environ Sci Process Impacts (Jan. 5, 2021), https://pmc.ncbi.nlm.nih.gov/articles/PMC7784706/ (last accessed June 16, 2025).

consumers by using terms like PFAS, PFC, and PFC* interchangeably ("Common Omissions and Misrepresentations").

9.     Gore's use of the Common Omissions and Misrepresentations is even more deceptive as Gore has spent considerable marketing resources to represent itself as an environmental steward and its products as environmentally sound. As such, Gore knows that the Common Omissions and Misrepresentations were the types of content that a reasonable consumer would consider important at point-of-sale.

10.     Moreover, instead of coming clean to consumers about the environmental impact of Gore-Tex Fabric and Gore's manufacturing processes, Gore decided to deceive consumers by downplaying its environmental impact. And, as explained below by an official at the United States Environmental Protection Agency, Gore's deceptive conduct is not supported by most scientists, regulators, or other community stakeholders, and is likely to lead to even more environmental harm.

---

**From:** "Lindstrom, Andrew" <Lindstrom.Andrew@epa.gov>
**Date:** Tuesday, February 14, 2017 at 8:35 AM
**To:** Laurel Schaider <schaider@silentspring.org>, "Strynar, Mark" <Strynar.Mark@epa.gov>, Arlene Blum <arleneb@lmi.net>, Dave Andrews <dandrews@ewg.org>, "Balan, Simona@DTSC" <simona.balan@dtsc.ca.gov>, Thomas Bruton <tbruton@berkeley.edu>, Graham Peaslee <gpeaslee@nd.edu>
**Subject:** RE: Gore eliminating hazardous PFCs


Laurel,

I agree with your observation that this is the time to move beyond PFAS-containing apparel.

To me, this looks like a weak attempt to define themselves as better or not so bad while at the same time preserving the market share and brand name.

As long as they control the narrative, they pretty much have total control of this evolving situation and can string out the use and profits from their slightly adjusted products for a very long time. I don't think it is possible to make fluoropolymers without release on monomers, catalysts, or solubilizers.

The key question for me is who defines what "PFC of Environmental Concern" means?

I'm concerned about all PFAS. It's not Green Chemistry – they are immortal.

This is the time to move beyond PFAS in clothing and as many other products as possible.

It can be done. This is the same thing as our continued dependence on fossil fuels. They people who are invested in the status quo don't want real change.

Thank you,
Andy

11. Gore's deceptive conduct violates the federal "Guides for the Use of Environmental Marketing Claims" ("Green Guides").[3] Developed by the Federal Trade Commission ("FTC"), the Green Guides are designed to help marketers avoid making environmental marketing claims that are unfair or deceptive under Section 5 of the FTC Act, 15 U.S.C. § 45. The Green Guides also play a large role in state consumer protection law. At least twelve states[4] have laws that directly incorporate the standards set forth in the Green Guides as the legal standard for lawfully making certain environmental marketing claims.[5] And twenty-seven states and territories[6] have laws designating the FTC's interpretation in the Green Guides as persuasive authority for courts in assessing deceptive practices.

12. Plaintiffs therefore bring this case as a class action, on behalf of themselves and those similarly situated, seeking both injunctive relief under Rule 23(b)(2), forcing Gore to make accurate corrective disclosures, and under Rule 23(b)(3) for damages. Plaintiffs assert claims under the consumer protection laws and the common law of the states referenced herein.

## II.    JURISDICTION AND VENUE

13. This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds

---

[3] U.S. Code of Federal Regulations, Title 16, Part 260 ("Green Guides").

[4] These states are Alabama, California, Florida, Indiana, Maine, Maryland, Michigan, Minnesota, New Mexico, New York, Pennsylvania, Rhode Island, and Washington.

[5] April 24, 2023 Comments to FTC re Green Guides from the states of California, Connecticut, Delaware, Illinois, Maryland, Michigan, Minnesota, New Jersey, New Mexico, New York, Oregon, Rhode Island, and Wisconsin, available at https://oag.ca.gov/system/files/attachments/press-docs/Comments%20to%20FTC%20re%20Green%20Guides%204.24.23.pdf.

[6] These are Alabama, Alaska, Arizona, Connecticut, District of Columbia, District of Guam, Florida, Idaho, Georgia, Illinois, Maine, Maryland, Massachusetts, Michigan, Montana, New Hampshire, New Mexico, Ohio, South Carolina, Rhode Island, Tennessee, Texas, Utah, Vermont, Washington, and West Virginia.

the sum or value of $5,000,000, exclusive of interest and costs, and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.      Gore is authorized to conduct business in Maryland. Gore's registered agent for service in Maryland is The Corporation Trust Incorporated, 2405 York Road, Suite 201, Lutherville Timonium, Maryland 21093.

15.      This Court has both specific and general jurisdiction over Defendant. As for general jurisdiction, Gore's activities in Maryland have been so continuous and systematic as to render it essentially "at home" in the state of Maryland for over fifty years.

16.      Gore is also the owner and operator of 13 industrial properties in or around Elkton, Cecil County, Maryland.[7] Several of these industrial properties manufacture Gore-Tex laminate and are clustered within close groups with specific names. These include:

- The Cherry Hill facility, located at 2401 Singerly Road, Elkton, Maryland 21921;

- The Fair Hill facility, located at 101 Lewisville Road, Elkton, Maryland 21921;

- The four Appleton facilities, located at 100, 201, 301, and 401 Airport Road, Elkton Maryland 21921;

- The three Elk Mills facilities, located at 105, 402, and 501 Vieves Way, Elton, Maryland 21921; and

- The Lovett facility, located at 101 Lovett Drive, Elkton Maryland.

17.      Gore first opened its Cherry Hill manufacturing site in 1972 and since then the Cherry Hill facility has developed and produced thousands of products. According to Gore, it is one of its largest and "most vital" of its operational sites because the Cherry Hill facility acts as a "research and development hub" for the company and is "responsible for processing expanded

---

[7] In contrast, Gore lists only two plants in Delaware: Paper Mill West and Paper Mill East.

polytetrafluoroethylene (ePTFE)."[8] The Elk Mills facilities are "responsible for the development, production, testing, and sale of high-performance fabrics laminates."[9] Associates in Gore's Fabrics Operating Unit, which is responsible for the research, development, and manufacturing of Gore-Tex laminate, also work in Elkton, Maryland. Dr. Hegenbarth, who pioneered the creation of Gore-Tex Fabric, also worked at the Cherry Hill facility when he was employed at Gore.

18.    As seen below, Gore regularly refers to Cecil County, Maryland, as "our community." And this is no surprise as the company features the four main locations in Maryland: Cherry Hill, Fair Hill, Appleton, and Elk Mills.[10] Gore also states on this webpage that it has been operating in Cecil County, Maryland, for more than 50 years and is the county's largest private sector employer, with more than 3,000 Gore employees based in the county.



**About the Facilities**

W. L. Gore & Associates has been operating in Cecil County, Maryland, for more than 50 years and is the largest private sector employer, with more than 3,000 Associates based in the county. Since Gore purchased the Cherry Hill facility as our first manufacturing site in the county, we have greatly expanded our local presence with each facility offering distinct manufacturing processes. We are proud to locally manufacture a wide range of highly technical products ⬈ that make a meaningful difference in our community and around the world. Learn more here ⬈.

---

[8] *Cherry Hill*, Gore, https://forward.gore.com/facilities/cherry-hill/ (last accessed June 16, 2025).

[9] *Elk Mills Campus*, Gore, https://forward.gore.com/facilities/elk-mills-campus/ (last accessed June 16, 2025).

[10] In contrast, Gore lists no facility locations in Delaware.

## Gore Facilities

**Cherry Hill**

A research and development hub for the entire Gore Enterprise.

View Facility

**Fair Hill**

A community of 260 Associates working in its Performance Solutions Division.

View Facility

**Appleton Campus**

Comprised of four manufacturing facilities located on Airport Rd. and in operation since the mid 1980s.

View Facility

**Elk Mills Campus**

Established in the late 1990s and located on Vieve's Way, named after co-founder Genevieve Gore.

View Facility

19.      Gore has also submitted to active litigation as a defendant in multiple lawsuits filed in the United States District Court for the District of Maryland. These cases primarily involve allegations related to environmental contamination at the company's facilities in Cecil County, Maryland. Judge Richard D. Bennett of the United States District Court of Maryland is overseeing each of these lawsuits. *See* section IV.E, *supra*.

20.     Gore also has specific jurisdiction as Defendant purposefully directed conduct toward Maryland consumers by marketing, advertising, and promoting Gore-Tex Fabric as environmentally sustainable. Defendant made these statements knowing that it does not adhere to environmentally sustainable practices. Instead, these statements were designed to conceal and mislead consumers, including Maryland consumers, about the serious consequences Gore's manufacturing practices have on the environment. These deceptions have resulted in economic harm to residents and consumers, including Maryland residents and consumers, while increasing sales to Defendant. Defendant also worked to conceal and misrepresent the known environmental harm of Gore-Tex Fabric and knowingly withheld material information regarding the consequences of purchasing and using Gore-Tex Fabric. Gore also understood that harmful impacts would result by withholding this knowledge from the public and consumers who purchase Gore's products. A substantial effect of Defendant's actions has and continues to occur in Maryland, as residents there have suffered and continue to suffer injuries from Gore's wrongful conduct. The harmful effects described herein are the direct and foreseeable results of Defendant's conduct. As such, Defendant has manifestly availed itself of the privilege of doing business in Maryland.

21.     The Court also has pendant jurisdiction over Defendant for any non-Maryland claims because they share a common nucleus of operative facts with the Maryland-based claims.

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1367 and 28 U.S.C. § 1391 because a substantial part of the events or omissions and misrepresentations giving rise to Plaintiffs' claims occurred in this District. Moreover, Plaintiff Walton purchased his Gore-Tex Fabric products in this District and Defendant has marketed, advertised, and made available for sale the Gore-Tex Fabric Products within this District.

## III.    THE PARTIES

**A.    Plaintiffs**

### 1.    Maryland Plaintiff

23.    Plaintiff Brian Walton, at all times relevant hereto, was a citizen of the State of Maryland and a resident of Frederick, Maryland. He purchased two Mountain Hardware Rain jackets and one Mountain Hardware jacket with Gore-Tex Fabric, online from Mountain Hardware in approximately 2018. Plaintiff Walton purchased a Timberland Rain jacket with Gore-Tex Fabric from Marshall's in Rockville, Maryland in approximately 2020. These purchases are "Products" for purposes of section III.A.1.

24.    The Gore-Tex Fabric contained in the Products was manufactured by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating. The ePTFE membrane manufacturing process and the DWR coating application both involve the use of PFAS.

25.    Plaintiff Walton believed he was purchasing high-quality Products each made with Gore-Tex Fabric. At no time at the point-of-sale or in the Products' packaging was he told that the Products were made with PFAS, could contain PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Products were inconsistent with sustainable practices or with being "environmentally sound."

26.    Prior to purchasing the Products, Plaintiff Walton saw and was exposed to the Products' labeling at point-of-sale, like the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff contained any disclosure concerning Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. Moreover, the Common Omissions and Misrepresentations mislead Plaintiff as to Gore's continued use of PFAS. Had Defendant disclosed these Common Omissions and

Misrepresentations, Plaintiff would not have purchased the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, as described herein, caused Plaintiff out-of-pocket loss.

27.     Additionally, Plaintiff Walton intends to purchase additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

**2.    California Plaintiff**

28.     Plaintiff Dionysios Tsirkas, at all times relevant hereto, was a citizen of the State of California and a resident of Vallejo, California. He purchased a Dainese Dolomiti jacket with Gore-Tex fabric at a Dainese store in San Francisco on December 22, 2022. This purchase is "Product" for purposes of section III.A.2.

29.     The Gore-Tex Fabric contained in the Product was manufactured by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating. The ePTFE membrane manufacturing process and the DWR coating application both involve the use of PFAS.

30.     Plaintiff Tsirkas believed he was purchasing a high-quality Product made with Gore-Tex Fabric. At no time at the point-of-sale or in the Product packaging was he told that the Product was made with PFAS, could contain PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Product were inconsistent with sustainable practices or with being "environmentally sound."

31.     Prior to purchasing the Product, Plaintiff Tsirkas saw and was exposed to the Product labeling at point-of-sale, like the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff contained any disclosure concerning Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's

practices permanently degrade the environment as described in this Class Action Complaint. Moreover, the Common Omissions and Misrepresentations mislead Plaintiff as to Gore's continued use of PFAS. Had Defendant disclosed these Common Omissions and Misrepresentations, Plaintiff would not have purchased the Product or would have paid less for it. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, as described herein, caused Plaintiff out-of-pocket loss.

32.    Additionally, Plaintiff Tsirkas intends to purchase additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

**3.    Connecticut and New York Plaintiff**

33.    Plaintiff Lyle Liberman, between the start of the class period until approximately August 2019, was a citizen of the State of New York and resident of New York City. From approximately September 2019 to the end of the class period, Plaintiff was a citizen of the State of Connecticut and resident of Greenwich.

34.    While resident in New York, Plaintiff Liberman purchased online 2 pairs of Merrell Moab hiking boots with Gore-Tex Fabric from Merrell, and one Marmot rain jacket with Gore-Tex Fabric from BackCountry. These purchases took place in 2018 and 2019. While resident in Connecticut, Plaintiff purchased the following biking gear between 2023 and 2024 that contained Gore-Tex Fabric: C5 Bib Shorts from Amazon; cycling gloves and bike shorts from eBay, and a thermal riding jacket C-5 from Poshmark. Both the New York and Connecticut purchases are "Products" for the purposes of section III.A.3.

35.     The Gore-Tex Fabric contained in the Products was manufactured by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating. The ePTFE membrane manufacturing process and the DWR coating application both involve the use of PFAS.

36.     Plaintiff Liberman believed he was purchasing high-quality Products each made with Gore-Tex Fabric. At no time at the point-of-sale or in the Product packaging was he told that the Products were made with PFAS, could contain PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Products were inconsistent with sustainable practices or with being "environmentally sound."

37.     Prior to purchasing the Products, Plaintiff Liberman saw and was exposed to the Products' labeling at point-of-sale, like the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff contained any disclosure concerning Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. Moreover, the Common Omissions and Misrepresentations mislead Plaintiff as to Gore's continued use of PFAS. Had Defendant disclosed these Common Omissions and Misrepresentations, Plaintiff would not have purchased the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, as described herein, caused Plaintiff out-of-pocket loss.

38.     Additionally, Plaintiff Liberman intends to purchase additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

### 4.    District of Columbia Plaintiff

39.    Plaintiff Graham Hulsey, at all times relevant hereto, was a citizen and a resident of the District of Columbia. He purchased online a pair of Solomon hiking boots with Gore-Tex Fabric from Nordstrom in 2022. He also purchased online an Outdoor Research rain jacket with Gore-Tex Fabric from Backcountry in 2023. These purchases are "Products" for purposes of section III.A.4.

40.    The Gore-Tex Fabric contained in Plaintiff's Products were manufactured by Gore via its ePTFE membrane manufacturing process and was treated with the Durable Water Repellant "DWR" coating. The ePTFE membrane manufacturing process and the DWR coating application both involve the use of PFAS.

41.    Plaintiff Hulsey believed he was purchasing high-quality Products each made with Gore-Tex Fabric. At no time at the point-of-sale or in the Product packaging was he told that the Products were made with PFAS, could contain PFAS, and could leach PFAS during in normal use.

42.    Prior to purchasing the Products, Plaintiff Hulsey saw and was exposed to the Products' labeling at point-of-sale, like the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff contained any disclosure concerning Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. Moreover, the Common Omissions and Misrepresentations mislead Plaintiff as to Gore's continued use of PFAS. Had Defendant disclosed these Common Omissions and Misrepresentations, Plaintiff would not have purchased the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, as described herein, caused Plaintiff out-of-pocket loss.

43.     Additionally, Plaintiff Hulsey intends to purchase additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

**5.    Florida Plaintiff**

44.     Plaintiff Joseph Contois, at all times relevant hereto, was a citizen of the State of Florida and a resident of Jacksonville, Florida. He purchased an REI ("Recreational Equipment, Inc.") rain jacket with Gore-Tex Fabric from an REI store in Florida in approximately 2022. Plaintiff also purchased Merrell Moab hiking boots with Gore-Tex Fabric from an REI store in Florida in approximately 2018 and 2019. These purchases are "Products" for the proposes of section III.A.5.

45.     The Gore-Tex Fabric contained in the Products was manufactured by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating. The ePTFE membrane manufacturing process and the DWR coating application both involve the use of PFAS.

46.     Plaintiff Contois believed he was purchasing high-quality Products each made with Gore-Tex Fabric. At no time at the point-of-sale or in the Product packaging was he told that the Products were made with PFAS, could contain PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Products were inconsistent with sustainable practices or with being "environmentally sound."

47.     Prior to purchasing the Products, Plaintiff Contois saw and was exposed to the Products' labeling at point-of-sale, like the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff contained any disclosure concerning Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. Moreover, the Common Omissions and Misrepresentations mislead Plaintiff as to Gore's

continued use of PFAS. Had Defendant disclosed these Common Omissions and Misrepresentations, Plaintiff would not have purchased the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, as described herein, caused Plaintiff out-of-pocket loss.

48.    Additionally, Plaintiff Contois intends to purchase additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

**6.    Illinois Plaintiff**

49.    Plaintiff Adrian Washington, at all times relevant hereto, was a citizen of the State of Illinois and a resident of Des Plaines, Illinois. He purchased a North Face rain jacket with Gore-Tex Fabric, at The North Face store in Skokie, Illinois, in approximately 2018 or 2019. This purchase is "Product" for purposes of section III.A.6.

50.    The Gore-Tex Fabric contained in the Product was manufactured by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating. The ePTFE membrane manufacturing process and the DWR coating application both involve the use of PFAS.

51.    Plaintiff Washington believed he was purchasing a high-quality Product made with Gore-Tex Fabric. At no time at the point-of-sale or in the Product packaging was he told that the Product was made with PFAS, could contain PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Product were inconsistent with sustainable practices or with being "environmentally sound."

52.    Prior to purchasing the Product, Plaintiff Washington saw and was exposed to the Product labeling at point-of-sale, like the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff contained any

disclosure concerning Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. Moreover, the Common Omissions and Misrepresentations mislead Plaintiff as to Gore's continued use of PFAS. Had Defendant disclosed these Common Omissions and Misrepresentations, Plaintiff would not have purchased the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, as described herein, caused Plaintiff out-of-pocket loss.

53.     Additionally, Plaintiff Washington intends to purchase additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

### 7.    Minnesota Plaintiff

54.     Plaintiff Scott B. Johnson, at all times relevant hereto, was a citizen of the State of Minnesota and a resident of Minneapolis, Minnesota. He purchased Danner Sharptail hiking boots, with Gore-Tex Fabric at a Scheels store in Minnesota on or around September 2024. This purchase is "Product" for purposes of section III.A.7.

55.     The Gore-Tex Fabric contained in the Product was manufactured by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating. The ePTFE membrane manufacturing process and the DWR coating application both involve the use of PFAS.

56.     Plaintiff Johnson believed he was purchasing a high-quality Product made with Gore-Tex Fabric. At no time at the point-of-sale or in the Product packaging was he told that the Product was made with PFAS, could contain PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Product were inconsistent with sustainable practices or with being "environmentally sound."

57.    Prior to purchasing the Product, Plaintiff Johnson saw and was exposed to the Product labeling at point-of-sale, like the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff contained any disclosure concerning Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. Moreover, the Common Omissions and Misrepresentations mislead Plaintiff as to Gore's continued use of PFAS. Had Defendant disclosed these Common Omissions and Misrepresentations, Plaintiff would not have purchased the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, as described herein, caused Plaintiff out-of-pocket loss.

58.    Additionally, Plaintiff Johnson intends to purchase additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

**8.    Washington Plaintiff**

59.    Plaintiff Micah Mason, at all times relevant hereto, was a citizen of the State of Washington and a resident of Spokane Valley, Washington. He purchased online Volcom snow pants with Gore-Tex Fabric, from Evo in approximately Fall 2021. This purchase is "Product" for purposes of section III.A.8.

60.    The Gore-Tex Fabric contained in the Product was manufactured by Gore via its ePTFE membrane manufacturing process and was treated with DWR coating. The ePTFE membrane manufacturing process and the DWR coating application both involve the use of PFAS.

61.    Plaintiff Mason believed he was purchasing a high-quality Product made with Gore-Tex Fabric. At no time at the point-of-sale or in the Product packaging was he told that the

Product was made with PFAS, could contain PFAS, or could leach PFAS during normal use. Nor was he told that the manufacturing processes of the Product were inconsistent with sustainable practices or with being "environmentally sound."

62.    Prior to purchasing the Product, Plaintiff Mason saw and was exposed to the Product labeling at point-of-sale, like the Hang Tags described herein. None of the packaging material or advertisements reviewed or representations received by Plaintiff contained any disclosure concerning Defendant's use of PFAS in Gore-Tex Fabric and how Defendant's practices permanently degrade the environment as described in this Class Action Complaint. Moreover, the Common Omissions and Misrepresentations mislead Plaintiff as to Gore's continued use of PFAS. Had Defendant disclosed these Common Omissions and Misrepresentations, Plaintiff would not have purchased the Products or would have paid less for them. Defendant's unfair, unlawful, misleading, and deceptive conduct in manufacturing, marketing, and selling Gore-Tex Fabric as environmentally beneficial, as described herein, caused Plaintiff out-of-pocket loss.

63.    Additionally, Plaintiff Mason intends to purchase additional waterproof, yet breathable, outdoor apparel products in the future and wants to do so based on a full disclosure on the use of PFAS in the manufacturing process and if the product sheds PFAS during ordinary use.

**B.    Defendant**

64.    Defendant W.L. Gore & Associates is a Delaware corporation, with its principal place of business and headquarters located at 555 Paper Mill Road, Newark, Delaware 19711.

65.    Gore was founded in 1958 by Wilbert Gore and his wife Genevieve. Before founding Gore, Wilbert Gore spent approximately 16 years at DuPont, where he held various technical roles, including work in fluoropolymer research.

66.     Gore is a multinational company that specializes in manufacturing products made from fluoropolymers with 36 manufacturing plants in the United States, as well as facilities in the United Kingdom, Germany, the Netherlands, Japan, and China, with offices in more than 25 countries around the world.[11] Gore is divided into at least four divisions: (i) industrial products, (ii) electronic products, (iii) medical products, and (iv) fabrics. The majority, if not all, of these divisions are or were involved with PFOA-containing PTFE products.

67.     Gore is best known for making Gore-Tex Fabric. And most of Gore's Gore-Tex Fabric is purchased by other outdoor apparel manufacturers who then incorporate it into their own products and sell it via their retail network. Examples of these manufacturer-retailer partners include Brooks, Burton, Dakine, Dainese, Danner, Norrona, Nike, Patagonia, Rab, Solomon, LL Bean, The North Face, REI Co-op, Teva, and more. Estimated annual revenues received by Gore for its Gore-Tex Fabric are around $4.8 billion.

68.     Gore furnished its misleading information about Gore-Tex Fabric to major retailers and apparel manufacturers with the understanding that these manufacturers and retailers would disseminate the Common Omissions and Misrepresentations to consumers in Maryland and throughout the United States.

## IV.    FACTUAL ALLEGATIONS

**A.     Gore-Tex Fabric is a waterproof, yet breathable, textile commonly used in outdoor clothing and gear.**

69.     Gore-Tex Fabric consists of three layers and a diagram of these layers can be found below.[12] The outer material layer is to protect the membrane and give extra durability to the jacket.

---

[11] *Gore Locations*, Gore, https://www.gore.com/locations (last accessed June 16, 2025).

[12] *The Gore-Tex Membrane: What it is, how it works, and why you need it,* Gore-Tex (Jan. 12, 2022), https://www.gore-tex.com/en_uk/blog/the-gore-tex-membrane-what-it-is-how-it-works-and-why-you-need-it (last accessed June 16, 2025).

The inner material layer helps to distribute the moisture built up inside the jacket from sweat and then distributes it across a wide surface area, enabling it to evaporate and pass through the Gore-Tex membrane.



70.     The Gore-Tex membrane is located in the middle of the other two layers. Its role is to let water vapor through from the inside while keeping water from the outside, out. Until recently Gore-Tex exclusively used an ePTFE (expanded polytetrafluoroethylene) membrane.[13] Products made with ePTFE are marketed to have excellent breathability, waterproofing, and durability attributes.

71.     In addition to these three layers, there is an additional coating that sits on the very top—the DWR (Durable Water Repellent) treatment. The DWR coating provides a slippery layer on top of the face fabric, which allows water to roll off it as opposed to water being absorbed by

---

[13] In 2018, Gore created an additional product line using a different type of membrane but those products are not at issue in these litigation. See, Section IV.F., *supra.*

fabric—an effect known as "beading." The primary purpose of the ePTFE Gore-Tex Membrane

and the DWR Treatment is to increase the durability and water resistance of a product.

**B.    Gore-Tex Fabric is manufactured using PFAS, a "forever chemical" with a toxic legacy.**

72.    PFAS, also known as per- and polyfluoroalkyl substances, refers to a group of

thousands of human-made chemicals that have been used since the 1940s. PFAS compounds have

very strong carbon-fluorine bonds, or chains. These bonds are what gives PFAS their properties

like resistance to heat, chemicals, and degradation. Because of their extreme resistance to

degradation in the environment and/or in living organisms, PFAS has been classified as "forever

chemicals"—meaning that they break down very slowly in nature and are potentially dangerous to

human health.[14] PFAS are also characterized by having a hydrophobic (or water-hating) compound

tail and a hydrophilic (or water-liking) compound head. As such, PFAS can repel water, oil, stains,

and some can remain stable even at extreme temperatures.

73.    Below is a table originally produced by the State of California's Department of

Toxic Substances Control ("DTSC") that explains the relationship between different types of

PFAS.[15] DTSC created this table based on chemical structure and the guidance provided by the

Organization for Economic Co-operation and Development ("OECD"). Upon information and

belief, Gore currently uses the compounds in yellow in the manufacturing of Gore-Tex Fabric.

---

[14] This lawsuit is alleging that Gore deceived consumers by not disclosing the extent of environmental damage caused by the manufacturing of Gore-Tex Fabric. It is not alleging health or safety claims as to Gore-Tex Fabric itself.

[15] Consumers often use the terms "PFAS" and "PFC" interchangeably, but according to the DTSC it, along with other regulators use the term "PFASs" as it "has been widely adopted by the scientific community" and intentionally omit the use of the term PFC, characterizing it as an "older term" that can be ambiguously defined.

Historically, Gore also used the compounds in red, but according to information and belief, these have been phased out of Gore's manufacturing process: [16]



**Figure 1.** *The different subclasses of PFASs (from OECD, 2015)*

74.     The top half of the table displays non-polymer PFASs. Non-polymer PFAS are generally divided into two subclasses: perfluoroalkyl substances (PFAAs), in which all carbon atoms in the alkyl chain are fully fluorinated, and polyfluoroalkyl substances, in which one or more, are fluorinated. Fluorine can be very toxic, especially at high levels of exposure or if ingested

---

[16] Any use of highlighting or red text was added by counsel to help visualize the relationships between the chemicals displayed in the table and reflects the written conclusions made by the Department of Toxic Substances Control in their October 2017 White Paper on Per-Poly-FluoroAlkyl Substances (PFASs). https://dtsc.ca.gov/

as a gas. Most researchers over the past few decades studies have focused on the environmental and health impacts of perfluoroalkyl acids subgroup (PFAAs), which includes perfluoroalkyl *carboxylic* acids (PFCAs) such as perfluorooctanoate (PFOA), and perfluoroalkyl *sulfonic* acids (PFSAs) such as perfluorooctane sulfonate (PFOS). PFOS was a key ingredient in waterproofing fabrics and carpets, while PFOA was used in the production of PTFE or Teflon.

75.    According to Gore, PFOA was also historically used to make ePTFE and PFOA residuals could be measured at trace levels.[17] But Gore transitioned away from PFOA starting in 2013 as part of a voluntary industry-wide phase out led by the U.S. Environmental Protection Agency. Upon information and belief, Gore now uses GenX Chemicals (i.e., hexafluoropropylene oxide dimer acid ("HFPO-DA") and its ammonium salt) instead of PFOA in its manufacturing process for Gore-Tex Fabric. There is significant evidence suggesting that GenX Chemicals (like other PFAS) are toxic to humans, the environment, and wildlife.

76.    The bottom half of the table displays polymer PFASs. The three subclasses of polymers include fluoropolymers, polymeric perfluoropolyethers (PFPE), and side-chain fluorinated polymers. Examples of these PFASs include polytetrafluoroethylene (PTFE) and expanded polytetrafluoroethylene (ePTFE).

77.    PTFE is highly suitable for products that need to resist damage from harsh substances. An example of PTFE is Teflon. ePTFE, or expanded polytetrafluoroethylene, is a type of PTFE. It is softer and more flexible than conventional PTFE because ePTFE membrane also have millions of microscopic pores that are 20,000 times smaller than a water droplet, but 700 times larger than a water vapor molecule. The Gore-Tex Fabric membrane is currently

---

[17] PTFE Facts, Gore, available at https://www.gore.com/system/files/2023-04/Gore-PTFE-Facts-March-2022.pdf (last accessed June 16, 2025).

manufactured using ePTFE and Gore continues to apply a DWR Treatment that also contains PFAS. Gore routinely acknowledges that both PTFE and ePTFE are types of PFAS.[18] Gore also admits that it uses PFAS as a standard part of the ePTFE manufacturing process and the DWR application process for all products created with the ePTFE membrane, including those purchased by the named plaintiffs and class members.[19]

78.    It is important to note that, notwithstanding the phase-out of PFOA and PFOS in the United States and the introduction of shorter-chain PFASs, scientists still have many concerns about the widespread use of any chemical in the PFAS class. This is because even this new generation PFAS like GenX have similar structures and raise similar concerns related to persistence, toxicity, and mobility. Studies show that they are as persistent as the long-chain chemicals, or breakdown into products that are as persistent.[20] In addition, they are more mobile in the environment and may be more difficult to remove from drinking water. And because not enough information is available on their toxicity or even their chemical structures, scientific

---

[18] *Gore's Commitment to Material Stewardship*, Gore, https://www.gore.com/about/materials-stewardship (last accessed June 16, 2025.

[19] *See, e.g.*, *Gore Fabrics' Goal and Roadmap for Eliminating PFCs of Environmental Concern*, Gore-Tex, https://www.gore-tex.com/pfcgoal (last accessed June 16, 2025); full document available at https://drive.google.com/file/d/0BxvQ_I44P_9eeTlwYUJCekhLNlE/view?resourcekey=0-yETyZjWnnDD-U7aDmwDdkg (last accessed June 16, 2025).

[20] Short-chain PFAS replacements were previously thought to present a lower likelihood of bioaccumulation and toxicity compared to long-chain PFAS, such as PFOA and PFOS. But, newer research indicates that several replacement PFAS can exhibit similar toxic properties and are associated with similar health outcomes and target organ effects as long-chain PFAS. *See Characterizing PFAS Chemistries, Sources, Uses, and Regulatory Trends in U.S. and International Markets*, Consumer Product Safety Commission, citing Gomis et al., 2018; Wang et al., 2015; U.S. EPA, 2021a; U.S. EPA, 2021b. https://www.cpsc.gov/s3fs-public/CPSC-PFAS-WhitePaper.pdf (last accessed June 16, 2025).

experts from all over the world have hesitated to conclude that any PFAS is safe enough to be unregulated or used without restriction.[21]

79.    For example, the Madrid Statement on Poly- and Perfluoroalkyl Substances (PFAS) is a scientific declaration released in 2015 by over 200 scientists from 38 countries.[22] The Madrid Statement calls for a precautionary approach to all types of PFAS, urging governments, industries, and consumers to reduce and eventually phase out their use. It also highlights concerns about newer short-chain PFAS that are being used as replacements for older, regulated substances like PFOA and PFOS. The scientists also warn that these alternatives may also be persistent and harmful, and that replacing one PFAS with another is not a sustainable solution. These concerns are also shared by the OECD, who reports that many short-chain PFAS alternatives have incomplete or unavailable hazard information and that this lack of data raises concerns about the adequacy of these substitutes.[23]

**C.    PFAS pose unique and devastating dangers to the environment.**

80.    The use of any type of PFAS in consumer manufacturing is extremely controversial due to the toxicity of the chemicals, their highly mobile nature, and their inability to break down over time. As such, the PFAS we use in our everyday products can accumulate in the tissues of

---

[21] *Factsheet on PFASs in Consumer Products: Key Points for Decision Makers, Safer Consumer Products* (Aug. 2023), available at https://dtsc.ca.gov/wp-content/uploads/sites/31/2023/09/PFAS-Factsheet.pdf (last accessed June 16, 2025).

[22] Blum, et al., *The Madrid Statement on Poly- and Perfluoroalkyl Substances (PFASs)*, Environmental Health Perspectives, Volume 23, Issue 5, pp. A107-A111, available at https://ehp.niehs.nih.gov/doi/10.1289/ehp.1509934 (last accessed June 16, 2025).

[23] *Per- and Polyfluoroalkyl Substances and Alternatives in Coatings, Paints, and Varnishes (CPVs): Hazard Profile*, OECD (Dec. 20, 2023), available at https://www.oecd.org/en/publications/per-and-polyfluoroalkyl-substances-and-alternatives-in-coatings-paints-and-varnishes-cpvs-hazard-profile_c60c42d5-en.html (last accessed June 16, 2025).

wildlife. For example, PFAS can enter the soil through PFAS-containing pesticides or contaminated sewage sludge. These chemicals can influence soil pH and structure, as well as harm the small organisms that maintain soil function. PFAS has also been found in rivers, lakes, reservoirs and seas. Not only does this harm aquatic wildlife but leads to contamination of drinking water supplies:



81.    In addition, when consumers eventually throw out their worn-out Gore-Tex Fabric products in their municipal garbage, which many are apt to do because Gore does not advise consumers on how to properly dispose of them, it is highly likely that those products will eventually end up in a landfill to be incinerated. And studies show that Gore-Tex Fabric emits harmful PFAS into the air and water during the municipal solid waste incineration process.[24] PFAS

---

[24] Mohammednoor Altarawneh, et al., *Thermal decomposition of perfluorinated carboxylic acids: Kinetic model and theoretical requirements for PFAS incineration*, Chemosphere (Jan. 2022), https://pubmed.ncbi.nlm.nih.gov/34388878/.

can also make its way into drinking water sources through consumer use, such as when PFAS-coated apparel is washed or dry-cleaned:



82.    Exposure to even very low levels of certain PFASs is now known to cause harm. For example, drinking water guidance levels for the two most studied PFASs – PFOA and PFOS – have maximum contamination limits thousands of times lower than they were a decade ago.[25]

83.    Due to the inherent harms associated with PFAS, states have begun to reduce or eliminate their use in consumer manufacturing. According to a 2024 study from Safer States, a national alliance of environmental health organizations, at least 36 states either have or plan to consider at least 450 bills on toxic chemical-related policies involving PFAS, plastics, and

---

[25] *Factsheet on PFASs in Consumer Products: Key Points for Decision Makers, Safer Consumer Products* (Aug. 2023), available at https://dtsc.ca.gov/wp-content/uploads/sites/31/2023/09/PFAS-Factsheet.pdf (last accessed June 16, 2025).

cosmetics as key areas.[26] And legislation in California and New York that restricts PFAS in apparel became effective January 1, 2025.[27]

**D.    Gore has long been aware of the environmental harm posed by using PFAS.**

84.    Gore's founder was a former DuPont employee who maintained a close business relationship with DuPont. For decades, Gore purchased APFO and PFOA from raw material suppliers such as DuPont and purchased and/or used PTFE products from DuPont and 3M, which manufactured, marketed, and sold these products.[28]

85.    In the 1990s, at least two former DuPont employees—Dr. Jack Hegenbarth and Richard Baillie—who possessed extensive knowledge of the risks associated with PFOA exposure, joined Gore as employees. Therefore, it is likely that Gore knew about the toxic nature of PFAS and the potential environmental risks posed by human these chemicals.

86.    In May 1984, DuPont held a meeting to address health and environmental concerns related to PFOA, the company's potential liability, available technologies that were capable of

---

[26] *Safer States: Bill Tracker*, Safer States, https://www.saferstates.org/bill-tracker/?toxic_chemicals=PFAS (last accessed June 16, 2025).

[27] Cal. AB-1817 (Product safety: textile articles: perfluoroalkyl and polyfluoroalkyl substances (PFAS)), https://leginfo.legislature.ca.gov/faces/billCompareClient.xhtml?bill_id=202120220AB1817 (last accessed June 16, 2025); N.Y. PFAS in Apparel Law, https://dec.ny.gov/environmental-protection/help-for-businesses/pfas-in-apparel-law (last accessed June 16, 2025); https://www.saferstates.org/priorities/pfas/ (last accessed June 16, 2025).

[28] *See, e.g.*, *Robert W. Gore*, Science History Institute Museum & Library, https://www.sciencehistory.org/education/scientific-biographies/robert-w-gore/#:~:text=Bill%20often%20experimented%20in%20their,%2C%20electrical%2C%20and%20chemical%20properties (last accessed June 16, 2025); https://www.industrydocuments.ucsf.edu/chemical/docs/#id=mypw0228 (last accessed June 16, 2025).

controlling and reducing PFOA emissions from its manufacturing facilities, as well as potential replacement materials capable of eliminating additional PFOA emissions from its operations.[29]

87.    In the early 1980s, Dr. Hegenbarth received numerous internal DuPont memoranda that discussed the health effects of PFOA exposure, such as the retention of PFOA in the blood, and the environmental impact of PFOA.[30]

88.    In the 1990s, Dr. Hegenbarth joined Gore and brought with him his extensive knowledge of the dangers associated with PFAS exposure. Dr. Hegenbarth led a broad range of Gore's research, development, and manufacturing activities, particularly those focused on PFAS-related issues and advancements in materials involving these chemicals.

89.    In 1996, Richard Baillie, a DuPont chemical engineer with extensive experience in the fluoropolymers operations, joined Gore. While at DuPont, Baillie received internal memoranda and reports that addressed concerns about PFOA exposure, efforts to identify less toxic replacements, and efforts to reduce PFOA environmental emissions.[31] At Gore, Mr. Baillie had a "key role for understanding and dealing with [the] PFOA issue."[32]

**E.    More recently, Gore faces multiple lawsuits by local stakeholders seeking damages related to PFAS containment and cleanup.**

90.    Gore is currently a defendant in multiple lawsuits brought by different Maryland stakeholders seeking relief and damages associated with the environmental pollution and public

---

[29] J.A. Schmid, Letter regarding C-8 Meeting Summary (May 23, 1984), https://cdn.toxicdocs.org/qd/qdNLdmnBdODEMemOG5vo96poj/qdNLdmnBdODEMemOG5vo96poj.pdf (last accessed June 16, 2025).

[30] *See, e.g.,* https://www.toxicdocs.org/search?q=Hegenbarth# (last accessed June 16, 2025).

[31] DuPont memorandum regarding C-8 Ammonium Perfluorooctanoate Fluorosurfactant Strategies and Plans (Sept. 28, 1994), https://www.industrydocuments.ucsf.edu/docs/#id=typw0228 (last accessed Jan. 28, 2025).

[32] Richard Baillie LinkedIn profile, https://www.linkedin.com/in/richard-baillie-8509206 (last accessed June 16, 2025).

health concerns stemming from the Gore's PFAS-based manufacturing operations. These lawsuits collectively allege Gore of knowingly polluting the environment with PFAS, leading to significant health risks for residents in Maryland and beyond. More information on these lawsuits is included below:

- *State of Maryland v. W.L. Gore & Associates, Inc.* (Case No. 1:24-cv-03656). In this lawsuit, the State of Maryland alleges that at least 13 of W.L. Gore's 14 facilities in Cecil County have soil, air, and groundwater contaminated with PFAS above maximum contamination limits. The state claims that the company knew about the dangers of these chemicals but concealed that information from the public and regulators and therefore violated the Comprehensive Environmental Response Compensation and Liability Act (CERCLA) amongst other state laws. It was filed on December 18, 2024.

- *Martin, et al. v. W.L. Gore & Associates, Inc.* (Case No. 1:24-cv-03549). In this lawsuit, Plaintiffs Stephen and Cheryl Martin bring citizen suit claims under the Resource Conservation and Recovery Act alleging that Gore's operations have led to PFAS contamination affecting their property and health, seeking remediation and damages under federal environmental laws. It was filed on December 9, 2024.

- *Wolf, et al. v. W.L. Gore & Associates, Inc.* (Case No. 1:23-cv-00280). This class action lawsuit involves allegations of personal injuries caused by exposure to PFAS from Gore's Cherry Hill facility in Elkton, Maryland. The plaintiffs claim that the company was negligent in managing hazardous substances, leading to health issues among residents. It was filed on February 1, 2023.

**F.    In response to significant concerns about environmental and health impacts, Gore promised consumers it was removing PFAS from its products and manufacturing processes.**

91.    In response to pressure from environmental groups, concerned scientists, and government regulators, Gore eventually realized that its previous status quo of ignoring PFAS issues was no longer viable. So, on January 31, 2017, Gore announced that it had set a goal of eliminating PFCs of Environmental Concern by 2023[33] via a three-pronged strategy. First, Gore was to identify and eliminate "PFCs of Environmental Concern" from both its fabrics and production systems. Second, Gore committed to actively developing and implementing safer alternatives to PFCs. Finally, Gore promised that it would provide updates on its progress and challenges with stakeholders, including customers, industry partners, and regulatory bodies.[34]

92.    Shortly after Gore's announcement, state regulators and environmental scientists discussed whether Gore's actions would amount to much of a difference—or if this was simply a performative attempt by Gore at greenwashing. Below is an e-mail between EPA staff, members of the DTSC, and several academics discussing Gore's PFC EC strategy and whether the changes will result in less environmental harm.

---

[33] Gore recently extended the deadline to the end of 2025.

[34] *Gore Fabrics' Goal and Roadmap for Eliminating PFCs of Environmental Concern*, Gore-Tex, https://www.gore-tex.com/pfcgoal (last accessed June 16, 2025); full document available at https://drive.google.com/file/d/0BxvQ_I44P_9eeTlwYUJCekhLNlE/view?resourcekey=0-yETyZjWnnDD-U7aDmwDdkg (last accessed June 16, 2025).

**From:** Tom Bruton <tbruton@berkeley.edu>
**Sent:** Tuesday, February 14, 2017 10:53 AM
**To:** Dave Andrews <dandrews@ewg.org>
**Cc:** Lindstrom, Andrew <Lindstrom.Andrew@epa.gov>; Laurel Schaider <schaider@silentspring.org>; Strynar, Mark <Strynar.Mark@epa.gov>; Arlene Blum <arleneb@lmi.net>; Balan, Simona@DTSC <Simona.Balan@dtsc.ca.gov>; Graham Peaslee <gpeaslee@nd.edu>
**Subject:** Re: Gore eliminating hazardous PFCs

Thanks for the interesting discussion. I have a few points to add:

From my reading of Gore document and Manfred's comments, it seems they are counting on continued use of PTFE and that they really believe they can do this without using fluorosurfactant processing aides.

If they do continue using fluorosurfactant processing aides, I don't believe that tightening up the manufacturing process so that it is "zero-discharge" is meaningful. DuPont's Fayetteville, NC plant was supposed to be leak-proof with respect to fluorosurfactants, but we know that is not the case.

Similarly, I don't see that moving from PTFE to PVDF would be an improvement. PVDF was historically manufactured using PFNA instead of PFOA (http://link.springer.com/article/10.1007/s11356-016-8243-3)

Would anyone else be interested in engaging Gore in a conversation around these issues?

Tom

--
Tom Bruton
Science Policy Fellow
Green Science Policy Institute
tom@greensciencepolicy.org
www.greensciencepolicy.org

93.     Others were especially skeptical of Gore's decision to unilaterally define which PFAS were included as a "PFC for Environmental Concern." According to one scientist, Gore's PFC* Free strategy was "a weak attempt to define themselves as better or not so bad while at the same time preserving the market share and brand name." And that Gore was more interested in taking "total control of this evolving situation [to] string out the use and profits from their slightly adjusted products for a very long time."

**From:** "Lindstrom, Andrew" <Lindstrom.Andrew@epa.gov>
**Date:** Tuesday, February 14, 2017 at 8:35 AM
**To:** Laurel Schaider <schaider@silentspring.org>, "Strynar, Mark" <Strynar.Mark@epa.gov>, Arlene Blum <arleneb@lmi.net>, Dave Andrews <dandrews@ewg.org>, "Balan, Simona@DTSC" <simona.balan@dtsc.ca.gov>, Thomas Bruton <tbruton@berkeley.edu>, Graham Peaslee <gpeaslee@nd.edu>
**Subject:** RE: Gore eliminating hazardous PFCs

Laurel,

I agree with your observation that this is the time to move beyond PFAS-containing apparel.

To me, this looks like a weak attempt to define themselves as better or not so bad while at the same time preserving the market share and brand name.

As long as they control the narrative, they pretty much have total control of this evolving situation and can string out the use and profits from their slightly adjusted products for a very long time. I don't think it is possible to make fluoropolymers without release on monomers, catalysts, or solubilizers.

The key question for me is who defines what "PFC of Environmental Concern" means?

I'm concerned about all PFAS. It's not Green Chemistry – they are immortal.

This is the time to move beyond PFAS in clothing and as many other products as possible.

It can be done. This is the same thing as our continued dependence on fossil fuels. They people who are invested in the status quo don't want real change.

Thank you,
Andy

94.      This skepticism as to whether Gore's attempts to exclude PTFE and ePTFE from common definitions of the terms PFAS or PFC are reflective of greenwashing continues to this day. For example, on June 10, 2025, a group of 20 prominent scientists issued a statement expressing concern over efforts by industry actors to narrow the chemical definition of per- and polyfluoroalkyl substances (PFASs), commonly known as "forever chemicals."[35] They caution that attempts [like Gore's] to redefine PFASs to "exclude specific subgroups [like PTFE] may be motivated by political or economic interests rather than scientific evidence." These scientists also argue that such attempts could undermine public health and environmental protections by excluding certain chemical subgroups from regulation.

---

[35] Gabriel Sigmund, et al., *Scientists' Statement on the Chemical Definition of PFASs*, American Chemical Society Publications (June 10, 2025), available at https://pubs.acs.org/doi/10.1021/acs.estlett.5c00478 (last accessed June 16, 2025).

**G.    Gore's Hang Tags for Gore-Tex Fabric provide Gore's stated but false commitment at point-of-sale regarding the ePTFE membrane and Gore's manufacturing processes.**

95.    According to Gore's website, all products that contain the Gore-Tex Fabric membrane and/or Gore-Tex DWR with PFAS are sold with a black diamond-shaped "Hang Tag," and as second brown rectangular-shaped "Hang Tag" attached to the product:[36]



96.    In 2021, Gore announced that it had developed a second product line that uses expanded polyethylene ("ePE") instead of ePTFE as a membrane. The ePE is not manufactured with and does not contain PFAS.[37] Gore also announced that it had developed a new DWR

---

[36] *Frequently Asked Questions*, Gore-Tex, https://www.gore-tex.com/support/frequently-asked-questions (last accessed June 16, 2025).

[37] *Durable Water Repellant*, Gore-Tex, https://www.gore-tex.com/support/care/dwr (last accessed June 16, 2025).

treatment that is PFAS-free and no longer fluorine based. Products made with this ePE membrane and PFAS-free DWR treatment have different Hang Tags than those pictured above.[38]

97.    However, despite Gore's announcement, the company continues to produce the PFAS-based ePTFE membrane and PFAS-based DWR coating, including the products purchased by the named plaintiffs and class members.[39] And Gore continues to affix the Hang Tags pictured above to these PFAS-based products, which do not disclose Gore's continued use of PFAS for these products.

**H.    Gore misleads consumers by omitting material information about its use of PFAS in its products and during the manufacturing process for Gore-Tex Fabric.**

98.    Gore uses its Hang Tags to create the overall impression to consumers that Gore is taking serious and measurable steps to reduce the environmental impact of manufacturing Gore-Tex Fabric. But this impression deceives consumers because Gore actively conceals and fails to fully disclose from consumers the following Common Omissions and Misrepresentations: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes PTFE and therefore materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's

---

[38] *Science Led Innovation*, Gore-Tex, https://www.gore-tex.com/sustainability/science-led-innovation (last accessed June 16, 2025).

[39] Products made with Gore's ePE membrane and PFAS-free DWR coated products are not part of this lawsuit.

direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

   1.   **Gore hides from consumers its continued use of PFAS to manufacture its Gore-Tex Fabric.**

99.    Gore misrepresents and fails to disclose that it still uses several different types of PFAS as part of the manufacturing process for the ePTFE membrane, which in turn, means that PFAS was used to make the products purchased by the named plaintiffs and class members. For example, most definitions of PFAS from academics, regulators, and consumers include the compound PTFE. Even Gore admits that PTFE is a type of PFAS.[40]

100.    Then to extend PTFE into ePTFE, companies like Gore use a different type of PFAS to act as a surfactant or dispersing agent. The surfactant helped to keep the polymer particles suspended in water during the relevant chemical reactions and ensure product consistency. Historically, Gore used PFOA, but throughout the class period Gore used GenX as a dispersing agent. But GenX is still considered a PFAS that can induce significant environmental harm and harm to human health, even at relatively low concentrations. *See* section IV.B., *infra*. And Maryland's investigation of areas adjacent to Gore's manufacturing facilities also show elevated levels of PFOA and GenX compounds. *See* section IV.H.2., *supra*.

101.    The second way that Gore currently uses PFAS to manufacture its Gore-Tex Fabric involves the Durable Water Repellant ("DWR") layer. As explained above, many Gore-Tex products, including those purchased by the named plaintiffs and class members, are treated with a DWR coating to enhance water resistance. But these coatings still contain short-chain PFAS

---

[40] *Gore Fabrics' Goal and Roadmap for Eliminating PFCs of Environmental Concern*, Gore-Tex, https://www.gore-tex.com/pfcgoal (last accessed June 16, 2025); full document available at https://drive.google.com/file/d/0BxvQ_I44P_9eeTlwYUJCekhLNlE/view?resourcekey=0-yETyZjWnnDD-U7aDmwDdkg (last accessed June 16, 2025).

compounds.[41] And while these short-chain PFAS may be less persistent than their long-chain counterparts, they still pose environmental and health risks. *See* section IV.C., *supra*.

### 2. Gore's manufacturing processes have contaminated areas adjacent to its facilities with extremely high levels of PFAS.

102.    Because of the mounting evidence and concerns of the health and environmental effects of PFAS, Gore has reassured its customers that its products are "non-toxic and safe for the user" and pose no threat to the environment.[42]

103.    The citizens of Cecil County, Maryland, would likely beg to differ as recent testing suggests that Gore has contaminated parts of Cecil County via its PFAS manufacturing processes. Upon information and belief, Gore has used and continues to use PTFE in the manufacturing process at eleven Gore Facilities in Elkton, Cecil County, Maryland. Specifically, Gore used PTFE aqueous dispersions at Cherry Hill, Fair Hill, Appleton South, all three Elk Creek facilities, and at the Elk Mills 1 facility. In addition, the Appleton East, Appleton North, Appleton Central, and Elk Mills 5 facilities processed solvents, coatings, and other materials known to contain APFO/PFOA.

104.    On February 16, 2023, the Maryland Department of the Environment sent a letter to Gore identifying it as a responsible party in relation to the Cherry Hill facility and requested that Gore conduct or participate in a systematic investigation of PFAS contamination at the facility and the surrounding area. As a result, samples were taken of areas adjacent to Gore's Cherry Hill and Fair Hill locations, as well as the facilities themselves. Samples taken from the Spring 2023

---

[41] *Gore Fabrics' Goal and Roadmap for Eliminating PFCs of Environmental Concern*, Gore-Tex, https://www.gore-tex.com/pfcgoal (last accessed June 16, 2025); full document available at https://drive.google.com/file/d/0BxvQ_I44P_9eeTlwYUJCekhLNlE/view?resourcekey=0-yETyZjWnnDD-U7aDmwDdkg (last accessed June 16, 2025).

[42] *Responsibility - Our Products are Environmentally Sound and Safe to Wear*, Gore, https://web.archive.org/web/20190323195518/https://www.gore-tex.com/technology/responsibility (last accessed June 16, 2025).

through Fall 2024 consistently showed PFOA contamination above the 4 ppt Maximum

Contamination Limit ("MCL") at several locations, and some samples were as high as 39 ppt.

According to the Maryland attorney-general's office, these sampling results also indicated the

presence of contamination with other PFAS carboxylic acids, including PFHxA and PFHpA.

105.    Data collected to date by Maryland regulatory authorities also show exceedingly

high levels of PFOA around the Cherry Hill and Fair Hill facilities. For example, at addresses on

Singerly Road, directly across from the Cherry Hill site, multiple residences showed

concentrations of PFOA in their drinking water as high as 800 ppt. The surface water in a small

stream nearby returned a result of 740 ppt PFOA. Near the Fair Hill site, PFOA was found in

drinking water sources above 100 ppt PFOA. And at the Appleton South site, several samples of

on-site groundwater had PFOA concentrations well above 1,000 ppt. These locations are also

contaminated with PFHpA, PFHxA, and other PFAS. According to the Maryland's attorney

general, elevated levels of PFOA have been found around each of the Gore Facilities that has been

previously tested.

106.    In part due to these results, the attorney general of Maryland sued Gore for PFAS

contamination of the states' drinking water, groundwater, surface water, soil, and other natural

resources located near Gore's facilities in and around Elkhorn, Maryland. But Gore does not

disclose to consumers that Gore's manufacturing process contributed to this egregious

contamination.

**3.      Gore products leach PFAS into the environment via ordinary use.**

107.    Studies also show that regular and intended use of ePTFE and/or DWR-treated

products break down the PFAS treatments over time, leading to higher concentrations of PFAS in

the product and higher levels of related contamination. For example, a 2020 study found that

"weathering can have an effect on PFAS used in DWR of outdoor clothing, both on the PFAS

profile and on the measured concentration."[43] PFAS concentrations "increased by 5- to more than 100-fold, while [PFAS] not detected in the original textiles were [later] detected in the weathered samples."[44]

108.    Some tests also show Gore-Tex Fabric exposed to rain can shed types of PFAS from the fabric itself (more specifically PFBA and a small amount of PFOA). This means that hikers who are taking their outdoor apparel on the trails are inadvertently shedding PFAS material straight into the pristine environments they are appreciating and seeking to preserve. This also means that regular consumers are also inadvertently shedding PFAS into local water supplies while walking on city streets, spending time in their yards, or while enjoying city parks.

109.    Simlarly, 2023 study by Toxic-Free Future tested 13 jackets, including two GORE-TEX models purchased from REI. The analysis revealed high levels of total fluorine—up to 8%—indicating the likely presence of PFAS in both the membrane and surface treatments. Notably, the study detected multiple fluorotelomer alcohols (C6–C12), including compounds phased out by Gore in 2013, suggesting that these older PFAS compounds persist in some Gore-Tex products.

110.    PFAS has even been collected at the top of Mt. Everest. One study,[45] published in *Science of the Total Environment* in 2020, investigated the presence of PFAS in snow and meltwater samples collected from Mount Everest's Khumbu Glacier. Researchers analyzed

---

[43] Ike van der Veen, Anne-Charlotte Hanning, Ann Stare, Pim E.G. Leonards, Jacob de Boer, Jana M. Weiss, *The effect of weathering on per- and polyfluoroalkyl substances (PFASs) from durable water repellent (DWR) clothing*, Chemosphere, Volume 249, June 2020, 126100. DOI: https://doi.org/10.1016/j.chemosphere.2020.126100 (last accessed June 16, 2025).

[44] *Id.*

[45] Minor KR, et al., *Deposition of PFAS 'forever chemicals' on Mt. Everest*, Science of the Total Environment (Mar. 10, 2021), https://pubmed.ncbi.nlm.nih.gov/33353778/ (last accessed June 16, 2025).

samples from several locations, including Everest Base Camp, Camp 1, Camp 2, and the Everest Balcony, making these some of the highest-altitude PFAS measurements ever recorded.

111.    The results revealed detectable levels of various PFAS compounds, such as PFOS (perfluorooctanesulfonic acid), PFOA (perfluorooctanoic acid), and PFHxA (perfluorohexanoic acid). The highest concentrations were found at Base Camp and Camp 2. These findings show that outdoor gear treated with PFAS for water- and stain-resistance—commonly used by climbers and trekkers—likely contributes to this contamination. Moreover, the authors of the study reached out to Gore with their results. In a statement provided to the researchers, a Gore spokesperson acknowledged that three of the four PFAS compounds detected in the Everest samples were used by Gore in the past and that traces of the fourth compound may still be detected in some of its products even today.[46]

### 4.    Gore's "PFC* Free Laminate" label misleads consumers by unilaterally excluding ePTFE and PTFE.

112.    Gore prominently states on the Hang Tag that the product includes a "PFC Free* Laminate" made by Gore. Gore also notes on its tag that the "PFC Free*" refers to PFCs of Environmental Concern.

113.    PFC is typically used as an acronym for "per- and poly/flourinated chemicals," a chemical family consisting mostly of carbon and fluorine, which makes it impervious to heat, acid, water, and other forces that typically break down other chemical compounds. Both academic journals and consumer-oriented definitions of PFC include PTFE within in this chemical family

---

[46] Murray Carpenter, *'Forever chemicals,' other pollutants found around the summit of Everest*, Washington Post (Apr. 17, 2021), https://www.washingtonpost.com/science/mt-everest-pollution/2021/04/16/7b341ff0-909f-11eb-bb49-5cb2a95f4cec_story.html.

and readily identify Teflon and Gore-Tex as examples of PTFE-based products under the umbrella of PFC products.[47]

114.    And yet, Gore decided to create its own definition now called "PFC EC" or PFCs of Environmental Concern. Gore's unilateral definition of PFC EC excludes both PTFE and ePTFE. By modifying the consistent consumer understanding of PFC to specifically exclude PTFE, Gore misleads consumers to believe that its products and manufacturing process do not contain chemicals that are extremely harmful for the environment.

115.    As explained by a scientist at the U.S. Environmental Protection Agency, Gore's unilateral modification of the traditional definition of PFC is nothing but "a weak attempt to define themselves as better or not so bad while at the same time preserving the market share" and "profit[] from their slightly adjusted products for a very long time." *See* section IV.F., *supra.*

**5.    Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC\* interchangeably.**

116.    Finally, Gore makes it very difficult for reasonable consumers to determine which products continue to utilize the old PFAS-based ePTFE Gore-Tex Membrane and PFAS-based DWR Treatment compared with the new ePE membrane and non-PFAS-DWR treatment on Gore's direct-to-consumer sales website, gorewear.com.

---

[47] *See, e.g.*, *PFC Dictionary*, Environmental Working Group, https://www.ewg.org/research/pfc-dictionary (last accessed June 16, 2025); Genuis SJ, et al., *Human detoxification of perfluorinated compounds*, Public Health (July 2010), Volume 124, Issue 7, pp. 367-375, https://doi.org/10.1016/j.puhe.2010.03.002.

117.    In Defendant's product listings on gorewear.com, Defendant states that they feature "new thinner, lighter, and PFC-Free" Gore-Tex Fabric.[48] But Defendant also uses the term "PFAS-free" to refer to the same jacket:

The SPINSHIFT Jacket is specially designed to deliver protective comfort on daily road or gravel rides, featuring a low profile, streamlined fit and innovative body mapping for a second skin-like cycling fit, along with the GUARANTEED TO KEEP YOU DRY promise of the new thinner, lighter* and PFC-Free** GORE-TEX fabric.

Loaded with innovation to tackle daily rides in any condition, the SPINSHIFT cycling jacket features the next-generation GORE-TEX fabric, that is thinner, lighter* and PFC-free** while providing the durable, waterproof, and windproof protection you expect from the GORE-TEX brand. The Kinetic Garment Design ensures a comfortable ergonomic fit for your drop bar position where it moves effortlessly with your body while maintaining a sleek, streamlined profile, whether you're tucked in over the handlebars or in a more relaxed position. * Through laminates with a new lower-mass membrane and select textile(s) (per Higg MSI) ** Advances Gore Fabrics´ goal of being free of PFCs of environmental concern over the lifecycle of its consumer products. In this case, the goal is accomplished using non-fluorinated materials.

******

The SPINSHIFT Jacket is specially designed to deliver protective comfort on daily road or gravel rides, featuring a low profile, streamlined fit and innovative body mapping for a second skin-like cycling fit, along with the GUARANTEED TO KEEP YOU DRY promise of the new thinner, lighter* and PFAS-Free** GORE-TEX fabric.

Loaded with innovation to tackle daily rides in any condition, the SPINSHIFT cycling jacket features the next-generation GORE-TEX fabric, that is thinner, lighter* and PFAS-free** while providing the durable, waterproof, and windproof protection you expect from the GORE-TEX brand. The Kinetic Garment Design ensures a comfortable ergonomic fit for your drop bar position where it moves effortlessly with your body while maintaining a sleek, streamlined profile, whether you're tucked in over the handlebars or in a more relaxed position. * Through laminates with a new lower-mass membrane and select textile(s) (per Higg MSI) ** Advances Gore Fabrics´ goal of being free of PFASs of environmental concern over the lifecycle of its consumer products. In this case, the goal is accomplished using non-fluorinated materials.

118.    In Defendant's product listings for other products, Defendant simply states that it has a Gore-Tex Membrane, without any explanation as to whether they may contain a PFAS ePTFE Gore-Tex Membrane and/or PFAS-based DWR Treatment:[49]

---

[48] *Concurve Gore-Tex Jacket Womens*, Gorewear, https://www.gorewear.com/us/en-us/concurve-gore-tex-jacket-womens-101067 (last accessed Jan. 28, 2025).

[49] *Stream Jacket Womens*, Gorewear, https://www.gorewear.com/us/en-us/stream-jacket-womens-100823?variant=8845 (last accessed Jan. 18, 2025).



NEXT-GENERATION GORE-TEX JACKET

The CONCURVE running jacket features the new GORE-TEX membrane which is thinner, lighter, with a lower carbon footprint*, while delivering the same GUARANTEED TO KEEP YOU DRY promise.

119.    Because of Gore's misleading and deceptive conduct, consumers are led to believe that products with Gore-Tex Fabric have certain superior quality and characteristics that they do not actually possess. It also misrepresents the environmental impact of Gore's manufacturing practices.

120.    Defendant's forward-facing messaging to consumers through, for example, the Product's labeling and website statements, also creates an overall impression that there are no PFAS used and/or present in the Products and promises the Products are high quality, safe, and non-toxic.

121.    Furthermore, no reasonable consumer would expect, suspect, or understand that the Products contain or have a material risk of containing PFAS and/or were manufactured using PFAS, given the current Federal and state laws concerning PFAS.

122.    Based on the both the Common Omissions and Misrepresentations, along with the overall impression presented by Gore, reasonable consumers, including Plaintiffs, did not know

nor did they expect that Products with Gore-Tex Fabric were treated with and/or manufactured using PFAS.

## I.    Gore knows that its environmental stewardship is material to consumers.

123.    A large portion of consumers increasingly care about the environmental impact of products when making purchasing decisions, with many stating they are willing to pay more for sustainable options and prioritize brands with environmentally conscious practices. According to the McKinsey study, a staggering 78% of U.S. consumers say that a sustainable lifestyle is important to them, and that more than 60% of U.S. consumers disclosed that they care about buying environmentally and ethically sustainable products.[50] According to the study's authors, "the research shows that a wide range of consumers across incomes, life stages, ages, races, and geographies are buying products bearing ESG-related labels."

124.    Moreover, as consumers become increasingly aware of the consequences of climate change and environmental degradation, they begin to actively search for and purchase more environmentally friendly products.[51]

125.    It is also well documented that consumers are willing to pay a premium for products from supply chains that are less environmentally damaging. PricewaterhouseCoopers recently published a survey that found that consumers were willing to spend 9.7% more, on average, for sustainably produced or sourced goods, despite inflation and cost-of-living concerns.[52] According

---

[50] *Consumers care about sustainability—and back it up with their wallets*, McKinsey & Company, https://www.mckinsey.com/industries/consumer-packaged-goods/our-insights/consumers-care-about-sustainability-and-back-it-up-with-their-wallets#/ (last accessed June 16, 2025).

[51] Antonia Kerle, *An Eco-wakening: Measuring global awareness, engagement and action for nature*, Economist Impact (Sept. 29, 2021), https://impact.economist.com/sustainability/ecosystems-resources/an-eco-wakening-measuring-global-awareness-engagement-and-action-for-nature.

[52] *Consumers willing to pay 9.7% sustainability premium, even as cost-of-living and inflationary concerns weigh: PwC 2024 Voice of the Consumer Survey*, PricewaterhouseCoopers

to Forbes magazine, its annual revenue in 2024 was approximately $3 billion. Studies also show that the market for waterproof-breathable outerwear was approximately $460 million in 2024, of which Gore-Tex enjoys a 70% market share.

126.    In light of these trends, companies are increasingly allocating time, attention, and resources to position their products and supply chains as environmentally responsible via their advertisements and corporate literature. For example, the McKinsey study reviewed actual consumer purchasing behavior over a five-year period to compare products that made one or more ESG-related claims on their packaging to similar products which made none. The McKinsey study found that the packages with the ESG-related claims outperformed products that made none, and that there was "a clear and material link between ESG-related claims and consumer spending."

127.    And Gore is no exception. For more than a decade, Defendant has understood that consumers are concerned about the environmental impact of its Products. For example, as early as 2013, Gore Fabrics initiated a consumer survey on material attributes for consumers when choosing outerwear and found that "environmental factors – the use of environmentally friendly materials and reduced impact production process – are gaining importance" with consumers.[53]

128.    Gore also reiterates in many of its corporate documents its understanding that consumers find Gore's environmental practices to be material when considering which outdoor products to buy. For example, Gore states in its 2022 Sustainability Update report that "sustainability is increasingly at the heart of [] innovation as we strive to satisfy our customers'

---

(May 15, 2024), https://www.pwc.com/gx/en/news-room/press-releases/2024/pwc-2024-voice-of-consumer-survey.html.

[53] Gore Fabrics Responsibility Update, Gore (2015), available at https://www.gore-tex.com/sites/default/files/assets/gore_fabrics_responsibility_update_2015.pdf (last accessed June 16, 2025).

need for more sustainable products[.]"[54] And more recently, in December 2024, Gore's Business Leader, Achim Loeffler, expressly highlighted that consumers are not only aware of PFAS but that the use of PFAS is material to their purchase decisions: "many years ago, our customers approached us. We want to have a PFAS-free product, and it should, by the way, performance as well as any PTFE. […] It's high-performance and sustainable because our customers are asking for this."[55]

**J.    Gore's promotion of its purported commitment to environmental stewardship in its corporate literature evidences the materiality of the Common Omissions and Misrepresentations.**

129.    Gore saturates consumers with its "green" values message via its websites, use of labels, photo and video displays, corporate reports, public announcements, and social media messaging. Gore's advertising campaign also positions Gore as highly committed to environmental stewardship and as an environmental leader within the outdoor apparel industry via its advertisements and corporate literature. Gore's campaign also conveys a common message that its manufacturing processes and business decisions are consistent with these "green" values because it knows that environmental responsibility is important to consumers.

---

[54] Sustainability Update, Gore (2022), available at https://www.gore.com/system/files/2023-09/2022_Enterprise_Sustainability_Update_2023-09-07.pdf (last accessed June 16, 2025).

[55] *in B2B and B2C*, LuxePlace (Dec. 24, 2024), https://luxeplace.com/exclusive-interview-with-gore-tex-global-business-leader-how-to-build-strong-brand-identity-in-b2b-and-b2c/ (last accessed June 16, 2025).

130.    For example, as early as 2012, Gore published an Environmental Statement[56] specifically outlining the steps the company was taking in "minimizing our environmental footprint." The company also explained that environmental stewardship was central to Gore's founders and that the company was devoted to "carrying out that tradition":



131.    Gore's marketing also redefines the theme of outdoor apparel "performance" to expressly include a commitment to sustainability and green values:

---

[56] *Environmental Statement*, Gore, https://web.archive.org/web/20120214232646/http://www.gore-tex.com/remote/Satellite/content/sponsorships/environmental-statement (capture from Feb. 14, 2012).

## PERFORMANCE FOR PEOPLE. PERFORMANCE FOR THE PLANET

Our performance as a company depends on the sustainable performance of our products, our operations and our people. We are working to protect the planet and people because our society, and our business, depends on it.



*"Being fair and responsible to the environment while offering durable products which provide the best in class level of protection lies at the very heart of our culture. This is our founders, Bill and Vieve Gore's, legacy, and we are proud to continue this tradition."*





ROSS MACLAINE
Gore Fabrics Division Sustainability Leader

# PERFORMANCE REDEFINED

We at the Gore Fabrics Division, the maker of GORE-TEX products, know about performance. For over 40 years, we have been designing durable products that are tested to the extreme and perform in the harshest conditions, enabling people to perform at their best. But durable product performance is no longer enough. As we face severe and growing challenges to our climate, environment and society, we are taking responsibility for our actions and contributions.

Our performance depends on a healthy climate, a clean and thriving environment, fair labor conditions and safe working conditions. We are measuring our performance by our ability to protect people and the planet while prolonging the longevity of our products and promoting the wellbeing of individuals.

That's what we call Performance Redefined.



We are trusted for high performance products that "do what we say they will do." Maintaining this trust will depend on our continued ability to credibly demonstrate our long-term commitment to caring for people and planet. 



JACQUES RENÉ

Fabrics Division Leader

**As the GORE-TEX Brand, we take sustainability as seriously as we take performance.**

132.    Gore also identifies environmental stewardship as a "top priority for our business." Even Gore's CEO explains that Gore's "commitment to sustainability is an expression of our Gore brand promise[.]":

Our commitment to sustainability is an expression of our Gore brand promise, "Together, improving life". Our expectation is that the value of our innovations is greater than the environmental and social impact of our products and operations. 



JASON FIELD

President and CEO at W. L. Gore & Associates

1.    **Gore's "Sustainability Commitment" website promotes environmental stewardship and prominently features "green" images because Gore understood these claims to be material to a reasonable consumer.**

133.    Gore creates and maintains websites promoting its environmental claims, as it knows that this information is material to consumers.

134.    For example, Gore's Sustainability Commitment website represented Gore to consumers as a business committed to sustainability and to reducing the environmental impact of its business practices and products.[57] Below is an example of Gore's "aggressive" approach to environmental stewardship:



[57] *Responsible Usage of Fluorochemicals*, Gore-Tex, https://www.gore-tex.com/en_au/technology/responsibility/pfc-goal (last accessed June 16, 2025).



> *Gore continuously strives to deliver outdoor products with the optimal combination of high technical performance and sustainability. By adopting the ambitious goal to eliminate PFCs of Environmental Concern from all of our consumer fabrics products we are underlining our decades long commitment to continuously improve the environmental profile of our products. Together with our suppliers, we intend to achieve our goal through an aggressive innovation program that will entail the development of new DWR treatments and membrane materials.*

BERNHARD KIEHL
Gore Fabrics Sustainability Leader

135.    Under the FAQ section of the Sustainability Commitment website, Gore lists the question "What is the key environmental impact of Gore-Tex garments?" and then states: "Gore-Tex and other Gore fabrics are an environmentally sound choice because they are manufactured responsibly" and that Gore "employ[s] a Life Cycle Assessment approach that considers all aspects of our products [that] starts with the production of raw materials by our suppliers and includes all elements of manufacturing and transportation":

**WHAT IS THE KEY ENVIRONMENTAL IMPACT OF GORE-TEX GARMENTS?**

GORE-TEX and other GORE® fabrics are an environmentally sound choice because they are manufactured responsibly and their durable performance allows apparel to last longer, reducing the use of natural resources and waste.

While some manufacturers of functional materials focus on only part of the story regarding the environmental profile of their products, we employ a Life Cycle Assessment approach that considers all aspects of our products. This starts with the production of raw materials by our suppliers and includes all elements of manufacturing and transportation. We even consider the impact of the washing and drying performed by the consumer over the lifetime of the garment.

Comparing the relative impact of each phase of a GORE-TEX jacket's life, the largest environmental impact occurs during production and finishing of the component materials that make up a garment. In contrast, washing, drying, and retreating during the useful life and disposal incurs a smaller environmental impact.

136.    Also under the FAQs, Defendant states that apparel or accessories made with Gore fabrics "can be safely disposed of just like any other apparel product" without also explaining that there is much debate as to whether PTFE can be safely incinerated or disposed of in an environmentally safe way.[58]

> **HOW SHOULD I DISPOSE OF A GORE-TEX PRODUCT IN AN ENVIRONMENTALLY SAFE WAY?**
>
> Garments or footwear made from GORE® fabrics can be safely disposed of just like any other apparel product.
>
> Contrary to most other plastics, polytetrafluoroethylene (PTFE) - the raw material of our membrane - is not made or processed using plasticizers or stabilizers. It doesn't contain residuals like heavy metals, organotin compounds or phthalates. If disposed of in a landfill, PTFE will not degrade, so it will not contribute to the formation of greenhouse gases (i.e., methane) or release substances into the water or air. In an incineration plant, PTFE is safely converted to carbon dioxide and fluorspar. Potentially harmful gases are captured by pollution control devices (alkaline scrubbers) that have been in place for a number of decades.
>
> Finding ways to extend the useful life of a product has always been the environmentally preferred option over product disposal. One might wish to consider donating footwear or garments to charities or repurposing the product for other applications.

---

[58] *See, e.g.*, *Per- an Polyfluoroalkyl Substances Chemical Action Plan*, Washington State Department of Health, Section 4.5.3 Ultimate disposal, available at https://apps.ecology.wa.gov/publications/documents/2104048.pdf (last accessed June 16, 2025).

137.    Finally, Defendant makes various assertions related to the sustainability of its products, strategy, and manufacturing:[59]



As innovators in performance apparel for more than 60 years, we are committed to striving for more sustainable solutions across the industry. Through long-lasting products, science-led innovation, and our commitment to caring beyond with responsible business practices, our goal is to protect people in the outdoors and improve the environmental impact of our operations and products.

**2.    Gore keeps a YouTube channel with similar misleading claims about its environmental stewardship because Gore knows this information is material to a reasonable consumer.**

138.    In a video on its YouTube channel, Defendant claims to hold its commitment to sustainability to the same "high level" as its commitment to performance, or "responsible performance."[60] Similarly, on its website, Defendant states, "As the Gore-Tex Brand, we take sustainability as seriously as take performance:"[61]

---

[59] *Acting Responsibly Through Science-Based Innovation*, Gore, https://www.gore-tex.com/sustainability (last accessed Jan. 28, 2025); Jon Doran, *ePE: GORE-TEX's quiet fabric revolution*, Trek & Mountain (Mar. 25, 2024), https://trekandmountain.com/2024/03/25/epe-gore-texs-quiet-fabric-revolution/ (last accessed Jan. 28, 2025).

[60] *Responsible Performance - how does the Gore-Tex brand unite sustainability & performance?*, Gore-Tex Brand, https://www.youtube.com/watch?v=plOKGlyGads (last accessed June 16, 2025).

[61] *Acting Responsibly Through Science-Based Innovation*, Gore-Tex, https://www.gore-tex.com/sustainability (last accessed June 16, 2025).



**3.    Senior Gore employees consistently reinforce Defendant's message that its commitment to environmental stewardship is synonymous to its commitment to performance because Gore knows this information is material to a reasonable consumer.**

139.    In a global marketing campaign, Defendant emphasized its focus on sustainability through a new line of high-performance apparel.[62] Defendant's Fabrics Division sustainability team leader, Silke Kemmerling, stated: "We believe performance and sustainability are not mutually exclusive, and protecting people also means protecting the planet …. Responsible Performance defines our sustainability commitment beyond technical product performance benefits to include a wider combination of protection, comfort and sustainability. We are … striving to create products that positively impact both people and the planet, and deliver the high-performance benefits customers and consumers trust and rely on from us:"[63]

> As the GORE-TEX Brand, we take sustainability as seriously as we take performance.

---

[62] *"Our Work is Never Done" Salutes Gore-Tex's Storied Past and Sustainable Future*, The Drum (Sept. 15, 2022), https://www.thedrum.com/news/2022/09/15/our-work-never-done-salutes-gore-tex-s-storied-past-and-sustainable-future (last accessed June 16, 2025).

[63] *Id.*

140.     Repeating its commitment to "Responsible Performance," Defendant's Consumer Fabrics Business Leader, Achim Löffler, stated: "The Gore-Tex brand is committed to being a responsible brand and continuing our journey to discover innovative products that offer customers and consumers high performance and are also sustainable." Defendant's Fabrics Sustainable Leader, Ross MacLaine, echoed that commitment: "We continue to push the boundaries of what is possible in sustainability and performance in our products; lowering our footprint whilst continuing to meet demanding end user performance needs for protection and comfort."[64]

141.     All of these statements described in this section demonstrate that Gore's claims of environmental stewardship were material to consumers as part of their purchase decision. Therefore Gore had a duty to disclose the Common Omissions because its Hang Tags create the misleading and false impression that Gore is taking significant steps to reduce the environmental harm caused by the manufacturing of Gore-Tex Fabric. Gore had superior knowledge that it was continuing to use PFAS in its manufacturing process as a surfactant and that this manufacturing process was containing adjacent areas with extremely high levels of PFAS. Moreover, as evidenced by the Green Guides guidance, no reasonable consumer would readily understand that Gore-Tex fabric can leach PFAS via ordinary use or Gore's unilateral definition of the term "PFC" excluded PTFE, a type of PFAS.

**K.     Gore's practices violate the FTC Green Guides and state consumer protection statutes.**

142.     In response to the desire by increasing numbers of consumers to buy environmentally friendly products and of companies to tout the environmental benefits of their products, the FTC released its Green Guides.

---

[64] *Gore's Journey of Responsible Performance*, Suston, https://sustonmagazine .com/2022/03/31/gores-journey-of-responsible-performance/ (last accessed June 16, 2025).

143.    The Green Guides "apply to environmental claims in labeling, advertising, promotional materials, and all other forms of marketing in any medium, whether asserted directly or by implication, through words, symbols, logos, depictions, product brand names, or any other means,"[65] and sets forth guidance to marketers to "avoid making environmental claims that are unfair or deceptive under Section 5 of the FTC Act, 15 U.S.C. § 45."[66]

144.    "Section 5 of the FTC Act prohibits deceptive acts and practices in or affecting commerce. A representation, omission, or practice is deceptive if it is likely to mislead consumers acting reasonably under the circumstances and is material to consumers' decisions."[67] "Whether a particular claim is deceptive will depend on the net impression of the advertisement, label, or other promotional material at issue."[68]

145.    "To determine if an advertisement is deceptive, marketers must identify all express and implied claims that the advertisement reasonably conveys. Marketers must ensure that all reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis before they make the claims."[69] "[A] reasonable basis often requires competent and reliable scientific evidence [such as] tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons and are generally accepted in the profession to yield accurate and reliable results."[70]

---

[65] 16 C.F.R. § 260.1(c).

[66] Green Guides § 260.1.

[67] 16 C.F.R. § 260.2.

[68] 16 C.F.R. § 260.1(d) (emphasis added).

[69] 16 C.F.R. § 260.2.

[70] 16 C.F.R. § 260.2.

146.    The Green Guides also play a large role in state consumer protection law. At least twelve states[71] have laws that directly incorporate the standards set forth in the Green Guides as the legal standard for lawfully making certain marketing claims.[72] Additionally, twenty-seven states and territories[73] have laws providing that the FTC's interpretation in the Green Guides shall serve as persuasive authority for courts construing a particular state consumer protection law. The Green Guides have also been used as evidence in court proceedings involving false advertising litigation.

147.    The Green Guides address environmental claims by elucidating (1) general principles that apply to all environmental marketing claims; (2) how consumers are likely to interpret particular claims and how marketers can substantiate these claims; and (3) how marketers can qualify their claims to avoid deceiving consumers. The FTC Green Guides also expressly describe a marketer's responsibilities when making environmental claims. Some of these include:

> **§ 260.2 Interpretation and substantiation of environmental marketing claims.** A representation, omission, or practice is deceptive if it is likely to mislead consumers acting reasonably under the circumstances and is material to consumers' decisions. To determine if an advertisement is deceptive, marketers must identify all express and implied claims that the advertisement reasonably conveys. Marketers must ensure that all reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis *before* they make the claims. In the context of

---

[71] These states are Alabama, California, Florida, Indiana, Maine, Maryland, Michigan, Minnesota, New Mexico, New York, Pennsylvania, Rhode Island, and Washington.

[72] April 24, 2023 Comments to FTC re Green Guides from the states of California, Connecticut, Delaware, Illinois, Maryland, Michigan, Minnesota, New Jersey, New Mexico, New York, Oregon, Rhode Island, and Wisconsin, available at https://oag.ca.gov/system/files/attachments/press-docs/Comments%20to%20FTC%20re%20Green%20Guides%204.24.23.pdf.

[73] These are Alabama, Alaska, Arizona, Connecticut, District of Columbia, District of Guam, Florida, Idaho, Georgia, Illinois, Maine, Maryland, Massachusetts, Michigan, Montana, New Hampshire, New Mexico, Ohio, South Carolina, Rhode Island, Texas Tennessee, Utah, Vermont, Washington, and West Virginia.

environmental marketing claims, a reasonable basis often requires competent and reliable scientific evidence [created] in an objective manner by qualified persons. (emphasis added) (citation omitted)

**§ 260.3 (a) Qualifications & disclosures.** To prevent deceptive claims, qualifications and disclosures should be clear, prominent, and understandable.

**§ 260.3 (c) Overstatement of environmental attribute.** An environmental marketing claim should not overstate, directly or by implication, an environmental attribute or benefit. Marketers should not state or imply environmental benefits if the benefits are negligible. *Example 1:* An area rug is labeled "50% more recycled content than before" [but] the manufacturer increased the recycled content of its rug from 2% recycled fiber to 3%. Although the claim is technically true, it likely conveys the false impression that the manufacturer has increased significantly the use of recycled fiber.

**§ 260.4 General environmental benefit claims.** (a) It is deceptive to misrepresent, directly or by implication, that a product, package or service offers a general environmental benefit. (b) Unqualified general environmental benefit claims are difficult to interpret and likely convey a wide range of meanings. In many cases, such claims likely convey that the product, package, or service has specific and far-reaching environmental benefits that may convey that the item or service has no negative environmental impact. Because it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims, markets should not make unqualified general environmental benefit claims.

\*        \*        \*

*Example 3:* A marketer's advertisement features a laser printer in a bird's nest balancing on a tree branch, surrounded by dense forest. In green type, the marketer states, "Buy our printer. Make a change." Although the advertisement does not expressly claim that the product has environmental benefits, the featured images, in combination with the text, likely convey that the product has far reaching environmental benefits and may convey that the product has no negative environmental impact. Because it is highly unlikely that a marketer can substantiate these claims, this advertisement is deceptive.

\*        \*        \*

**§ 260.6 Certifications and seals of approval**: (a) It is deceptive to misrepresent, directly or by implication, that a product, package has

been endorsed or certified by an independent third party. (b) A marketers use of the name, logo, or seal of approval of a third party certifier or organization may be an endorsement, which should meet the criteria of the FTC's Endorsement Guides . . . (c) Third-party certification does not eliminate a marketers' obligation to ensure that it has substantiation for all claims reasonably communicated by the certification. (d) A marketer's use of an environmental certification or seal of approval likely conveys that the product offers a general environmental benefit . . . . Because it is highly unlikely that marketers can substantiate general environmental benefit claims, marketers should not use environmental certifications or seals that do not convey the basis for the certification. (e) . . . To avoid deception, marketers should use clear and prominent qualifying language that clearly conveys that the certification or seal refers only specific and limited benefits.

**§ 260.10 Non-Toxic Claims.**

(a) It is deceptive to misrepresent, directly or by implication, that a product, package, or service is non-toxic. Non-toxic claims should be clearly and prominently qualified to the extent necessary to avoid deception.

(b) A non-toxic claim likely conveys that a product, package, or service is non-toxic both for humans and for the environment generally. Therefore, marketers making non-toxic claims should have competent and reliable scientific evidence that the product, package, or service is non-toxic for humans and for the environment or should clearly and prominently qualify claims to avoid deception.

Example 1: A marketer advertises a cleaning product as "essentially non-toxic" and "practically non-toxic." **The advertisement likely conveys that the product does not pose any risk to humans or the environment,** including household pets. If the cleaning product poses no risk to humans but is toxic to the environment, the claims would be deceptive.

148.    The Green Guides also provide guidance regarding the use of terms such as "sustainability" as this term likely implies certain environmental benefits. Although the Green Guides do not define sustainability per se, "this does not mean unscrupulous marketers are free to

deceive consumers."[74] Indeed, according to the FTC, "marketers still are responsible for substantiating consumers' reasonable understanding of these claims." For example, "if in context reasonable consumers perceive a sustainable claim as a general environmental benefit claim, the marketer must be able to substantiate that claim and all attendant reasonably implied claims" and that, typically, a generic sustainability claim "presents substantiation challenges." For that reason, the FTC has admonished companies not to use unqualified claims such as "sustainable" due to its determination that "it is highly unlikely that they can substantiate reasonable interpretations of these claims."[75]

149. Gore's Common Omissions and Misrepresentations violate several portions of the FTC Green Guides. For example, Gore's Black Hang Tag states that it is "committed to sustainability." But according to Section 260.4 of the Green Guides, broad terms like sustainability can convey a range of reasonable meanings to a reasonable consumer. As such, Gore has a duty under the guides for substantiating all reasonable meanings with competent and reliable scientific evidence. If Gore cannot do so, then Gore violates Section 260.2, "Interpretation and Substantiation of Environmental marketing claims," of the FTC Green Guides, which requires markets to provide scientific evidence to justify its claims.

150. Additionally, Gore's Sustainability Promise website—which prominently features products with Gore-Tex Fabric in environmentally sensitive areas, likely conveys that Gore-Tex Fabric has no lasting negative environmental impact. This is reinforced by Gore's claims that its

---

[74] FTC, *The Green Guides Statement of Basis and Purpose*, at 258, available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguidesstatement.pdf (last accessed June 16, 2025).

[75] *FTC Sends Warning Letters to Companies Regarding Diamond Ad Disclosures* (Apr. 2, 2019), available at https://www.ftc.gov/news-events/news/press-releases/2019/04/ftc-sends-warning-letters-companies-regarding-diamond-ad-disclosures (last accessed June 16, 2025).

products are "non-toxic" to the environment. Because it is highly unlikely that Gore can substantiate these claims using scientific evidence, Gore's actions are substantially similar to Example 3 of Section 260.4, "General Environmental Benefit Claims," of the FTC Green Guides. And because Gore's PFC representations are negligible claims at best when compared to the environmental harm associated with manufacturing PTFE, Gore's actions are substantially similar to Example 1, and therefore Gore also violates Section 260.3(c), "Overstatement of environmental attribute," of the FTC Green Guides. Similarly, Gore's statement that its products are non-toxic to the environment is similar to Example 1 and therefore violates Section 260.10, "Non-Toxic Claims."

151.    Next, the statement "PFC* Free Laminate" on Gore's Brown Hang Tag violates the Green Guides in two ways. First, the Green Guides state in Section 260.9 that "Free-of" claims must not be "deceptive to misrepresent, directly or by implication that a product or package or service is free of, or does not contain or use, a substance." Here, Gore represents that its products do not contain PFCs in a prominent place on the label. But in the fine print of the label, Gore qualifies the commonly understood term of PFCs to its unilateral definition of "PFCs of Environmental Concern," but does not define what that term means on the Hang Tag. Instead, consumers would be forced to comb through pages and pages of Gore's website to finally learn that ePTFE is not included in Gore's definition of PFC—even though it is typically included as a PFC in academic journals, government publications, and consumer-facing websites. Second, Gore does not disclose on the tag that the product was still treated with a DWR-treated coating that contains PFAS. These practices violate Section 260.9, Free-Of Claims, of the Green Guides.

152.    Because the net impression of Defendant's Environmental marketing claims and the Common Omissions and Misrepresentations are likely to mislead reasonable consumers, they are deceptive and violate state consumer protection laws.[76]

**L.    Gore has actively concealed the truth about the Common Omissions and Misrepresentations from consumers.**

153.    Gore actively and knowingly concealed from and failed to disclose to Plaintiffs and the Class members that the Gore-Tex Fabric is not environmentally sustainable as described in this Complaint.

154.    Gore actively and knowingly concealed and failed to disclose material facts to Plaintiffs and the Classes about the true impact of the Gore-Tex Fabric's manufacturing process on the environment, including that:

- Gore currently uses PFAS to manufacture its PFC* Free products;

- Gore's manufacturing processes contaminated adjacent areas with significantly high levels of PFAS;

- Gore-Tex Fabric sheds PFAS via ordinary use;

- Gore's PFC* Free Laminate label misconstrues the common definition of PFC by unilaterally excluding ePTFE and PTFE; and

- Gore uses PFC, PFC*, and PFAS interchangeably.

155.    The knowing and active concealment of these material facts render the Gore-Tex Fabric products' packaging deceptive, misleading, and unfair because without full disclosure,

---

[76] *See, e.g.*, Cal. Bus. & Prof. Code § 17580.5(a) ("It is unlawful for a person to make an untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied. For the purpose of this section, 'environmental marketing claim' shall include any claim contained in the 'Guides for the Use of Environmental marketing claims' published by the Federal Trade Commission.").

reasonable consumers, including Plaintiffs, believe that products including Gore-Tex Fabric to be environmentally sustainable and to have environmental benefits when these products do not have these attributes.

156.    Plaintiffs and class members paid a premium price based on Gore's active concealment of the Common Omissions and Misrepresentations regarding the environmental and sustainability marketing claims.

157.    The facts concealed, omitted, or not disclosed by Gore were material facts in that reasonable consumers, including Plaintiffs, would have considered them when deciding whether to purchase products with Gore-Tex Fabric. Had Plaintiffs known the truth, they would not have purchased the product with Gore-Tex Fabric or paid the premium price.

## M.    Gore can easily remediate its current practices so that they become not misleading to consumers.

### 1.    Gore-Tex can be manufactured without any detectable levels of PFAS.

158.    There are many PFAS-free alternatives for both Gore-Tex's Membrane and DWR Treatment. For example, in or around 2021, Gore announced that it had created a new compound for its Gore-Tex Membrane that is PFAS-free.[77] Gore also created a PFAS-free DWR Treatment.[78]

159.    Moreover, manufacturer-retailer Columbia utilizes a fabric titled OutDry™ that has a PFAS-free membrane and treatment, Nikwax produces water-based, PFAS-free DWR treatments; The North Face's Futurelight Line features a PFC-free DWR treatment and a single-polymer fiber instead of PTFE; Marmot's PreCip Eco jacket is PFC-free and a product from its PFAS-free collection; Helly Hansen's products with Lifa Infinity Pro technology, including its

---

[77] *Next Generation Gore-Tex Products with ePE Membrane*, Gore, https://www.gore-tex.com/technology/new-products (last accessed June 16, 2025).

[78] *Durable Water Repellant (DWR)*, Gore, https://www.gore-tex.com/support/care/dwr (last accessed June 16, 2025).

Odin 9 Worlds Infinity 3L jacket and Verglas Infinity Shell pants, which are both PFC-free with no added chemicals for water repellency; The North Face's Freedom snow pants that have a PFC-free DWR coating for water resistance; and Salomon running and hiking footwear are PFC or PFC EC-free.[79]

> **2.    Gore can follow expert guidance on how to more accurately label its Gore-Tex products so they are not misleading to consumers.**

160.    The materiality to consumers of PFAS is evidenced by the rise of companies promoting "PFAS-Free Apparel". An example is found on the website "Good Trade"[80] an organization who publishes editorials and reviews on sustainability and sustainable products.

161.    The article focuses on the active clothing category. And manufacturers other than Gore-Tex have made clear representations about the use of PFAS that contrast sharply with the misleading claims of Gore. In a list compiled by the Environmental Working Group, the clarity of these claims contrast sharply with the omissions and misrepresentations made by Gore:[81]

| Category | Products Covered | Brand | Company Policy |
|---|---|---|---|
| Apparel | Apparel, homeware, | H&M | **"We banned PFAS in our apparel, homeware and shoes in 2013, and in H&M Group branded** |

---

[79] *Safest, Non-Toxic Jackets & Raincoats Without PFAS "Forever Chemicals"*, Mamavation (Nov. 8, 2021), https://www.mamavation.com/product-investigations/safest-nontoxic-jackets-raincoats-pfas-forever-chemicals.html (last accessed June 16, 2025); *Gear Chat | The North Face Futurelight & Gore-Tex*, Fall Line Skiing, https://www.fall-line.co.uk/the-north-face-futurelight-and-gore-tex/ (last accessed June 16, 2025); *Marmot PreCip Eco Rain Jacket Review*, Switch Back Travel, https://www.switchbacktravel.com/reviews/marmot-precip-eco (last accessed June 16, 2025); *Life Infinity Pro & Life Infinity*, Helly Hanson, https://www.hellyhansen.com/lifa-infinity-pro (last accessed June 16, 2025); *Life Infinity Pro*, Helly Hanson, https://www.hellyhansen.com/en_us/shop/technologies/lifa-infinity-pro (last accessed June 16, 2025); *The North Face Freedom Pants – Men's*, REI, https://www.rei.com/product/235656/the-north-face-freedom-pants-mens (last accessed June 16, 2025); *Salomon's Footwear Range now PFC- and PFC EC-free*, Salomon, https://www.salomon.com/en-us/blog/pfc-ec-free-footwear (last accessed June 16, 2025).

[80] https://www.thegoodtrade.com/features/pfas-free-clothing/

[81] https://www.ewg.org/withoutintentionallyaddedphaspfc

| Category | Products Covered | Brand | Company Policy |
|---|---|---|---|
| | shoes and cosmetics | | cosmetics in 2018." https://hmgroup.com/wp-content/uploads/2021/03/HM-Group-Sustainability-Performance-Report-2020.pdf |
| | All industrial processes | Benetton | "Benetton Group banned Per- and Polyfluorinated chemicals (PFCs) from all industrial processes involving any product or materials. Benetton Group asks all its suppliers to use only sustainable PFC-free chemicals." 98% compliance. https://www.benettongroup.com/site/assets/files/1143/benetton_pfcs_elimination_progress_dec_2022.pdf |
| | All products | Burberry | Long- and short-chain PFCs are "banned from use" on the Restricted Substances List (RSL). https://www.burberryplc.com/content/dam/burberryplc/corporate/documents/impact/impact-documents/product-restricted-substances-list-february-2019.pdf |
| | All products | Levi Strauss & Co. | "Levi Strauss & Co. has banned the use of PFCs in our products and extended that ban to include all related PFAS." https://www.levi.com/US/en_US/blog/article/why-levis-stopped-using-pfcs-and-pfas |
| | All products | Theory, part of Fast Retailing Group | "We worked with our business partners to develop alternatives to PFCs, and had eliminated PFC use by the fall/winter season of 2017." https://www.fastretailing.com/eng/sustainability/environment/chemical.html |
| | All products | UNIQLO, part of Fast Retailing Group | "We worked with our business partners to develop alternatives to PFCs, and had eliminated PFC |

| Category | Products Covered | Brand | Company Policy |
|---|---|---|---|
| | | | use by the fall/winter season of 2017." https://www.fastretailing. com/eng/sustainability/environm ent/chemical.html |
| | All products | BESTSELLER (Only, Vero Moda, Jack&Jones) | "Instead of using chemicals that contain PFAS, we work with suppliers to use Bionic Eco – a water repellent finishing that is a safer and fluorocarbon-free alternative." |
| | All clothing | Armadillo Merino | "We take pride in designing the world's most advanced next-to-skin chemical and PFAS free clothing." |
| | All clothing | ARTILECT | "ARTILECT are very proud to be one of the first performance apparel brands to be completely PFA/PFC free in our fabrics, with no ePTFE, C6 DWR, or other "forever chemicals" to be found in our shells, insulations, or linings." |
| | TENCEL™ fibres | BESTSELLER (Only, Vero Moda, Jack&Jones) | "Instead of using chemicals that contain PFAS, we work with suppliers to use Bionic Eco – a water repellent finishing that is a safer and fluorocarbon-free alternative." https://bestseller.co m/media/qtwkh1es/bestseller_an nual-report-2022-23.pdf |
| | All products and materials | NA-KD | "PFAS are prohibited from use on NA-KD products or materials." https://www.na-kd.com/siteassets/campaigns/202 0/november/nakd-truth/environment-supply-chain/na-kd-restrictedsubstances.pdf?ref=115 D68CCDA1 |
| | Riding clothes | Stierna Equestrian Sportswear | "Stierna's waterproof riding clothes have been free from PFAS since its launch in |

| Category | Products Covered | Brand | Company Policy |
|---|---|---|---|
| | | | **2015."** https://www.stierna.se/do kument/Stierna%20Sustainability %20Report%202022%20Light.pdf |
| **Durable Water Repellent (DWR)** | Ultra Durable Canvas Waterproofer | Hawk Tools | **"it's natural and does not contain PFC's and is PFAS free."** https://www.hawktoolsusa .com/2022/10/19/how-to-waterproof-a-bell-tent/ |
| | ZELAN™ R3, PHOBOTEX® R-ACE | Archroma | **PFAS-free* technologies** *Below limits of detection according to industry standard test methods. https://www.archroma.com/news /fluorine-free-solutions |
| | All products | AKAS Textiles and Laminations | **"AKASTEX would like to state that we do not use PFOS or PFOA in any of our manufacturing."** https://akastex. com/akas-manufactures-pfoa-pfas-free-textiles/ |
| | Altopel F3® products | Bolger & O'Hearn | **"An advanced PFC-free water repellent finish."** https://bolgerohearn.com /f3-altopel/ |
| | zeroF products and ECOPERL | CHT | **"Fluorine-free water-repellent treatment."** https://solutions.cht. com/cht/web.nsf/id/pa_zerof_en. html |
| | BIONIC-FINISH® ECO | Rudolf Group | **"Comes as a family of unique non-halogenated, APEO-free, fluorine-free formulations."** https://rudolf.co m/technologies/bionic-finish-eco |
| | Ecoguard-SYN (Conc) | Sarex | **"Fluorine free speciality product."** https://www.sarex.com /textile/product/finishing-auxiliaries/oil-water-and-stain-repellents/ecoguard-syn-conc |
| | Curb Water Repellent products | Sciessent | **100% fluorine-free, rapidly biodegradable, and Bluesign** |

| Category | Products Covered | Brand | Company Policy |
|---|---|---|---|
| | | | **approved** .https://www.sciessent.com/solutions/water-repellent/ |
| | Teflon EcoElite | Teflon | **"Non-fluorinated stain repellent technology."** https://www.teflon.com/en/industries-and-solutions/solutions/consumer-applications/textile-finishes/how-ecoelite-works |
| | Unidyne XF | Daikin | **"PFC free water repellency."** https://www.daikinchem.de/product/water-oil-repellents/unidyne-xf-pfc-free-water-repellency/ |
| | Downtek water repellent down & Downtek PFC-free water repellent down | DownTek | Water-repellent down: **"No PFOA and no PFOS"** but does use C6 formulas. https://down-tek.com/ PFC-Free water-repellent down: **"DWR formula completely free from all PFCs."** https://down-tek.com/ |
| | Nanomyte SR-200EC | NEI | **"PFC-free"** https://www.neicorporation.com/products/coatings/easy-to-clean-coating/#tab-id-2 |
| | Neoseed Series | NICCA | **"NEOSEED series is a PFC-free durable water repellent."** https://nctexchem.com/product/process/finishing/recommend/neoseed/ |
| | All DWR products | Polartec, a Milliken & Company brand | **"announces the elimination of PFAS in its DWR treatments across its line of fabrics." (July 2021)** https://www.polartec.com/news/polartec-announces-full-use-of-non-pfas-dwr-treatments |
| | All Sympatex laminates | SympaTex | **"Sympatex has always been PFAS and PTFE free."** https://www.sympatex.com/en/press/pfas-free-textile-solutions/ |
| | All products | OrganoClick | **"It is PFAS-free and readily biodegradable."** https://organocli |

| Category | Products Covered | Brand | Company Policy |
|---|---|---|---|
| | | | ck.com/wp-content/uploads/2022/10/OrganoTex_DWR-brochure_web.pdf |
| | Wash-in textile waterproofing | Snickers Workwear | **"Free from fluorocarbons (PFAS, PFOS, PFOA), cyclic siloxanes, and isocyanates."** https://www.snickersworkwear.com/products/accessories/other-accessories/213527 |
| | All products | Didriksons | **"The water repellency treatment on all products are from 2015 free from fluorinated substances."** https://support.didriksons.com/hc/en-gb/articles/360037220172-Does-your-garment-have-any-per-fluorinates-fluorocarbons **"Phthalates or heavy metals are not knowingly implemented into our products, however, accidental or involuntary contamination could occur during transit or transfer."** https://support.didriksons.com/hc/en-gb/articles/360037587231-Do-your-garments-or-accessory-use-or-contain-phthalates-heavy-metals-and-other-dangerous-chemicals |
| | Select "PFC-Free" tagged products | Mammut | **"Mammut abandoned C8 PFCs entirely in 2015 and began stepping back from C6 PFCs already in 2016. Building on the momentum, the full Mammut apparel collection reached 85% PFC-free in summer 2022 and is set to reach 94% in summer 2024. The clear goal is to hit 100% PFC-free by 2025."** https://www.mammut.co |

| Category | Products Covered | Brand | Company Policy |
|---|---|---|---|
| | | | m/us/en/stories-guides/waterproofing |
| | Jackets, gilets, trousers, helmets, eyewear, gloves, bags, luggage, socks, hat warmers, re-proofers | Endura | "**We do not use PTFE in any of our products.**" https://www.endurasport.com/<br><br>"**In 2018 we launched our own biodegradable and PFC-free re-proofer.**" https://www.endurasport.com/ |
| | Coats, jackets, pants, accessories, t-shirts | ELVINE | "**We use a water repellent impregnation without highly fluorinated chemicals (PFASs). PFASs are toxic to humans and environment.**" https://www.elvineclothing.com/sv/blogs/news/a-company-with-self-respect |
| | All products | Klättermusen | "**As early as 2008, Klättermusen's products were PFOA-free and, by 2019, all products were PFAS-free.**" https://www.ri.se/en/centre-for-chemical-substitution/good-examples/klattermusen |
| | All products | Revolutionrace AB | "**Sin[c]e 2019, we have banned hazardous PFAS chemicals in our products, opting for fluorocarbon-free alternatives.**" https://corporate.revolutionrace.com/en/product-safety/ |

162.     Consumer and environmental groups have long maintained that certain PFAS labeling that are similar to Gore's can be confusing and misleading to consumers. One aspect that these groups find most misleading is a retailer's or manufacturer's omission as to the use of PTFE. Below is one example from the Natural Resources Defense Council, a non-governmental organization consisting of three million members and the expertise of over 700 scientists, lawyers, and other environmental specialists.[82] This graphic shows that omitting PTFE from the definition of PFC Free or PFAS Free misleads reasonable consumers:

| Labels to Watch For | What It Really Means | Recommended Action |
|---|---|---|
| Water-resistant, waterproof, stain-resistant, dirt-repellent, and/or DWR | Products with these labels may indicate presence of PFAS. | Ask the manufacturer if product contains any PFAS (including PTFE). If it does, avoid buying. |
| PFOS and/or PFOA Free | This product may contain PFAS. PFOS and PFOA refer to only two of thousands of PFAS chemicals that could be in the product. | Ask the manufacturer if product contains any PFAS (including PTFE). If it does, avoid buying. |
| PFC Free and/or PFCec Free | This product may contain PFAS. PFC and PFCec could refer to only a subset of PFAS chemicals and not the many thousands that have been developed since the term PFC came into use. | Ask the manufacturer if product contains any PFAS (including PTFE). If it does, avoid buying. |
| PFAS Free | This product could be PFAS free. Manufacturers, however, don't always include a specific type of PFAS called PTFE in their definition of PFAS, so the product may not actually be PFAS free. | Ask the manufacturer if product contains any PTFE. If it does, avoid buying. |

163.     Similarly, non-governmental organizations and academic researchers also criticize the practice of certain companies of equating PFOA and PFOS with the "worst" types of PFAS, while also implying that other PFAS compounds are more benign to human health and the environment. In truth, once companies were forced to phase out PFOA and PFOS in 2015, they

---

[82] *Toxic Fashion: Remove "Forever" PFAS Chemicals from Our Apparel*, NRDC, https://www.nrdc.org/sites/default/files/toxic-fashion-pfas-apparel-fs.pdf (last accessed June 16, 2025).

simply developed new chemicals as substitutes. But, just like PFOA and PFOS, these newer chemicals are still persistent, bio-accumulative, and toxic. While many scientific organizations have documented the risks that PFAS—as a group—pose to human health and the environment, there are inadequate data to identify how toxic some PFAS are relative to others. Therefore, attempts to differentiate between different types of PFAS are misleading to consumers:[83]

**Misleading claims:**

When it comes to PFAS, product claims can be misleading.

There are thousands of different types of PFAS. The first two chemicals to be introduced were PFOA (perfluorooctanoic acid) and PFOS (perfluorooctanesulfonic acid.). Voluminous research demonstrates that these chemicals are persistent, bio-accumulative and toxic. As a result, the Environmental Protection Agency worked with industry to phase out American manufacture of these chemicals in 2015.

Industry developed new chemicals to replace PFOA and PFOS. These new chemicals are sometimes called "short-chain" chemicals while PFOA and PFOS are referred to as "long-chain" or legacy chemicals.

**Some industry claims:**

**Long-chain PFAS are unsafe, short-chain PFAS are safe.**
No PFAS have been shown to be safe.

**PFCec Free Durable Water Repellant (DWR) is safe.**
PFCec stands for PFCs of environmental concern, and PFCec Free refers to polymers or shorter chain PFAS that industry claims are safer, but no PFAS have been shown to be safe.

**This pan is PFOA-free and PFOS-free.**
Products that make this claim often have other PFAS.

**Fluoropolymers (large molecules with fluorine) are stable and safe.**
No, they're not. They are made using harmful PFAS chemicals and they can break down into other toxic PFAS.

**Industry claims: PFAS are like berries. They're all different.**
Scientists around the world are calling for restrictions on the entire class of PFAS, because:

- PFAS have common characteristics that make them extremely persistent.
- Those PFAS that have been studied have been found to be toxic at very low doses.
- While every one of the thousands of PFAS have not been fully analyzed, there is enough concern about those PFAS that have been characterized to warrant caution.

## N.    TOLLING OF THE STATUTES OF LIMITATIONS

### 1.    Discovery rule tolling

164.    Plaintiffs' claims are timely. They and other class members had no prior knowledge of the omissions. Plaintiffs could not discover Gore's false environmental claims since the true extent of its ongoing use of PFAs contradicting these claims were concealed by the omissions and

---

[83] Shopper's Guide to Avoiding PFAS, available at https://www.cleanwateraction.org/sites/default/files/MA%20PFAS%20Fact%20Sheet%20-%20Shopper%27s%20Guide%20to%20Avoiding%20PFAS.pdf (last accessed June 16, 2025).

Gore's long-standing advertising and public relations campaign of actively protecting the environment.

165.    Plaintiffs and other Class members had no way of knowing Gore's deception and coverup about its real negative environmental impact by its continued use of PFAS in face of growing evidence that all PFAS (e.g., both long chained and short chained) result in both health and environmental risks. Even a visit to Gore's website today shows its attempt to falsely recast itself as a protector of the environment and leaving as little negative impact on the environment as possible (exactly what it knew its target market wanted).

166.    Within the time period of any applicable statutes of limitation, Plaintiffs and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Gore was concealing the conduct complained of herein and was misrepresenting its true position with respect to the sustainability and negative environmental impact it caused by continued use of PFAS in its products.

167.    Plaintiffs and the other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Gore did not report information within its knowledge to federal and state authorities or consumers; nor would a reasonable and diligent investigation have disclosed this information, which was discovered by Plaintiffs only shortly before this action was filed. Nor in any event would such an investigation on the part of Plaintiffs and other Class members have disclosed that Gore valued profits over truthful marketing and compliance with law.

168.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims alleged herein.

**2.    Fraudulent concealment tolling**

169.    All applicable statutes of limitation have also been tolled by Gore's knowing and active fraudulent concealment, omissions and suppressions, and denial of the facts alleged herein throughout the time period relevant to this action.

170.    Instead of directly informing the public about its ongoing use of PFAS that have both environmental and health risk, Gore chose to misconstrue, mislead, and hide its real sustainability issues all while touting itself as "serious" about protecting the environment.

**3.    Estoppel**

171.    By consistently touting its environmentally friendly products, Gore was under a duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the PFAS utilized in its products, including the environmental impact and health risks.

172.    Gore knowingly, affirmatively, and actively concealed, omitted or suppressed, or recklessly disregarded the true character, quality, and nature of the PFAS utilized in its products, including the environmental impact and health risks. Hence, Gore is estopped from relying on any statutes of limitations.

## V.    CLASS ACTION ALLEGATIONS

173.    Plaintiffs bring this action on behalf of themselves and all those similarly situation as a class action pursuant to the provisions of Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following classes. Plaintiffs seek to represent the following groups of similarly situated persons, defined as follows:

**Maryland Subclass**

>   All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Maryland.

**California Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of California.

**Connecticut Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Connecticut.

**District of Columbia Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the District of Columbia

**Florida Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Florida.

**Illinois Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Illinois.

**Minnesota Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Minnesota.

**New York Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of New York.

**Washington Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Washington.

174.    The classes set forth below are classes for states for which there are no named plaintiffs at present but either incorporate the Green Guides into their consumer protection statutes or find Green Guide examples persuasive authority for deception.[84]

**Alabama Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Alabama.

**Alaska Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Alaska.

**Arizona Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Arizona.

**Georgia Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Georgia.

**Idaho Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Idaho.

**Indiana Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Indiana.

**Massachusetts Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Massachusetts.

---

[84] *What's in a Label? The FTC's "Green Guides" in Context*, The State Energy & Environmental Impact Center, NYU School of Law (Feb. 23, 2023), https://stateimpactcenter.org/insights/whats-in-a-label-the-ftc-green-guides-issue-brief (last accessed June 16, 2023).

**Maine Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Maine.

**Montana Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Montana.

**New Hampshire Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of New Hampshire.

**New Mexico Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of New Mexico.

**Ohio Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Ohio.

**Pennsylvania Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Pennsylvania.

**South Carolina Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of South Carolina.

**Tennessee Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Tennessee.

**Texas Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Texas.

**Utah Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Utah.

**Vermont Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of Vermont.

**West Virginia Subclass**

All persons who purchased Gore-Tex Fabric between January 1, 2018, and December 31, 2024, in the state of West Virginia.

175.    Excluded from the Class are Gore and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

176.    Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

177.    This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

178.    Numerosity. Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiffs are informed and believe that annual sales of waterproof breathable textiles in the United States range from $277 to $261 million between 2014 and 2024,[85] and that a significant market share of these sales include products made with Gore-Tex Fabric, and therefore

---

[85] *Forecasted market revenue of waterproof breathable textiles in the United States from 2014 to 2024*, Statista, https://www.statista.com/statistics/857055/waterproof-breathable-textiles-us-market-value-forecast/.

estimate the number of class members to be more than one million. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, email, text messages, social media, Internet postings, and/or published notice.

179.    Commonality and Predominance. Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

- Whether Gore engaged in the conduct alleged herein;

- Whether Gore designed, advertised, marketed, distributed, sold, or otherwise placed Gore-Tex Fabric into the stream of commerce in the United States;

- Whether Gore made specific claims to consumers of environmental stewardship regarding the manufacturing processes for Gore-Tex Fabric;

- Whether Gore knew of the environmental damage caused by using PFAS in the manufacturing process for its Gore-Tex Fabric;

- Whether Gore's conduct violates consumer protection statutes, the common law of fraudulent concealment, and other laws as asserted herein;

- Whether Gore knew or should have known of the PFAS shedding during ordinary use of Gore-Tex Fabric;

- Whether Plaintiffs and the other Class members overpaid for their Gore-Tex Fabric as a result of the fraud alleged herein;

- Whether Plaintiffs and the other Class members are entitled to equitable relief; and

- Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

180.    Typicality. Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Gore's wrongful conduct as described above.

181.    Adequacy. Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes each respectively seeks to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

182.    Declaratory and Injunctive Relief. Federal Rule of Civil Procedure 23(b)(2): Gore has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

183.    Superiority. Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Gore, so it would be impracticable for Class members to individually seek redress for Gore's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast,

the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    CLAIMS FOR RELIEF

**A.    Claim brought on behalf of the Maryland Class**

### COUNT I
### VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT
### (MD. CODE, COM. LAW § 13-101, *ET SEQ.*)

184.    Plaintiff Walton incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

185.    This claim is brought by Plaintiff Walton on behalf of the Maryland Class.

186.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

187.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore

materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably. ("Common Omissions')

188.    The Maryland Consumer Protection Act (Maryland CPA) provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good, including "failure to state a material fact if the failure deceives or tends to deceive"; "false or misleading representation[s] of fact which concern[] . . . [t]he reason of or the existence or amount of a price reduction"; and "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same," Md. Code, Com. Law § 13-301, regardless of whether the consumer is actually deceived or damaged, Md. Code, Com. Law § 13-302.

189.    Defendant, Plaintiffs, and Maryland Class members are "persons" within the meaning of Md. Code, Com. Law § 13-101(h).

190.    Pursuant to Md. Code, Com. Law § 13-408, Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

**COUNT II**
**FRAUDULENT CONCEALMENT**
**(BASED ON MARYLAND LAW)**

191.    Plaintiff Walton incorporates by reference all preceding allegations as though fully set forth herein.

192.    Plaintiff Walton brings this Count on behalf of the Maryland Class.

193.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental

sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

194.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

195.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Maryland law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

196.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Maryland Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the

other Maryland Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Maryland Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

197.    Accordingly, Gore is liable to Plaintiffs and the other Maryland Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

198.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Maryland Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**B.    Claims brought on behalf of the California Class**

**COUNT III**
**VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
**(CAL. CIV. CODE § 1750, ET SEQ.)**

199.    Plaintiff Tsirkas incorporates by reference all preceding allegations as though fully set forth herein.

200.    Plaintiff Tsirkas brings this Count on behalf of the California Class.

201.    California's Consumers Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1750, et seq., proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

202.    Gore-Tex Fabric products are "goods" as defined in CAL. CIV. CODE § 1761(a).

203.    Plaintiff and the other California class members are "consumers" as defined in CAL. CIV. CODE § 1761(d), and Plaintiff, the other California Class members, and Defendant are "persons" as defined in CAL. CIV. CODE § 1761(c).

204.    In purchasing products with Gore-Tex Fabric, Plaintiff and the other California Class members were deceived by Defendant's marketing of Gore-Tex Fabric as an environmentally sustainable product, and obtaining money from Plaintiff and California Class members, while also failing to disclose that:

- Gore-Tex Fabric is a fundamentally unsustainable product and toxic to the environment;

- Gore's PFC* Free Laminate label misconstrues the common definition of PFC by unilaterally excluding ePTFE and PTFE;

- Gore currently uses PFAS to manufacture its PFC* Free products;

- Gore-Tex Fabric also sheds PFAS via ordinary use;

- Defendant's continuing violations of federal guidance on environmental marketing claims, e.g. the FTC Green Guides; and

- Defendant's continuing violations of other California laws, including Cal. Civ. Code §§ 1709, 1710, and 1750, et seq., and Cal. Com. Code § 2313.

205.    Defendant's conduct, as described hereinabove, was and is in violation of the CLRA. Defendant's conduct violates at least CAL. CIV. CODE § 1770(a)(16) (representing that goods have been supplied in accordance with a previous representation when they have not).

206.    Plaintiff and the other California Class members have suffered injury in fact and actual damages resulting from Defendant's material omissions and/or misrepresentations because they paid an inflated purchase price for products with Gore-Tex Fabric.

207.    Defendant knew, should have known, or was reckless in not knowing of the material omissions and/or misrepresentations.

208.    The facts concealed and omitted by Defendant to Plaintiffs and the other California Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase products with Gore-Tex Fabric or pay a lower price. Had Plaintiffs and the other California Class members known about the material omissions and/or misrepresentations they would not have purchased these products or would not have paid the prices they paid in fact.

209.    Plaintiff has provided Gore with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a). The notice was transmitted to Gore on January 28, 2025.

210.    Plaintiff and the other California Class members' injuries were proximately caused by Gore's fraudulent and deceptive business practices.

211.    Therefore, Plaintiff and the other California Class members are entitled to equitable relief and will amend this action and seek monetary relief under the CLRA.

## COUNT IV
## VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE § 17500, ET SEQ.)

212.    Plaintiff Tsirkas incorporates by reference all preceding allegations as though fully set forth herein.

213.    Plaintiff Tsirkas brings this Count on behalf of the California Subclass.

214.    Cal. Bus. & Prof. Code § 17500 states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other

publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

215.    Gore has violated Cal. Bus. & Prof. Code § 17500 because the omissions and/or misrepresentations regarding the environmental sustainability of Gore-Tex Fabric as set forth in this Complaint were material and likely to deceive a reasonable consumer.

216.    Plaintiff and the other California Class members have suffered an injury in fact, including the loss of money or property, as a result of Gore's unfair, unlawful, and/or deceptive practices. In purchasing Gore-Tex Fabric products, Plaintiff and the other California Class members saw and were exposed to the omissions and/or misrepresentations of Gore with respect to environmental sustainability of Gore-Tex Fabric. Gore's representations turned out not to be true because Gore's manufacturing processes are environmentally devastating, as described herein. Had Plaintiff and the other California Class members known this, they would not have purchased products with Gore-Tex Fabric and/or paid as much for these products. Accordingly, Plaintiff and the other California Class members overpaid for their Gore-Tex Fabric products and did not receive the benefit of their bargain.

217.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Gore's business. Gore's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

218.    Plaintiff, individually and on behalf of the other California Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Gore from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other California

Class members any money Gore acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**COUNT V**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)**

219.    Plaintiff Tsirkas incorporates by reference all preceding allegations as though fully set forth herein.

220.    Plaintiff Tsirkas brings this Count on behalf of the California Class.

221.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

222.    Gore's conduct, as described herein, was and is in violation of the UCL in at least the following ways:

223.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

224.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply

wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

225.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other California Class members to make their Gore-Tex purchases. Absent those omissions and/or misrepresentations, Plaintiffs and the other California Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other California Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

226.    Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Gore under Cal. Bus. & Prof. Code § 17200.

227.    Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Gore from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the California Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

### COUNT VI
### FRAUDULENT CONCEALMENT
### (BASED ON CALIFORNIA LAW)

228.    Plaintiff Tsirkas incorporates by reference all preceding allegations as though fully set forth herein.

229.    Plaintiff Tsirkas brings this Count on behalf of the California Class.

230.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

231.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

232.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under California law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including

on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

233. Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other California Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other California Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other California Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

234. Accordingly, Gore is liable to Plaintiffs and the other California Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

235. Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other California Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## C. Claims brought on behalf of the Connecticut Class

**COUNT VII**
**VIOLATION OF THE CONNECTICUT UNFAIR**
**TRADE PRACTICES ACT**
**(CONN. GEN. STAT. § 42-110A, *ET SEQ.*)**

236. Plaintiff Liberman hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

237. This claim is brought by Plaintiff Liberman on behalf of the Connecticut Class.

238.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

239.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

240.    The Connecticut Unfair Trade Practices Act (Connecticut UTPA) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

241.    Defendant is a "person" within the meaning of Conn. Gen. Stat. § 42-110a(3).

242.    Defendant's challenged conduct occurred in "trade" or "commerce" within the meaning of Conn. Gen. Stat. § 42-110a(4).

243.    Plaintiffs and Connecticut Class members are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g.

244.    Defendant acted with reckless indifference to another's rights, or wanton or intentional violation of another's rights and otherwise engaged in conduct amounting to a particularly aggravated, deliberate disregard for the rights and safety of others. Therefore, punitive damages are warranted.

**COUNT VIII**
**FRAUDULENT CONCEALMENT**
**(BASED ON CONNECTICUT LAW)**

245.    Plaintiff Liberman incorporates by reference all preceding allegations as though fully set forth herein.

246.    Plaintiff Liberman brings this Count on behalf of the Connecticut Class.

247.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

248.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric

sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

249.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Connecticut law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

250.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Connecticut Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Connecticut Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Connecticut Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

251.    Accordingly, Gore is liable to Plaintiffs and the other Connecticut Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

252.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Connecticut Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**D.    Claims brought on behalf of the District of Columbia ("DC")**

**COUNT IX**
**CONSUMER PROTECTION PROCEDURES ACT (CPPA)**
**(D.C. CODE § 28-3901 *ET SEQ.*)**

253.    Plaintiff Hulsey incorporates by reference all preceding allegations as though fully set forth herein.

254.    This claim is brought by Plaintiff Hulsey on behalf of the DC Class.

255.    Defendant is a "merchant" and Plaintiffs and DC Class members are "consumers" as defined by the CPPA.

256.    Plaintiffs and DC Class members purchased Gore-Tex Fabric products primarily for personal, household, or family use.

257.    Defendant committed a prohibited trade practices by misleading and deceiving consumers about the environmental impact of Gore-Tex Fabric products by omitting information about the environmentally devastating industrial manufacturing practices for Gore-Tex Fabric. Defendant's failure to state these material facts tended to mislead consumers and are therefore also are unfair and false.

258.    Defendant's actions as described herein are also prohibited under D.C. Code § 28-3904, including: misrepresenting material facts (subsection (e)); advertising goods/services with intent not to sell them as advertised (subsection (d)); falsely stating that goods/services are of a

particular standard or quality (subsection (a)); and failing to state a material fact that would tend to mislead (subsection (f-1)).

259.    Plaintiffs and the suffered economic harm by being misled into making a purchase, or paying a premium for products with Gore-Tex Fabric that they would not have done but for Defendant's deceptive and unfair practices.

**COUNT X**
**FRAUDULENT CONCEALMENT**
**(BASED ON DC LAW)**

260.    Plaintiff Hulsey incorporates by reference all preceding allegations as though fully set forth herein.

261.    Plaintiff Hulsey brings this Count on behalf of the DC Class.

262.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

263.    Gore actively conceals from consumers the following Common Omissions(1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also

explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

264.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under District of Columbia law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

265.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other DC Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other DC Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other DC Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

266.    Accordingly, Gore is liable to Plaintiffs and the other DC Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

267.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other DC Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an

assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**E.     Claims brought on behalf of the Florida Class**

**COUNT XI**
**VIOLATION OF THE FLORIDA'S UNFAIR &**
**DECEPTIVE TRADE PRACTICES ACT**
**(FLA. STAT. § 501.201, *ET SEQ*.)**

268.     Plaintiff Contois hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

269.     Plaintiff Contois brings this Count on behalf of the Florida Class.

270.     The FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

271.     Plaintiffs and Class members are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7).

272.     Defendant engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

273.     In the course of business, Defendant willfully failed to disclose and actively concealed its environmentally devastating industrial manufacturing processes as discussed herein. Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of products with Gore-Tex Fabric. These practices were in violation of the FUDTPA.

274.     Defendant unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the other Florida Class members, about the true environmental impact of products with Gore-Tex Fabric.

275.     Defendant intentionally and knowingly misrepresented material facts about Gore manufacturing processes with intent to mislead Plaintiffs and the Florida Class.

276.     Defendant knew or should have known that their conduct violated the FUDTPA.

277.     Defendant was required to disclose the omissions as they were contrary to their representations that Gore-Tex Fabric was a environmentally sustainable product. Defendant was also under a duty to disclose because it:

- Possessed exclusive knowledge that Gore-Tex Fabric manufacturing processes are environmentally devastating;

- Intentionally concealed the foregoing from and Plaintiff and the Florida Class; and/or

- Made incomplete representations about Gore-Tex Fabric's manufacturing processes while purposefully withholding material facts from Plaintiffs and the Florida Class that contradicted these representations.

- Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means

that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

278. Gore's omissions and/or misrepresentations about its supply chain and manufacturing practices are material to Plaintiffs and the Florida Class.

279. Plaintiffs and Florida Class members suffered ascertainable loss caused by Defendant's misrepresentations and their concealment of and failure to disclose material information about the environmental impact of the manufacture of Gore-Tex Fabric. Plaintiffs and Florida Class members who purchased products with Gore-Tex Fabric would have paid less for it or would not have purchased at all but for Gore's violations of the FUDTPA.

280. Defendant's violations present a continuing risk to Plaintiffs as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

281. As a direct and proximate result of Defendant's violations of the FUDTPA, Plaintiffs and the Florida Class have suffered injury-in-fact and/or actual damage.

282. Plaintiffs and Florida Class members are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

283.    Plaintiffs also seek an order enjoining Defendant's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under the FUDTPA.

## COUNT XII
## FRAUDULENT CONCEALMENT
## (BASED ON FLORIDA LAW)

284.    Plaintiff Contois incorporates by reference all preceding allegations as though fully set forth herein.

285.    Plaintiff Contois brings this Count on behalf of the Florida Class.

286.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

287.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and

(5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

288.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Florida law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

289.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Florida Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Florida Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Florida Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

290.    Accordingly, Gore is liable to Plaintiffs and the other Florida Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

291.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Florida Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**F.**    **Claims brought on behalf of the Illinois Class**

**COUNT XIII**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD**
**AND DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILCS 505/1, *ET SEQ*. AND 720 ILCS 295/1A)**

292.    Plaintiff Adrian Washington incorporates by reference all preceding allegations as though fully set forth herein.

293.    Plaintiff Washington brings this Count on behalf of the Illinois Class.

294.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

295.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and

(5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

296.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including, but not limited to, the use of employment of any deception, fraud, false pretense, tales promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived, or damaged thereby." 815 ILCS 505/2.

297.    Gore is a "person" as that term is defined in 815 ILCS 505/1(c).

298.    Plaintiff and Illinois Class members are "consumers" as that term is defined in 815 ILCS 505/1(e).

299.    815 Ill. Comp. Stat. Ann. 505/2 provides that "in construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

300.    Gore's overall packaging misled and deceived reasonable consumers because Gore omitted, suppressed, and concealed that its Gore-Tex Fabric was not environmentally beneficial, while representing environmentally beneficial quality and characteristics.

301.    Gore's communications on its Gore-Tex Fabric packaging demonstrate the misleading nature of the material omissions, concealments, and suppression of material facts about its environmentally degrading manufacturing practices.

302.    Based on the overall impression given by the packaging communications and misrepresentations and omissions, reasonable consumers would be misled by Gore-Tex Fabric's true environmental impact based on overall impression of labels. Based on the overall impression

of the packaging, no reasonable consumer could expect or understand that Gore-Tex Fabric was manufactured using environmentally degrading practices.

303.    Pursuant to 815 ILCS 505/10a(a), Plaintiff seeks monetary relief against Gore in the amount of actual damages as well as punitive damages because Gore acted with fraud and/or malice and/or was grossly negligent, and concealed, suppressed, and omitted material information.

*304.*    Plaintiff also seeks an order enjoining Gore's unfair and/or deceptive acts or practices, attorneys' fees, and any other just and proper relief available under 815 ILCS 505/1, *et seq.*

## COUNT XIV
## FRAUD BY CONCEALMENT
## (BASED ON ILLINOIS LAW)

305.    Plaintiff Washington incorporates by reference all preceding allegations as though fully set forth herein.

306.    Plaintiff Washington brings this Count on behalf of the Illinois Class.

307.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

308.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric

sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

309.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Illinois law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

310.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiff and the other Illinois Class members to make their Gore-Tex purchases. Plaintiff was unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiff and the other Illinois Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiff and the other Illinois Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

311.    Accordingly, Gore is liable to Plaintiff and the other Illinois Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

312.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and other Illinois Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**G.    Claims brought on behalf of the Minnesota Class**

**COUNT XV**
**VIOLATIONS OF MINNESOTA DECEPTIVE TRADE PRACTICES;**
**ENVIRONMENTAL MARKETING CLAIMS**
**(MINN. STAT. § 325E.41, *ET SEQ.*)**

313.    Plaintiff Johnson incorporates by reference all preceding allegations as though fully set forth herein.

314.    Plaintiff Johnson brings this Count on behalf of the Minnesota Class.

315.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

316.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply

wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

317.    Defendant violated Minn. Stat. § 325E.41 by making deceptive and misleading general environmental benefit claims (including sustainability claims) and failing to disclose material omitted information related to these statements.

318.    Defendant made these material misrepresentations and omissions to induce reasonable consumers to purchase its Gore-Tex Fabric.

319.    Defendant knew that the material misrepresentations and omissions were misleading to reasonable consumers and in violation of Code of Federal Regulations, title 16, part 260, "Guides for the Use of Environmental marketing claims" ("Green Guides").

320.    Specifically, Section 260.4, General environmental benefit, claims states: "It is deceptive to misrepresent, directly or by implication, that a product, package, or service offers a general environmental benefit ….Unqualified general environmental benefit claims are difficult to interpret and likely convey a wide range of meanings. In many cases, such claims likely convey that the product, package, or service has specific and far-reaching environmental benefits and may convey that the item or service has no negative environmental impact. Because it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims, marketers should not make unqualified general environmental benefit claims." (Emphasis added.)

321.    Defendant's pattern of deceptive and misleading misrepresentations and omissions, and other misleading conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff and the Minnesota Class with respect to the Gore-Tex Fabrics' quality, nature of the ingredients, and suitability for consumption.

322.    Defendant intended for Plaintiff and the Minnesota Class to rely on the material misrepresentations and omissions, concealment, expressed warranties, and/or deceptions regarding the environmental benefits and sustainability of its Gore-Tex Fabric.

323.    Defendant's conduct described herein occurred repeatedly in its trade or business and were capable of deceiving a substantial portion of the consuming public.

324.    Defendant violated Minn. Stat. §325E.41 by making misrepresentations on its packaging and website that violated the Green Guides.

325.    Defendant was under a duty to disclose the omissions because Defendant undertook the disclosure of information about the Gore-Tex Fabric that violated the Green Guides.

326.    Defendant failed to discharge its duty to disclose the Omissions.

327.    The facts concealed, omitted, or not disclosed by Defendant were material facts in that Plaintiff, the Minnesota Class, and any reasonable consumer would have considered them in deciding whether to purchase the Gore-Tex Fabric. Had Plaintiff and the Minnesota Class known the truth, they would not have purchased the Gore-Tex Fabric or paid the premium price.

328.    Defendant's unlawful conduct is continuing, with no indication that it intends to cease this fraudulent course of conduct.

329.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Minnesota Class suffered actual damages by: (1) paying a premium price; (2) purchasing Gore-

Tex Fabric they would not have purchased; and/or (3) receiving Gore-Tex Fabric that were worth less.

330.    Plaintiff and the members of the Minnesota Class would not have purchased Gore-Tex Fabric at all had they known that Gore-Tex Fabric does not conform to the packaging.

331.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325E.41, Plaintiff and the Minnesota Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the Minn. Stat. § 325E.41.

## COUNT XVI
## FRAUDULENT CONCEALMENT
## (BASED ON MINNESOTA LAW)

332.    Plaintiff Johnson incorporates by reference all preceding allegations as though fully set forth herein.

333.    Plaintiff Johnson brings this Count on behalf of the Minnesota Class.

334.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

335.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply

wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

336. Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Minnesota law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

337. Gore's omissions and/or misrepresentations alleged herein caused Plaintiff and the other Minnesota Class members to make their Gore-Tex purchases. Plaintiff was unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiff and the other Minnesota Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiff and the other Minnesota Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

338. Accordingly, Gore is liable to Plaintiff and the other Minnesota Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

339.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and other Minnesota Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## H.    Claims brought on behalf of the New York Class

### COUNT XVII
### VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW
### (N.Y. GEN. BUS. LAW §§ 349-350)

340.    Plaintiff Liberman hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

341.    This claim is brought by Plaintiff Liberman on behalf of the New York Class.

342.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

343.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and

their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

344.    The New York General Business Law (New York GBL) makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

345.    Plaintiffs and New York Class members are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

346.    Defendant is a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

347.    Defendant's deceptive acts and practices, which were intended to mislead consumers who purchased Gore-Tex Fabric, was conduct directed at consumers.

348.    Because Defendant's willful and knowing conduct caused injury to Plaintiffs, Plaintiffs seek recovery of actual damages or $50, whichever is greater; discretionary treble damages up to $1,000; punitive damages; reasonable attorneys' fees and costs; an order enjoining Defendant's deceptive conduct; and any other just and proper relief available under N.Y. Gen. Bus. Law § 349.

## COUNT XVIII
## FRAUDULENT CONCEALMENT
## (BASED ON NEW YORK LAW)

349.    Plaintiff Liberman incorporates by reference all preceding allegations as though fully set forth herein.

350.    Plaintiff Liberman brings this Count on behalf of the New York Class.

351.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

352.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

353.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under New York law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including

on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

354.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other New York Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other New York Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other New York Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

355.    Accordingly, Gore is liable to Plaintiffs and the other New York Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

356.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other New York Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

I.    **Claims brought on behalf of the Washington Class**

**COUNT XIX**
**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**
**(WASH. REV. CODE ANN. § 19.86.010, *ET SEQ.*)**

357.    Plaintiff Mason ("Plaintiff" for purposes of all Washington Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

358.    Plaintiff Mason brings this Count on behalf of the Washington Class.

359.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

360.    Gore actively conceals from consumers the following Common Omissions(1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

361.    The Washington Consumer Protection Act ("Washington CPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. § 19.96.010.

362.    Gore committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of Wash. Rev. Code Ann. § 19.96.010.

363.    Gore's deceptive practices, as alleged herein, are injurious to the public interest as it has the capacity to injure other persons.

364.    Gore has violated portions of section 260 of the FTC Green Guides, which have been incorporated into RCWA 70A.455.020 and RCWA 19.86.920.

365.    Gore is liable to Plaintiff for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under Wash. Rev. Code Ann. § 19.86.090.

## COUNT XX
## FRAUDULENT CONCEALMENT
## (BASED ON WASHINGTON LAW)

366.    Plaintiff Mason incorporates by reference all preceding allegations as though fully set forth herein.

367.    Plaintiff Mason brings this Count on behalf of the Washington Class.

368.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

369.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply

wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

370.   Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Washington law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex packaging) not misleading. Gore also knew that these representations were false when made.

371.   Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Washington Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Washington Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Washington Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

372.   Accordingly, Gore is liable to Plaintiffs and the other Washington Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

373.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and other Washington Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## J.    Claims brought on behalf of the Alabama Class

### COUNT XXI
### VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT
### (ALABAMA CODE SECTION 8-19-1, ET SEQ.)

374.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

375.    This claim is brought by Plaintiffs on behalf of residents of Alabama who are members of the class.

376.    The Alabama Deceptive Trade Practices Act (Alabama DTPA) declares several specific actions to be unlawful, including: "(11) Making a false or misleading statement of fact concerning the reasons for, existence of, or amounts of, price reductions"; and "(27) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

377.    Plaintiffs and class members are "consumers" within the meaning of Ala. Code. § 8-19-3(2).

378.    Plaintiffs, class members, and Defendant are "persons" within the meaning of Ala. Code § 8-19-3(3).

379.    Gore was and is engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

380.     Pursuant to Ala. Code § 8-19-10, Plaintiffs seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each plaintiff.

381.     Plaintiffs also seek an order enjoining each Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under Ala. Code. § 8-19-1, et seq.

382.     On January 28, 2025, Plaintiffs sent a letter complying with Ala. Code § 8-19-10(e) to Gore. Because Gore failed to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which they are entitled.

## COUNT XXII
## FRAUDULENT CONCEALMENT
## (BASED ON ALABAMA LAW)

383.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

384.     Plaintiffs bring this Count on behalf of the Alabama Class.

385.     Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

386.     Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's

manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

387.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Alabama law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

388.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Alabama Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Alabama Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Alabama Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

389.    Accordingly, Gore is liable to Plaintiffs and the other Alabama Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

390.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Alabama Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### K.    Claims brought on behalf of the Alaska Class

**COUNT XXIII**
**VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES AND**
**CONSUMER PROTECTION ACT**
**(ALASKA STAT. ANN. § 45.50.471, *ET SEQ*.)**

391.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

392.    This claim is brought by Plaintiffs on behalf of residents of Alaska who are members of the class.

393.    The Alaska Unfair Trade Practices and Consumer Protection Act (Alaska CPA) declared unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including "(10) making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions" or "(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or

services whether or not a person has in fact been misled, deceived or damaged." Alaska Stat. Ann. § 45.50.471.

394.     Pursuant to Alaska Stat. Ann. § 45.50.531, Plaintiffs seek monetary relief against each Defendant measured as the greater of (a) three times the actual damages in an amount to be determined at trial or (b) $500 for each plaintiff.

395.     Plaintiffs also seek an order enjoining each Defendant's unfair, unlawful, and/or deceptive practices pursuant to Alaska Stat. Ann. § 45.50.535(b)(1), attorneys' fees, and any other just and proper relief available under the Alaska CPA.

396.     On January 28, 2025, Plaintiffs sent a letter complying with Alaska Stat. Ann. § 45.50.535(b)(1) to Gore. Because Gore failed to remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which they are entitled.

## COUNT XXIV
## FRAUDULENT CONCEALMENT
## (BASED ON ALASKA LAW)

397.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

398.     Plaintiffs bring this Count on behalf of the Alaska Class.

399.     Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

400.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

401.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Alaska law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

402.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Alaska Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Alaska Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Alaska

Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

403.    Accordingly, Gore is liable to Plaintiffs and the other Alaska Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

404.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Alaska Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**L.    Claims brought on behalf of the Arizona Class**

**COUNT XXV**
**VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT**
**(ARIZONA REV. STAT. § 44-1521, *ET SEQ*.)**

405.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

406.    This claim is brought by Plaintiffs on behalf of the Arizona Class.

407.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

408.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

409.    The Arizona Consumer Fraud Act (Arizona CFA) provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud . . . , misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A).

410.    Defendant, Plaintiffs, and Arizona Class members are "persons" within the meaning of the Arizona CFA, Ariz. Rev. Stat. § 44-1521(6).

411.    The Gore-Tex Fabric at issue is "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

412.    Defendant's conduct, as set forth above, occurred in the conduct of trade or commerce.

413.    Pursuant to the Arizona CFA, Plaintiffs seek monetary relief against Defendant in an amount to be determined at trial. Plaintiffs also seek punitive damages because Defendant engaged in aggravated and outrageous conduct with an evil mind.

414.    Plaintiffs also seek an order enjoining each Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

## COUNT XXVI
## FRAUDULENT CONCEALMENT
## (BASED ON ARIZONA LAW)

415.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

416.    Plaintiffs bring this Count on behalf of the Arizona Class.

417.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

418.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and

their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

419.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Arizona law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

420.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Arizona Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Arizona Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Arizona Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

421.    Accordingly, Gore is liable to Plaintiffs and the other Arizona Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

422.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' other Arizona Class members' rights

and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**M.    Claims brought on behalf of the Georgia Class**

**COUNT XXVII**
**VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT**
**(GA. CODE ANN. § 10-1-390, ET SEQ.)**

423.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

424.    This claim is brought by Plaintiffs on behalf of residents of Georgia who are members of the Class.

425.    The Georgia Fair Business Practices Act (Georgia FBPA) declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code. Ann. § 101-393(b), including, but not limited to, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," Ga. Code. Ann. § 10-1-393(b).

426.    Plaintiffs and class members are "consumers" within the meaning of Ga. Code. Ann. § 10-1-393(b).

427.    Defendant is engaged in "trade or commerce" within the meaning of Ga. Code. Ann. § 10-1-393(b).

428.    Plaintiffs entitled to recover damages and exemplary damages (for intentional violations) pursuant to Ga. Code. Ann. § 10-1-399(a).

429.    Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA pursuant to Ga. Code. Ann. § 10-1-399.17.

430.    On January 28, 2025, Plaintiffs sent letters complying with Ga. Code Ann. § 10-1-399(b) to Gore. Because Gore failed to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which they are entitled.

**COUNT XXVIII**
**FRAUDULENT CONCEALMENT**
**(BASED ON GEORGIA LAW)**

431.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

432.    Plaintiffs bring this Count on behalf of the Georgia Class.

433.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

434.    Gore also made the following misrepresentations that are likely to mislead reasonable consumers: (i) Gore's definition of "PFC EC" is a definition that Gore itself created and excludes the extremely harmful PTFE chemical, thereby deviating from common definitions used by the EPA, environmental groups and academic researchers; and (ii) Gore's direct-to-consumer sales website confuses consumers by using terms such as PFC, PFC*, PFC EC, and PFAS interchangeably. Gore actively conceals from consumers the following Common

Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

435.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Georgia law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

436.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Georgia Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Georgia Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Georgia Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

437.    Accordingly, Gore is liable to Plaintiffs and the other Georgia Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

438.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Georgia Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**N.    Claims brought on behalf of the Idaho Class**

**COUNT XXIX**
**VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT**
**(IDAHO CODE ANN. § 48-601, *ET SEQ.*)**

439.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

440.    This claim is brought by Plaintiffs on behalf of the Idaho Class.

441.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

442.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's

manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

443.    The Idaho Consumer Protection Act (Idaho CPA) prohibits deceptive business practices, including, but not limited to, "(11) [m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions"; "(17) [e]ngaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer"; or "(18) engaging in any unconscionable method, act or practice in the conduct of trade or commerce," Idaho Code Ann. § 48-603.

444.    Defendant is a "person" under Idaho Code Ann. § 48-602(1).

445.    Defendant's acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under Idaho Code Ann. § 48-602(2).

446.    Pursuant to Idaho Code § 48-608, Plaintiffs seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $1000 for each plaintiff.

447.    Plaintiffs also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

448.    Plaintiffs also seek punitive damages against Defendant because Defendant's conduct evidences an extreme deviation from reasonable standards. Defendant flagrantly, maliciously, and fraudulently misrepresented the environmental sustainability of Gore-Tex Fabric and concealed facts that only it knew. Defendant's unlawful conduct constitutes malice, oppression and fraud warranting punitive damages.

**COUNT XXX**
**FRAUDULENT CONCEALMENT**
**(BASED ON IDAHO LAW)**

449.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

450.    Plaintiffs bring this Count on behalf of the Idaho Class.

451.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

452.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC"

- 138 -

without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

453.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Idaho law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

454.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Idaho Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Idaho Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Idaho Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

455.    Accordingly, Gore is liable to Plaintiffs and the other Idaho Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

456.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Idaho Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants

an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**O.    Claims brought on behalf of the Indiana Class**

**COUNT XXXI**
**VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT**
**(IND. CODE § 24-5-0.5-3)**

457.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

458.    This claim is brought by Plaintiffs on behalf of residents of Indiana who are members of the class.

459.    Indiana's Deceptive Consumer Sales Act (Indiana DCSA) prohibits a person from engaging in a "deceptive business practice[s]" or acts, including but not limited to representations that "a specific price advantage exists as to such subject of a consumer transaction, if it does not and if the supplier knows or should reasonably know that it does not." Ind. Code § 24-5-0.5-3(b).

460.    Defendant is a "person" within the meaning of Ind. Code § 25-5-0.5-2(a)(2), and a "supplier" within the meaning of Ind. Code § 24-5-0.5-2(a)(3).

461.    Plaintiffs' payments for products with Gore-Tex Fabric means "consumer transactions" within the meaning of Ind. Code § 24-5-0.5-2(a)(3).

462.    Pursuant to Ind. Code § 24-5-0.5-4, Plaintiffs seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each plaintiff, including treble damages up to $1000 for Defendant's willfully deceptive acts.

463.    Plaintiffs also seek punitive damages based on the outrageousness and recklessness of Defendant's conduct.

464.    On January 28, 2025, certain Plaintiffs sent a letter complying with Ind. Code § 24-5-0.5-5(a) to Gore. Because Gore failed to remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which they are entitled.

## COUNT XXXII
## FRAUDULENT CONCEALMENT
## (BASED ON INDIANA LAW)

465.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

466.    Plaintiffs bring this Count on behalf of the Indiana Class.

467.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that:

- Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

- Defendant's continuing violations of federal guidance on environmental marketing claims, e.g. the FTC Green Guides

468.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Indiana law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

469.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Indiana Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Indiana Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Indiana Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

470.    Accordingly, Gore is liable to Plaintiffs and the other Indiana Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

471.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Indiana Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**P.** **Claims brought on behalf of the Maine Class**

## COUNT XXXIII
## VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT
### (ME. REV. STAT. ANN. TIT. 5, § 205-A, ET SEQ)

472.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

473.    This claim is brought by Plaintiffs on behalf of residents of Maine who are members of the class.

474.    The Maine Unfair Trade Practices Act (Maine UTPA) makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Me. Rev. Stat. Ann. tit. 5, § 207.

475.    Defendant, Plaintiffs, and class members are "persons" within the meaning of Me. Rev. Stat. Ann. tit. § 5, 206(2).

476.    Defendant is engaged in "trade" or "commerce" within the meaning of Me. Rev. Stat. Ann. tit. § 5, 206(3).

477.    Pursuant to Me. Rev. Stat. Ann. tit. 5, § 213, Plaintiffs seek an order enjoining each Defendant's unfair and/or deceptive acts or practices.

478.    On January 28, 2025, Plaintiffs sent a letter complying with Me. Rev. Stat. Ann. tit. 5, § 213(1-A) to Gore. Because Gore failed to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which they are entitled.

## COUNT XXXIV
## FRAUDULENT CONCEALMENT
### (BASED ON MAINE LAW)

479.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

480.    Plaintiffs bring this Count on behalf of the Maine Class.

481.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

482.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

483.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Maine law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including

on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

484.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Maine Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Maine Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Maine Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

485.    Accordingly, Gore is liable to Plaintiffs and the other Maine Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

486.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Maine Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**Q.    Claims brought on behalf of the Massachusetts Class**

**COUNT XXXV**
**VIOLATION OF THE MASSACHUSETTS GENERAL LAW CHAPTER 93(A)**
**(MASS. GEN. LAWS CH. 93A § 1, *ET SEQ.*)**

487.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

488.    This claim is brought by Plaintiffs on behalf of residents of Massachusetts who are members of the class.

489. Massachusetts law (the Massachusetts Act) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.

490. Defendant, Plaintiffs, and class members are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

491. Gore engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

492. Pursuant to Mass. Gen. Laws ch. 93A, § 9, Plaintiffs will seek monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each plaintiff. Because Gore's conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each plaintiff, up to three times actual damages, but no less than two times actual damages.

493. Plaintiffs also seek an order enjoining Gore's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Massachusetts Act.

494. On January 28, 2025, Plaintiffs sent a letter complying with Mass. Gen. Laws ch. 93A, § 9(3). Because Gore failed to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which they are entitled.

## COUNT XXXVI
## FRAUD BY CONCEALMENT
## (BASED ON MASSACHUSETTS LAW)

495. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

496. Plaintiffs bring this Count on behalf of the Massachusetts Class.

497. Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane

using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

498.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

499.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Massachusetts law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

500.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Massachusetts Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Massachusetts Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Massachusetts Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

501.    Accordingly, Gore is liable to Plaintiffs and the other Massachusetts Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

502.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Massachusetts Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**R.    Claim brought on behalf of the Michigan Class**

**COUNT XXXVII**
**VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT**
**(MICH. COMP. LAWS § 445.903, *ET SEQ.*)**

503.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

504.    This claim is brought by Plaintiffs on behalf of the Michigan Class.

505.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming

its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

506.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

507.    The Michigan Consumer Protection Act (Michigan CPA) prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions"; "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer"; "charging the consumer a price that is grossly in excess of the price at which similar property or services are sold"; "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs

to be other than it actually is"; or "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

508.    Plaintiffs and Michigan Class members are "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

509.    Defendant is a "person" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d) and (g).

510.    Plaintiffs seek injunctive relief to enjoin Defendant from continuing its unfair and deceptive acts; monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for each plaintiff; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

511.    Plaintiffs also seek punitive damages because Defendant carried out despicable conduct with willful and conscious disregard of the rights and safety of others. Defendant maliciously and egregiously misrepresented the environmental sustainability of Gore-Tex Fabric. Defendant's conduct constitutes malice, oppression, and fraud warranting punitive damages.

**COUNT XXXVIII**
**FRAUDULENT CONCEALMENT**
**(BASED ON MICHIGAN LAW)**

512.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

513.    Plaintiffs bring this Count on behalf of the Michigan Class.

514.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental

sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

515.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

516.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Michigan law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

517.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Michigan Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the

other Michigan Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Michigan Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

518.    Accordingly, Gore is liable to Plaintiffs and the other Michigan Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

519.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Michigan Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**S.    Claims brought on behalf of the Montana Class**

**COUNT XXXIX**
**VIOLATION OF THE MONTANA UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION ACT OF 1973**
**(MONT. CODE ANN. § 30-14-101, *ET SEQ.*)**

520.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

521.    This claim is brought by Plaintiffs on behalf of the Montana Class.

522.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR

waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

523.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

524.    The Montana Unfair Trade Practices and Consumer Protection Act (Montana CPA) makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mont. Code Ann. § 30-14-103.

525.    Defendant, Plaintiffs, and Montana Class members are "persons" within the meaning of Mont. Code Ann. § 30-14-102(6).

526.    Plaintiffs and Montana Class members are "consumer[s]" under Mont. Code Ann. § 30-14-102(1).

527.    The sale of each package of Gore-Tex Fabric occurred within "trade and commerce" within the meaning of Mont. Code Ann. § 30-14-102(8), and Defendant committed

deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

528.    Because Defendant's unlawful methods, acts, and practices have caused Plaintiffs to suffer an ascertainable loss of money and property, Plaintiffs seek from Defendant: the greater of actual damages or $500; discretionary treble damages; reasonable attorneys' fees.

529.    Plaintiffs additionally seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, and any other relief the Court considers necessary or proper, under Mont. Code Ann. § 30-14-133.

## COUNT XL
## FRAUDULENT CONCEALMENT
## (BASED ON MONTANA LAW)

530.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

531.    Plaintiffs bring this Count on behalf of the Montana Class.

532.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

533.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric

sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

534.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Montana law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

535.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Montana Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Montana Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Montana Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

536.    Accordingly, Gore is liable to Plaintiffs and the other Montana Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

537.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Montana Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**T.    Claims brought on behalf of the New Hampshire Class**

### COUNT XLI
### VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT
### (N.H. REV. STAT. ANN. § 358-A:1, *ET SEQ.*)

538.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

539.    This claim is brought by Plaintiffs on behalf of the New Hampshire Class.

540.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

541.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and

their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

542.    The New Hampshire Consumer Protection Act (New Hampshire CPA) prohibits a person, in the conduct of any trade or commerce, from "using any unfair or deceptive act or practice," including, "but . . . not limited to" "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." N.H. Rev. Stat. Ann. § 358-A:2.

543.    Defendant, Plaintiffs, and New Hampshire Class members are "persons" under N.H. Rev. Stat. Ann. § 358-A:1.

544.    Defendant's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. Rev. Stat. Ann. § 358-A:1.

545.    Because Defendant's willful conduct caused injury to Plaintiffs' property through violations of the New Hampshire CPA, Plaintiffs seek recovery of actual damages or $1,000, whichever is greater; treble damages; costs and reasonable attorneys' fees; an order enjoining each Defendant's unfair and/or deceptive acts and practices; and any other just and proper relief under N.H. Rev. Stat. Ann. § 358-A:10.

### COUNT XLII
### FRAUDULENT CONCEALMENT
### (BASED ON NEW HAMPSHIRE LAW)

546.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

547.    Plaintiffs bring this Count on behalf of the New Hampshire Class.

548.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

549.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

550.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under New Hampshire law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims

including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

551.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other New Hampshire Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other New Hampshire Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other New Hampshire Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

552.    Accordingly, Gore is liable to Plaintiffs and the other New Hampshire Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

553.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other New Hampshire Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**U.    Claims on behalf of the New Mexico Class**

**COUNT XLIII**
**VIOLATION OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT**
**(N.M. STAT. ANN. §§ 57-12-1, *ET SEQ.*)**

554.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

555.    This claim is brought by Plaintiffs on behalf of the New Mexico Class.

556.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

557.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

558.    The New Mexico Unfair Trade Practices Act (New Mexico UTPA) makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive

or mislead any person," including, but not limited to, "failing to state a material fact if doing so deceives or tends to deceive." N.M. Stat. Ann. § 57-12-2(D).

559.    Defendant, Plaintiffs, and New Mexico Class members are "person[s]" under N.M. Stat. Ann. § 57-12-2.

560.    Defendant's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. Stat. Ann. § 57-12-2.

561.    Because Defendant's unconscionable, willful conduct caused actual harm to Plaintiffs, Plaintiffs seek recovery of actual damages or $100, whichever is greater; discretionary treble damages; punitive damages; and reasonable attorneys' fees and costs, as well as all other proper and just relief available under N.M. Stat. Ann. § 57-12-10.

**COUNT XLIV**
**FRAUDULENT CONCEALMENT**
**(BASED ON NEW MEXICO LAW)**

562.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

563.    Plaintiffs bring this Count on behalf of the New Mexico Class.

564.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

565.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's

manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

566.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under New Mexico law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

567.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other New Mexico Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other New Mexico Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other New Mexico Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

568.    Accordingly, Gore is liable to Plaintiffs and the other New Mexico Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

569.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other New Mexico Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**V.    Claims brought on behalf of the Ohio Class**

**COUNT XLV**
**VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT**
**(OHIO REV. CODE ANN. § 1345.01, *ET SEQ.*)**

570.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

571.    This claim is brought by Plaintiffs on behalf of the Ohio Class.

572.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

573.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's

manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

574.    Ohio Consumer Sales Practices Act (Ohio CSPA), Ohio Rev. Code Ann. § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Specifically, and without limitation of the broad prohibition, the Act prohibits suppliers from representing that "a specific price advantage exists, if it does not." Ohio Rev. Code Ann. § 1345.02.

575.    Defendant is a "supplier" as that term is defined in Ohio Rev. Code Ann. § 1345.01(C).

576.    Plaintiffs and Ohio Class members are "consumers" as that term is defined in Ohio Rev. Code Ann. § 1345.01(D), and their purchases of Gore-Tex Fabric is a "consumer transaction" within the meaning of Ohio Rev. Code Ann. § 1345.01(A).

577.    As a result of the foregoing wrongful conduct, Plaintiffs have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, an order enjoining Defendant's deceptive and unfair conduct, treble damages, court costs, and reasonable attorneys' fees, pursuant to Ohio Rev. Code Ann. § 1345.09, et seq.

## COUNT XLVI
## FRAUDULENT CONCEALMENT
## (BASED ON OHIO LAW)

578.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

579.    Plaintiffs bring this Count on behalf of the Ohio Class.

580.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

581.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

582.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Ohio law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

583.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Ohio Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Ohio Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Ohio Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

584.    Accordingly, Gore is liable to Plaintiffs and the other Ohio Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

585.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Ohio Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**W.    Claims brought on behalf of the Pennsylvania Class**

**COUNT XLVII**
**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION LAW**
**(73 PA. CONS. STAT. § 201-1, *ET SEQ.*)**

586.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

587.    This claim is brought by Plaintiffs on behalf the Pennsylvania Class.

588.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

589.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and

(5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

590.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law (Pennsylvania CPL) prohibits unfair or deceptive acts or practices, including: "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions"; and "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Cons. Stat. § 201-2(4).

591.    Defendant, Plaintiffs, and Pennsylvania Class members are "persons" within the meaning of 73 Pa. Cons. Stat. § 201-2(2).

592.    Plaintiffs and the Pennsylvania Class members purchased Gore-Tex Fabric primarily for personal, family, or household purposes within the meaning of 73 Pa. Cons. Stat. § 201-9.2.

593.    All of the acts complained of herein were perpetrated by Defendant in the course of trade or commerce within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

594.    Defendant is liable to Plaintiffs for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 Pa. Cons. Stat. § 201-9.2(a). Plaintiffs are also entitled to an award of punitive damages given that Defendant's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

**COUNT XLVIII**
**FRAUDULENT CONCEALMENT**
**(BASED ON PENNSYLVANIA LAW)**

595.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

596.    Plaintiffs bring this Count on behalf of the Pennsylvania Class.

597.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

598.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

599.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Pennsylvania law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims

including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

600.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Pennsylvania Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Pennsylvania Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Pennsylvania Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

601.    Accordingly, Gore is liable to Plaintiffs and the other Pennsylvania Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

602.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Pennsylvania Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## X.    Claims brought on behalf of the South Carolina Class

### COUNT XLIX
### VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT (S.C. CODE ANN. § 39-5-10, *ET SEQ.*)

603.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

604.    This claim is brought by Plaintiffs on behalf of the South Carolina Class.

605.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

606.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

607.    The South Carolina Unfair Trade Practices Act (South Carolina UTPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." S.C. Code Ann. § 39-5-20(a).

608.    Defendant is a "person" under S.C. Code Ann. § 39-5-10.

609.    Pursuant to S.C. Code Ann. § 39-5-140(a), Plaintiffs seek monetary relief to recover their economic losses. Because Defendant's actions were willful and knowing, Plaintiffs' damages should be trebled.

610.    Plaintiffs further allege that Defendant's malicious and deliberate conduct warrants an assessment of punitive damages because Defendant carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs to cruel and unjust hardship as a result. Defendant misrepresented the environmental sustainability of Gore-Tex Fabric. Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

611.    Plaintiffs further seek an order enjoining each Defendant's unfair or deceptive acts or practices.

## COUNT L
## FRAUDULENT CONCEALMENT
## (BASED ON SOUTH CAROLINA LAW)

612.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

613.    Plaintiffs bring this Count on behalf of the South Carolina Class.

614.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

615.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

616.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under South Carolina law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

617.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other South Carolina Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other South Carolina Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and

the other South Carolina Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

618.    Accordingly, Gore is liable to Plaintiffs and the other South Carolina Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

619.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other South Carolina Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**Y.    Claims brought on behalf of the Tennessee Class**

**COUNT LI**
**VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT**
**(TENN. CODE ANN. § 47-18-101, *ET SEQ.*)**

620.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

621.    This claim is brought by Plaintiffs on behalf of the Tennessee Class.

622.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

623.     Gore actively conceals from consumers the following Common Omissions(1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

624.     Tennessee Consumer Protection Act (Tennessee CPA) prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including, but not limited to, "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." Tenn. Code Ann. § 47-18-104.

625.     Plaintiffs and Tennessee Class members are "natural persons" and "consumers" within the meaning of Tenn. Code Ann. § 47-18-103(2).

626.     Defendant is a "person" within the meaning of Tenn. Code Ann. § 47-18-103(2).

627.     Defendant's conduct complained of herein affected "trade," "commerce," or "consumer transactions" within the meaning of Tenn. Code Ann. § 47-18-103(19).

628.     Pursuant to Tenn. Code Ann. § 47-18-109(a), Plaintiffs seek monetary relief against each Defendant measured as actual damages in an amount to be determined at trial, treble damages

as a result of Defendant's willful or knowing violations, and any other just and proper relief available under the Tennessee CPA.

**COUNT LII**
**FRAUDULENT CONCEALMENT**
**(BASED ON TENNESSEE LAW)**

629.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

630.    Plaintiffs bring this Count on behalf of the Tennessee Class.

631.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

632.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and

- 176 -

(5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

633.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Tennessee law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

634.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Tennessee Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Tennessee Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Tennessee Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

635.    Accordingly, Gore is liable to Plaintiffs and the other Tennessee Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

636.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Tennessee Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**Z.**    **Claims brought on behalf of the Texas Class**

**COUNT LIII**
**VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER
PROTECTION ACT
(TEX. BUS. & COM. CODE § 17.4, *ET SEQ*)**

637.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

638.    Plaintiffs bring this Count on behalf of the Texas Class.

639.    Plaintiffs and the Texas Class are individuals with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets). See Tex. Bus. & Com. Code § 17.41.

640.    In purchasing products with Gore-Tex Fabric, Plaintiffs and the other Texas members were deceived by Defendant's marketing of Gore-Tex Fabric as an environmentally sustainable product, and obtaining money from Plaintiffs and Texas Class members, while also failing to disclose and actively concealed that:

641.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and

- 178 -

(5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

- Defendant's continuing violations of federal guidance on environmental marketing claims, e.g. the FTC Green Guides

642.    The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") provides a private right of action to a consumer where the consumer suffers economic damage as the result of either (i) the use of false, misleading, or deceptive act or practice specifically enumerated in Tex. Bus. & Com. Code § 17.46(b); or (ii) "an unconscionable action or course of action by any person." Tex. Bus. & Com. Code § 17.50(a)(2) & (3). The Texas DTPA declares several specific actions to be unlawful, including: "(5) Representing that goods or services have. sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(9) advertising goods or services with intent not to sell them as advertised." An "unconscionable action or course of action," means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code § 17.45(5). As detailed herein, Gore has engaged in an unconscionable action or course of action and thereby caused economic damages to the Texas Class. Defendant's conduct, as described hereinabove, was and is in violation of the Texas DTPA.

643.    Plaintiffs and the other Texas Class members have suffered injury in fact and actual damages resulting from Defendant's material omissions and/or misrepresentations because they paid an inflated purchase price for Gore-Tex Fabric.

644.    Defendant knew, should have known, or was reckless in not knowing of the material omissions and/or misrepresentations.

645.    By failing to disclose that that Gore-Tex Fabric was not environmentally sustainable, Gore engaged in deceptive business practices in violation of the Texas DTPA.

646.    Gore's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the other Texas Class members, about the environmental sustainability and true value of Gore-Tex Fabric.

647.    The facts concealed and omitted by Gore to Plaintiffs and the other Texas Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Goer-Tex Fabric or pay a lower price. Had Plaintiffs and the other Texas Class members known about the material omissions and/or misrepresentations they would not have purchased products with Gore-Tex Fabric or would not have paid the prices they paid in fact.

648.    Gore intentionally and knowingly misrepresented and omitted material facts regarding Gore-Tex Fabric with intent to mislead Plaintiff and the Texas Class.

649.    Gore knew or should have known that their conduct violated the Texas DTPA.

650.    As alleged above, Gore made material statements about the environmental sustainability of Gore-Tex Fabric that were either false or misleading.

651.    Gore owed Plaintiff and Texas Class members a duty to disclose the true environmental impact of Gore-Tex Fabric's manufacturing processes because Gore:

- Possessed exclusive knowledge that they were selling and distributing Gore-Tex Fabric throughout the United States and that the supply chain and manufacturing processes were environmentally devastating;

- Intentionally concealed the foregoing from Plaintiff and the Texas Class; and/or

- Made incomplete representations about the environmental impact of Gore-Tex Fabric, while purposefully withholding material facts from Plaintiff and the Texas Class that contradicted these representations.

652.    Gore had an ongoing duty to all consumers to refrain from unfair and deceptive practices under the Texas DTPA.

653.    Gore's violations present a continuing risk to Plaintiffs as well as to the general public. Gore's unlawful acts and practices complained of herein affect the public interest.

654.    As a direct and proximate result of Gore's violations of the Texas DTPA, Plaintiff and the Texas Class have suffered injury-in-fact and/or actual damage.

655.    Pursuant to Tex. Bus. & Com. Code § 17.50(a)(1) and (b), Plaintiff seeks monetary relief against Gore measured as actual damages in an amount to be determined at trial, treble damages for Gore's knowing violations of the Texas DTPA, and any other just and proper relief available under the Texas DTPA.

656.    Alternatively, or additionally, pursuant to Tex. Bus. & Com. Code § 17.50(b)(3) & (4), Plaintiff is also entitled to disgorgement or to rescission or to any other relief necessary to restore any money or property that was acquired from them based on violations of the Texas DTPA or which the Court deems proper.

657.    Plaintiffs sent Gore a letter on January 28, 2025, in compliance with Tex. Bus. & Com. Code § 17.505(b). Because Gore failed to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which they are entitled.

## COUNT LIV
## FRAUDULENT CONCEALMENT
## (BASED ON TEXAS LAW)

658.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

659.    Plaintiffs bring this Count on behalf of the Texas Class.

660.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

661.    Gore actively conceals from consumers the following Common Omissions: ((1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably. Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Texas

law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

662.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Texas Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Texas Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Texas Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

663.    Accordingly, Gore is liable to Plaintiffs and the other Texas Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

664.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Texas Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**AA.    Claims brought on behalf of the Utah Class**

**COUNT LV**
**VIOLATION OF THE UTAH CONSUMER SALE PRACTICES ACT**
**(UTAH CODE ANN. § 13-11-1, *ET SEQ.*)**

665.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

666.    This claim is brought by Plaintiffs on behalf of the Utah Class.

667.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

668.    Gore also made the following misrepresentations that are likely to mislead reasonable consumers: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably. The Utah Consumer Sales Practices Act (Utah CSPA) makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction," including, but not limited to, "indicat[ing] that a specific price advantage exists, if it does not." Utah Code Ann. § 13-11-4. "An unconscionable act or practice by a supplier in

connection with a consumer transaction" also violates the Utah CSPA. Utah Code Ann. § 13-11-5.

669.    Defendant knew, or had reason to know, that consumers would rely on Defendant's representations and omissions regarding the environmental sustainability of Gore-Tex Fabric and chose to conceal, suppress and omit material facts required to make their environmental claims not misleading. Defendant therefore engaged in an unconscionable act within the meaning of Utah Code Ann. § 13-11-5.

670.    Pursuant to Utah Code Ann. § 13-11-4, Plaintiffs seek monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for each Plaintiff; reasonable attorneys' fees; and any other just and proper relief available under the Utah CSPA.

**COUNT LVI**
**FRAUDULENT CONCEALMENT**
**(BASED ON UTAH LAW)**

671.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

672.    Plaintiffs bring this Count on behalf of the Utah Class.

673.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

674.    Gore actively conceals from consumers the following Common Omissions: (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

675.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Utah law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

676.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Utah Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Utah Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Utah

Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

677.    Accordingly, Gore is liable to Plaintiffs and the other Utah Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

678.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Utah Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**BB.    Claims brought on behalf of the Vermont Class**

**COUNT LVII**
**VIOLATION OF THE VERMONT CONSUMER FRAUD ACT**
**(VT. STAT. ANN. TIT. 9, § 2451 *ET SEQ*.)**

679.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

680.    This claim is brought by Plaintiffs on behalf of the Vermont Class.

681.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

682.    (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

683.    The Vermont Consumer Fraud Act (Vermont CFA) makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce . . . ." Vt. Stat. Ann. tit. 9, § 2453(a).

684.    Defendant was a seller within the meaning of Vt. Stat. Ann. tit. 9, § 2451(a)(c).

685.    Plaintiffs are entitled to recover "appropriate equitable relief" and "the amount of [their] damages, or the consideration or the value of the consideration given by [them], reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by [them]," pursuant to Vt. Stat. Ann. tit. 9, § 2461(b).

## COUNT LVIII
## FRAUDULENT CONCEALMENT
## (BASED ON VERMONT LAW)

686.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

687.    Plaintiffs bring this Count on behalf of the Vermont Class.

688.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

689.    (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

690.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under Vermont law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

691.    Gore's omissions and/or misrepresentations alleged herein caused Plaintiffs and the other Vermont Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other Vermont Class members would not have purchased Gore-Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other Vermont Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

692.    Accordingly, Gore is liable to Plaintiffs and the other Vermont Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

693.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other Vermont Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**CC.    Claims brought on behalf of the West Virginia Class**

**COUNT LIX**
**VIOLATION OF THE WEST VIRGINIA CONSUMER CREDIT**
**AND PROTECTION ACT**
**(W. VA. CODE § 46A-1-101, ET SEQ.)**

694.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

695.    This claim is brought by Plaintiffs on behalf of residents of West Virginia who are members of the class.

696.    The Defendant is a "person" under W. Va. Code § 46A-1-102(31).

697.    Plaintiffs are "consumers," as defined by W. Va. Code §§ and 46A-1-102(12) and 46A-6-102(2), who purchased products with Gore-Tex Fabric.

698.    Defendant engaged in trade or commerce as defined by W. Va. Code § 46A-6-102(6).

699.    The West Virginia Consumer Credit and Protection Act (West Virginia CCPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." W. Va. Code § 46A-6-104. Without limitation, "unfair or deceptive" acts or practices include:

> (I) Advertising goods or services with intent not to sell them as advertised;
>
> (K) Making false or misleading statements of fact concerning the reasons for, existence of or amounts of price reductions;
>
> (L) Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;
>
> (M) The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby;
>
> (N) Advertising, printing, displaying, publishing, distributing or broadcasting, or causing to be advertised, printed, displayed, published, distributed or broadcast in any manner, any statement or representation with regard to the sale of goods or the extension of consumer credit including the rates, terms or conditions for the sale of such goods or the extension of such credit, which is false, misleading or deceptive or which omits to state material information which is necessary to make the statements therein not false, misleading or deceptive; W. Va. Code § 46A-6-102(7).

700.    Pursuant to W. Va. Code § 46A-6-106, Plaintiffs seek monetary relief against the Defendant measured as the greater of (a) actual damages in an amount to be determined at trial

and (b) statutory damages in the amount of $200 per violation of the West Virginia CCPA for each Plaintiff.

701.    Plaintiffs also seek punitive damages against the Defendant because they carried out despicable conduct with willful and conscious disregard of the rights of others, subjecting Plaintiffs to cruel and unjust hardship as a result.

702.    Plaintiffs further seek an order enjoining the Defendant unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees under W. Va. Code § 46A-5-101, et seq., and any other just and proper relief available under the West Virginia CCPA.

703.    On January 28, 2025, Plaintiffs sent a letter complying with W. Va. Code § 46A-6-106(b) to Gore. Because Gore failed to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which they are entitled.

## COUNT LX
## FRAUDULENT CONCEALMENT
## (BASED ON WEST VIRGINIA LAW)

704.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

705.    Plaintiffs bring this Count on behalf of the West Virginia Class.

706.    Gore intentionally concealed and suppressed material facts regarding its Gore-Tex Fabric. These material facts included that (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) Gore-Tex Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that Gore-Tex Fabric sheds PFAS via ordinary use.

707.    (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways adjacent to Gore's manufacturing facilities in Maryland with extremely high levels of PFAS; (3) Gore-Tex Fabric sheds PFAS via ordinary use, which means that outdoor enthusiasts, as well as those simply wearing Gore-Tex Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their Gore-Tex gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and therefore materially differs from the standard typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

708.    Gore voluntarily represented that its Gore-Tex Fabric was environmentally sustainable and therefore is required to make a full and fair disclosure under West Virginia law. Gore therefore had a duty to disclose the material facts as additional information in order to make its Gore-Tex Sustainability Promise website (as well as Gore's other environmental claims including on its Gore-Tex Fabric packaging) not misleading. Gore also knew that these representations were false when made.

709.    The knowing and active concealment of material facts render Gore-Tex Fabric Hang Tags deceptive, misleading, and unfair because without full disclosure, Plaintiffs and the West Virginia Class believed that Gore-Tex Fabric was environmentally sustainable when it is not.

710.    Gore's omissions, concealment, and/or misrepresentations alleged herein caused Plaintiffs and the other West Virginia Class members to make their Gore-Tex purchases. Plaintiffs were unaware of these material facts, and had Gore communicated these material facts to consumers, Plaintiffs and the other West Virginia Class members would not have purchased Gore-

Tex products or would not have purchased Gore-Tex products at the prices they paid. Accordingly, Plaintiffs and the other West Virginia Class members have suffered injury in fact, including lost money or property, as a result of Gore's misrepresentations and omissions.

711.    Accordingly, Gore is liable to Plaintiffs and the other West Virginia Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

712.    Gore's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and other West Virginia Class members' rights and the representations that Gore made to them, in order to enrich Gore. Gore's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the State Classes, respectfully request that the Court enter judgment in their favor and against Gore, as follows:

A.    Certification of the proposed State Law Classes, including appointment of Plaintiffs' counsel as Class Counsel;

B.    An order temporarily and permanently enjoining Gore from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged herein;

E.    Costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

F.    An order requiring Gore to pay both pre- and post-judgment interest on any amounts awarded;

G.    An award of costs and attorneys' fees; and

H.    Such other or further relief as may be appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.


DATED: June 17, 2025                Respectfully submitted,

*/s/ Zachary Krowitz*
Zachary Krowitz (MD SLN: 22370)
Brent W. Johnson*
Alison Deich*
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
zkrowitz@cohenmilstein.com
bjohnson@cohenmilstein.com
ADeich@cohenmilstein.com

Steve W. Berman*
Catherine Y.N. Gannon*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
catherineg@hbsslaw.com

Rebecca A. Peterson*
Krista K. Freier*
Catherine A. Peterson*
**GEORGE FELDMAN MCDONALD, PLLC**
1650 West 82nd Street, Suite 880
Bloomington, MN 55431
Telephone: (612) 778-9595
rpeterson@4-justice.com
kfreier@4-justice.com
cpeterson@4-justice.com

Lori G. Feldman\*
**GEORGE FELDMAN MCDONALD, PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9321
lfeldman@4-Justice.com

***Attorneys for Plaintiffs***

\**Pro hac vice* application to be filed