IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ·BRIAN WALTON ET AL., | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | * Civil No. 25-1948-BAH |
| ·W.L. GORE & ASSOCIATES, | * |
| Defendant. | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiffs Brian Walton ("Walton"), Bianca Johnston, Dionysios Tsirkas, Justin Charron, Lyle Liberman, Graham Hulsey, Ian Schaaf, Justin Collins, Joseph Contois, Adrian Washington, Michael Barnett, Scott B. Johnson, Richard Lee, Jonathan Kelcourse, Vincent Bozaan, A. Michael Kundu, Micah Mason, and Wesley Ornick (collectively "Plaintiffs"),[1] individually and on behalf of all others similar situated, brought suit against Defendant W.L. Gore & Associates ("Defendant" or "Gore") alleging that Gore's marketing and labeling related to the environmental sustainability of articles of clothing made with a certain laminate, GORE-TEX, were materially misleading in violation of the laws of 17 states[2] and the District of Columbia. ECF 12 (amended complaint).[3] Plaintiffs' complaint is nearly 200 pages in length and asserts 38 claims in total. *Id.* Pending

---

[1] Plaintiffs are residents of California, Connecticut, the District of Columbia ("D.C."), Florida, Illinois, Maryland, Minnesota, New York, Washington, and West Virginia. *See* ECF 12, at 3–4.

[2] Plaintiffs assert claims under the laws of California, Connecticut, Florida, Illinois, Maryland, Minnesota, New York, Washington, West Virginia, Georgia, Idaho, Maine, Massachusetts, New Hampshire, New Mexico, Pennsylvania, and Vermont. *See* ECF 12, at 6–9.

[3] The original complaint is docketed at ECF 1.

before the Court is Gore's motion to transfer the case to the United States District Court for the District of Delaware. ECF 16. Plaintiffs filed an opposition, ECF 18, and a notice of supplemental authority in further support of their opposition, ECF 20. Gore filed a reply, ECF 19, along with a request for a hearing, ECF 17. All filings include memoranda of law, and Plaintiffs' opposition includes several exhibits.[4] The Court has reviewed all relevant filings and finds that no hearing is necessary.[5] *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Gore's motion to transfer is **GRANTED**.

## I.    BACKGROUND

Gore is a global material sciences company that, among other things, produces GORE-TEX laminate. ECF 12, at 10, at 48 ¶ 123. GORE-TEX laminate is a "waterproof yet breathable material used in outdoor clothing and footwear." *Id.* It is comprised of fabrics laminated with expanded polytetrafluoroethylene ("ePTFE"). ECF 16-2 (declaration of Stephen C. Young),[6] at 1 ¶ 4. Gore is a Delaware corporation that maintains its principal place of business and headquarters in Newark, Delaware. ECF 12, at 48 ¶ 121; ECF 16-2, at 1 ¶ 3. Gore has "36 manufacturing plants in the United States, as well as facilities in the United Kingdom, Germany, the Netherlands, Japan, and China, with offices in over 25 countries around the world." ECF 12, at 48–49 ¶ 123.

Gore, through its various operating units, maintains a workforce of over 13,000 associates. ECF 16-2, at 2 ¶ 5. Gore's U.S. workforce is spread across the country, including in Delaware,

---

[4] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[5] Gore's request for a hearing, ECF 17, which Plaintiffs opposed, ECF 18, at 14, is thus denied.

[6] Young is Gore's Fabrics Operating Unit Sales Leader. ECF 16-2, at 1 ¶ 2. In that role, Young asserts that he is "responsible for setting the strategic framework" for Gore's "global sales teams to be most effective in meeting [Gore's] business goals, including the management" of the customer portfolio and key sales processes. *Id.*

Maryland, Arizona, and California. *Id.* 3,100 of Gore's associates sit in Maryland. *Id.* Gore's Fabrics Operating Unit team, which is responsible for the development, manufacturing, sales, and marketing of GORE-TEX laminates, sit (either physically or virtually) in nearly all its locations. *Id.* ¶ 6. That team is comprised of 1,850 associates worldwide, 730 of which are assigned to facilities in Maryland. *Id.* However, Gore's worldwide Fabrics Operating Unit Marketing team, the team which formulates and implements Gore's marketing strategy, predominantly sits in Europe. *Id.* ¶ 7. Team leadership sits in Germany, including the "leader of the GORE-TEX Ingredient Business Unit for brand and marketing worldwide." *Id.* The amended complaint quotes statements from several of those leaders. *See id.* at 3 ¶ 8; *e.g.*, ECF 12, at 85 ¶ 196.

Plaintiffs, who originate from multiple different states and D.C.,[7] claim they were misled by the marketing for, and labeling of, articles of clothing made with GORE-TEX laminate. *See, e.g.*, ECF 12, at 16 ¶¶ 9–10. In addition to statements made in its global marketing campaign, Plaintiffs aver that Gore communicates messages about environmental sustainability "at the point-of-sale" via "its distinctive 'Hang Tags,'" which "display the company's logo and are attached to all products made by Gore with GORE-TEX Fabric, as well as products produced by other garment manufacturers that incorporate GORE-TEX Fabric." *Id.* at 13 ¶ 5 (capitalization altered). Plaintiffs assert that the Hang Tags represent Gore as "[c]ommitted to sustainability," that GORE-TEX fabric is made with products that are "environmentally sound," and that GORE-TEX is "PFC* Free" and involves "no PFCs of Environmental Concern." *Id.* at 14–15 ¶ 7. The essence of Plaintiffs' claims is that these statements are misrepresentations because Gore uses ePTFE to make GORE-TEX, which "is a subcategory of PFAS" or "forever chemicals," "meaning they

---

[7] *See supra* note 1.

break down very slowly in nature and are potentially dangerous to human health" and to the environment. *Id.* at 15 ¶ 8.

Plaintiffs allege that, before buying garments containing GORE-TEX from third-party retailers, they "saw and [were] exposed to the Products' labeling at point-of-sale, which was similar to the Hang Tags described" in the amended complaint. *See, e.g.*, ECF 12, at 27 ¶ 33, at 28 ¶ 38, at 29 ¶ 43, at 30 ¶ 48, at 32 ¶ 54. Plaintiffs assert that "a substantial part of the events or omissions and misrepresentations giving rise to Plaintiffs' claims occurred in this District" and that Gore "marketed, advertised, and provided for sale the Gore-Tex Fabric Products within this District." *Id.* at 26 ¶ 29. However, Walton is the only named plaintiff who is a resident of Maryland and who alleges he bought GORE-TEX clothing in this District. *See id.* Thus, of all the named plaintiffs, Walton is the only one who reviewed Gore's alleged misrepresentations in Maryland. *Id.* ("Plaintiff Walton bought his Gore-Tex Fabric products in this District[.]").

Plaintiffs originally filed their class action complaint in the Eastern District of Washington. *See Micah Mason, et al. v. W.L. Gore & Associates*, No. 2:25-cv-00049 (E.D. Wash. closed June 18, 2025). Although the complaint there brought claims on behalf of a Maryland class, Walton was not a named plaintiff nor was he mentioned in the complaint. *Id.* at ECF 1. However, after Gore moved to transfer the action to Delaware and moved to dismiss the case, *id.* at ECF 16, Plaintiffs voluntarily dismissed the matter, *id.* at ECF 19, and filed this action in the District of Maryland on June 17, 2025, ECF 1. On July 24, 2025, the parties filed a stipulated proposed order permitting Plaintiffs to file an amended complaint, establishing a briefing schedule for Gore's motion to transfer and subsequent briefing, and extending time for Gore to respond to the complaint to within 21 days of an order denying a motion to transfer or 21 days after a judge is

assigned in the District of Delaware. ECF 9. The same day, the Court entered the proposed order and adopted the parties' briefing schedule. ECF 10.

In accordance with the stipulated schedule, Plaintiffs filed an amended complaint on August 8, 2025, ECF 12, and Gore filed a motion to transfer on August 29, 2025, ECF 16. That motion is now ripe for resolution.

## II.   **LEGAL STANDARD**

Gore brings its motion to transfer under 28 U.S.C. §§ 1406(a) and 1404(a). ECF 16, at 1. "[W]hile both § 1404 and § 1406 permit transfer, they are 'mutually exclusive.'" *Newbauer v. Jackson Hewitt Tax Serv. Inc.*, No. 2:18CV679, 2019 WL 1398172 (E.D. Va. Mar. 28, 2019) (quoting *Convergence Techs. (USA) LLC v. Microloops Corp.*, 711 F. Supp. 2d 626, 640 (E.D. Va. 2010)). Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). A § 1406(a) transfer is "based on improper venue" and applies when a case has been "filed in the wrong district and needs to be transferred." *Leonard v. Mylan, Inc.*, 718 F. Supp. 2d 741, 743–44 (S.D. W. Va. 2010); *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201 n.4 (4th Cir. 1993). Section 1404(a), on the other hand, authorizes a district court to transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought or to any district or division to which all parties have consented."[8] 28 U.S.C. §1404(a). "Section 1404(a) is generally reserved for cases that are filed in the proper district, but in which convenience dictates transfer to another district." *Leonard*, 718

---

[8] However, § 1404(d) prohibits transfers to the District Court of Guam, the District Court for the Northern Mariana Islands, or the District Court of the Virgin Islands under the section.

5

F. Supp. 2d at 743. "Each of these statutes carries its own consequences." *Id.*; *see also Lafferty v. St. Riel*, 495 F.3d 72, 76–77 (3d Cir. 2007) (outlining the "discretion, jurisdiction, and choice of law" distinctions between §§ 1404(a) and 1406(a)). However, "[t]he analysis of whether a transfer is 'in the interest of justice' is the same under section 1404(a) as it is under section 1406(a)." *Nichols*, 991 F.2d at 1201 n.5.

"In the Fourth Circuit, when a challenge to venue is raised, the plaintiff bears the burden of demonstrating that venue is appropriate." *Corporate Universe, Inc. v. Emry Capital Group, Inc.*, Civ. No. ELH-20-2925, 2021 WL 3603040, at *2 (D. Md. Aug. 12, 2021). "[I]n deciding a motion to transfer, the pleadings are not accepted as true, and the Court may consider evidence outside the pleadings, including affidavits and declarations."[9] *Newbauer*, 2019 WL 1398172, at *3 (citing *W. Ref. Yorktown, Inc. v. BP Corp. N. Am. Inc.*, 618 F. Supp. 2d 513, 516 (E.D. Va. 2009)).

"Determining proper venue is generally guided by 28 U.S.C. § 1391." *Leonard*, 718 F. Supp. 2d at 744. Section 1391 of Title 28 of the United States Code governs "the venue of all civil actions brought in district courts of the United States." 28 U.S.C. § 1391(a)(1). Under § 1391(b), a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

---

[9] However, to the extent the Court's conclusions related to venue turn on the issue of personal jurisdiction, the Court notes that when "a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Accordingly, "[i]n deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Id.*

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*Id.* § 1391(b)(1)–(3). "These three subsections are often referred to, respectively, as 'residential venue,' 'transactional venue,' and 'fallback venue.'" *Corporate Universe, Inc.*, 2021 WL 3603040, at *2 (quoting 14D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3804 (4th ed. 2021)). Section 1391(c) governs residency for purposes of the statute. In relevant part, it provides that "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).

## III.    ANALYSIS

The Court assesses Gore's challenge to venue under § 1406(a). To argue that venue in the District of Maryland is improper, Gore contends that each of the three avenues for establishing proper venue under § 1391(b) fail to reach this District. *See* ECF 16. The Court addresses each of those provisions in turn. Because the Court concludes that the District of Maryland is an improper venue for this action pursuant to that statute, and further that it does not have personal jurisdiction over Gore, it does not reach Gore's additional arguments for transfer under § 1404(a).[10]

---

[10] Plaintiffs direct the Court to supplemental authority, an order denying defendants' motion to transfer in *City & County of Butte Silver Bow v. 3M Company, et al.*, No. 2:25-cv-00036-BMM (D. Mont. Sept. 23, 2025). *See* ECF 20. However, that case involved the application of § 1404(a) and thus is not relevant to this Court's analysis under § 1406(a).

7

1.    Section 1391(b)(1)

Under § 1391(b)(1), a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Gore argues that under this subsection, "Delaware is the only proper venue" because "Delaware is where Gore resides." ECF 16-1, at 10. Gore, as a non-natural person and "entity with the capacity to sue and be sued in its common name under applicable law," is "deemed to reside" as a defendant under the venue statute "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Accordingly, the Court must determine whether Gore is subject to the District of Maryland's personal jurisdiction with respect to this action. *See id.*

"Absent consent, the exercise of personal jurisdiction must comport with the requirements of the Due Process Clause: valid service of process, 'as well as . . . minimum contacts with the forum so that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020) (internal quotation marks omitted) (quoting *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 228 (4th Cir. 2019)). "The nature and quantity of forum-state contacts required depends on whether the case involves the exercise of 'specific' or 'general' jurisdiction." *Id.* Moreover, "[u]nder Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law." *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). "Thus, for a [federal] district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.* (citing *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215

8

(4th Cir. 2001)); *see also Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Additionally, with respect to a class action and following the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court*, the "majority of federal courts to address [the] issue" have required that "each *named* plaintiff in a class action suit to demonstrate personal jurisdiction over a defendant." *Lincoln v. Ford Motor Co.*, Civ. No. JKB-19-2741, 2020 WL 5820985, at *4– 5 (D. Md. Sept. 29, 2020) (emphasis in original) (collecting cases).[11]

Maryland's long-arm statute is codified at Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 6-103(b). The statute "limits specific jurisdiction to cases where the cause of action 'aris[es] from any act enumerated in the statute itself.'" *Phillips v. Brit. Airways*, 743 F. Supp. 3d 702 (D. Md. 2024) (alteration in *Phillips*) (quoting CJP § 6-103(a)). Such acts include in relevant part transacting "any business . . . in the State," contracting "to supply goods, food, services, of manufactured products in the State," causing "tortious injury in the State by an act or omission in the State," and causing "tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of

---

[11] As Judge Bredar noted, *Bristol-Meyers* does not impact the analysis as it relates to *unnamed* plaintiffs in class actions. *Lincoln*, 2020 WL 5820985, at *4 ("Although federal courts regularly adjudicate class action suits featuring *unnamed* plaintiffs residing in many states, the U.S. Supreme Court's ruling in *Bristol-Myers* [], has prompted a growing number of courts to require each *named* plaintiff in a class action suit to establish personal jurisdiction over a defendant." (emphasis added)); *see also Vivar v. Apple Inc.*, Civ. No. 22-0347-VM, 2022 WL 4227309, at *4 (S.D.N.Y. Sept. 12, 2022) ("Although there has been some debate about whether *Bristol-Myers* applies to class actions, the Court has followed the 'overwhelming majority of federal courts [that] have held that Bristol-Myers applies to claims brought by named plaintiffs in class actions.'" (quoting *Pittman v. Chick-fil-A, Inc.*, Civ. No. 21-8041, 2022 WL 2967586, at *3 (S.D.N.Y. July 27, 2022)); *Goldstein v. Gen. Motors LLC*, 445 F. Supp. 3d 1000, 1011 (S.D. Cal. 2020) ("No circuit court has confronted this issue but the overwhelming majority of federal courts that have considered it, in this district and across the county, have held that *Bristol-Myers* applies to claims brought by named plaintiffs in class actions.").

conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." CJP § 6-103(b). "The Maryland courts have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution." *Carefirst of Md., Inc.*, 334 F.3d at 396 (citing *Mohamed v. Michael*, 370 A.2d 551, 553 (Md. 1977)). Thus, the "statutory inquiry merges with [the] constitutional inquiry."[12] *Id.* at 396–97.

### i. General Jurisdiction

"General jurisdiction permits the court to hear any and all claims against the defendant, regardless of where the claims arose or the plaintiff's citizenship." *Fidrych*, 952 F.3d at 131. General jurisdiction "may be exercised when the defendant has contacts with the forum jurisdiction that are 'so constant and pervasive as to render it essentially at home in the forum State.'" *Id.* at 131–32 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). "For a corporation, the paradigmatic jurisdictional forum is the corporation's place of incorporation and principal place of business." *Farrar v. McFarlane Aviation, Inc.*, 823 F. App'x 161, 165 (4th Cir. 2020) (citing *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017)). The Supreme Court has expressly rebutted the notion that a federal court can exercise general jurisdiction "in every State in which a corporation engages in a substantial, continuous, and systematic course of business." *Daimler AG*, 571 U.S. at 119 (citation omitted). "A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Id.* at 139

---

[12] Although "there may be cases in which the facts satisfy constitutional due process but do not satisfy Maryland's long-arm statute," the parties do not advance any such arguments here. *Dring v. Sullivan*, 423 F. Supp. 2d 540, 544–45 (D. Md. 2006) ("Courts that cite this 'merged into one' language typically do not discuss the long-arm statute, and instead proceed directly to the constitutional analysis.").

n.20. "However, 'in an exceptional case, a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State.'" *Id.* (internal quotation marks omitted) (quoting the same).

Gore argues that this is a paradigmatic case, not an exceptional one. *See* ECF 16-1, at 11–13. Plaintiffs respond that the complaint "alleges sufficient facts to show that Gore's continuous and systematic Maryland contacts uniquely rendered it 'at home' in Maryland and thus subject to general jurisdiction." ECF 18, at 5. Gore has the better argument.

As Chief Judge Russell has observed, the Supreme Court's decision in *Perkins v. Benguet Consolidated Mining Co.* exemplifies an "exceptional case." *Grabowski v. Northrop Grumman Sys. Corp.*, Civ. No. GLR-16-3492, 2017 WL 3190647, at *3 (D. Md. June 30, 2017) (citing 342 U.S. 437 (1952)). In *Perkins*, the Supreme Court held that general jurisdiction existed for a defendant corporation in Ohio where that corporation had relocated temporarily from the Philippines to Ohio during Japan's wartime occupation of the Philippines. *Id.* at 447–48. The relocation involved the president, general manager, and principal stockholder of the company returning to Ohio and maintaining an office there, carrying out business operations in and directing the corporation's activities from Ohio, and holding several directors' meetings. *See id.* On the contrary, the Supreme Court's more recent decision in *BNSF Railroad Co. v. Tyrrell* represents a non-exceptional case. 581 U.S. 402 (2017). There, the Supreme Court held that the corporate defendant was not "at home" in Montana where it was "not incorporated in Montana and [did] not maintain its principal place of business there," although it had "over 2,000 miles of railroad track and employ[ed] more than 2,000 workers in Montana." *Id.* at 405. As the Supreme Court explained, the "general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts" but rather "calls for an appraisal of a corporation's activities in their

11

entirety." *Id.* at 414 (quoting *Daimler*, 571 U.S. at 139–40 & n.20). "[I]n-state business . . . does not suffice to permit the assertion of general jurisdiction over claims . . . unrelated to any activity occurring in Montana." *Id.*

Applying those precedents, this Court rejected a plaintiff's attempt to "exercise general jurisdiction over Northrop Grumman," a company incorporated in Delaware and with its principal place of business in Virginia, even where one of Northrop Grumman's sector headquarters was in Maryland, along with 11,000 employees. *Grabowski v. Northrop Grumman Sys. Corp.*, Civ. No. GLR-16-3492, 2017 WL 3190647, at *3 (D. Md. June 30, 2017). "Maintaining a sector headquarters in Anne Arundel County with 11,000 employees" was "not 'so substantial and of such a nature' as to render Northrop Grumman at home in Maryland . . . when viewed against the backdrop of Northrop Grumman's 467 office locations and 65,000 employees worldwide—in addition to the other sector headquarters in California and Virginia." *Id.* (internal citation omitted); *see also Tyler-Simms v. Vineyard Vines Retail, LLC*, Civ. No. GJH-20-3081, 2021 WL 3080064, at *3 (D. Md. July 20, 2021) (holding no general jurisdiction where there was "some evidence that Vineyard Vines does conduct business in Maryland" but Vineyard Vines was "neither incorporated in Maryland nor does it have its principal place of business here").

Plaintiffs argue that "nearly all GORE-TEX Fabric is processed, developed, and manufactured here; thousands of employees work in Cecil County; and Gore has maintained decades-long engagement with Maryland regulators." ECF 18, at 8–9 (capitalization altered). While Gore does have those ties to Maryland, the "general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts" but rather "calls for an appraisal of a corporation's activities in their entirety." *BNSF Railroad Co.*, 581 U.S. at 414 (quoting *Daimler*, 571 U.S. at 139–40 & n.20). Gore is a Delaware corporation with its principal place of business

12

and headquarters in Delaware. ECF 12, at 48 ¶ 121. Gore operates in several states in addition to Maryland, including Delaware, Arizona, and California, and has facilities and sales offices in more than 25 countries. ECF 16-2, at 2 ¶ 5. 3,100 of its 13,000 associates sit in Maryland. *Id.* When Gore's Maryland operations are weighed against Gore's operations in their entirety, as they must be, *BNSF Ry. Co.*, 581 U.S. at 414, Plaintiffs do not persuade the Court that Gore's contacts with Maryland are so substantial as to "distinguish [Gore's] relationship with [Maryland] from its relationship" with other locations "where it does business but where it is not incorporated or headquartered." *Fidrych*, 952 F.3d at 134. Accordingly, the District of Maryland cannot exercise general jurisdiction over Gore.

### ii. Specific Jurisdiction

"If [a] defendant does not have sufficient contacts to be at home in the forum, the court may exercise specific jurisdiction if the defendant has continuous and systematic contacts with the forum state and the claims at issue arise from those contacts with the forum state." *Fidrych*, 952 F.3d at 132 (citing *Daimler AG*, 571 U.S. at 126–27). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co.*, 582 U.S. at 264. In *Bristol-Myers Squibb Co.*, for example, the Supreme Court considered whether more than 600 plaintiffs established specific jurisdiction over defendant Bristol–Myers Squibb in California state court alleging a variety of state-law claims arising out of injuries allegedly caused by a drug made by the defendant. *Id.* at 258. The California Supreme Court had held that the California courts could exercise specific jurisdiction over Bristol-Myers Squibb with respect to the nonresident plaintiffs' claims, but the United States Supreme Court reversed. *Id.* In so holding, the Court reasoned that "[t]he mere fact that *other* plaintiffs" had been able to establish personal jurisdiction because they were prescribed, obtained, or had ingested the drug at issue in California did not allow the State to assert specific jurisdiction over the

13

nonresidents' claims." *Id.* at 265 (emphasis added). Accordingly, each named Plaintiff in this class action must assert a claim over which this Court can exercise specific jurisdiction. *See Lincoln*, 2020 WL 5820985, at *4–5.

"The Fourth Circuit has formulated a three-part test for use in determining whether there is specific jurisdiction over a defendant. The three prongs are: '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Jones v. Mutal of Omaha Ins. Co.*, 639 F. Supp. 3d 537, 549 (D. Md. 2022) (internal quotation marks omitted) (quoting *Consulting Eng'rs*, 561 F.3d at 278). "All three prongs must support the exercise of jurisdiction." *DeBellis v. Woodit*, 728 F. Supp. 3d 330, 341 (D. Md. 2024). However, the "analysis is not mechanical, [and] a court must weigh the totality of the facts before it." *Id.* (internal quotation marks omitted) (quoting *Perdue Foods LLC*, 814 F.3d at 189). Here, the parties primarily dispute the second prong. Gore concedes that Walton, the only Maryland Plaintiff, can establish specific jurisdiction, ECF 16-1, at 12–14, but Gore argues that the non-Maryland Plaintiffs identify no connection between this forum and their claims, *id.* at 13–14. Plaintiffs argue that their claims "are squarely rooted in Gore's Maryland operations—its PFAS-laden manufacturing practices, product development, and marketing." ECF 18, at 10.

As an initial matter, the Court agrees that the first prong's application is uncontroversial here. That element of specific jurisdiction "articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Consulting Eng'rs*, 561 F.3d at 278. While the prong is "not susceptible of mechanical application, courts have considered various

14

nonexclusive factors in seeking to resolve whether a defendant has engaged in such purposeful availment." *Id.* (internal citation omitted). Such factors include, but are not limited to, "whether the defendant maintains offices or agents," "owns property," and engages in business activities in the forum state. *See id.*; *see also Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 560 (4th Cir. 2014). Here, the first prong is easily met. Gore employs thousands of employees in Maryland and maintains several industrial manufacturing properties in Elkton, Maryland. *See* ECF 12, at 18–19 ¶ 16; ECF 16-2, at 2 ¶ 5. *Cf. Fennell v. Innovative Mgmt. Concepts, Inc.*, Civ. No. 25-1062-TDC, 2025 WL 3034094, at *4 (D. Md. Oct. 30, 2025) (noting that defendant's involvement in two federal contracts involving work in Maryland could constitute purposeful availment). Accordingly, the Court is satisfied that Gore would not be hailed into litigation in this District "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)).

Though Gore's contacts may constitute purposeful availment, that does not necessarily mean such contacts support specific jurisdiction if Plaintiffs' claims do not relate to or "arise out of those activities directed at the State," which is the second prong of the test. *Fennell*, 2025 WL 3034094, at *4 (quoting *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016)). The Supreme Court recently interpreted the requirement that a claim "arise out of or relate to" a defendant's contacts with the forum in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021). The Court explained that the standard "contemplates that some relationships will support jurisdiction without a causal showing." *Bradley v. DentalPlans.com.*, 617 F. Supp. 3d 326, 336 (D. Md. 2022) (quoting *Ford Motor Co.*, 592 U.S. at 362). Thus, "[a] plaintiff may satisfy the nexus requirement by showing that the suit *either* 'arises out of' *or* 'relates to' the

15

defendant's contacts with the forum." *Id.* (emphasis in original). However, "while the phrase 'relates to' is clearly more encompassing than a causal nexus, 'that does not mean anything goes,' and the Supreme Court cautioned that the phrase 'relate to' has 'real limits' in order to 'adequately protect defendants foreign to a forum.'" *DeBellis*, 728 F. Supp. 3d at 342 (quoting *Ford Motor Co.*, 592 U.S. at 362). Accordingly, in *Bristol-Myers Squibb Co.*, although the prescription drug at issue had been sold in California, the Supreme Court held that the non-resident plaintiffs still "[did] not claim to have suffered harm" in California. 582 U.S. at 267. Thus, the Court held, the plaintiffs failed to establish a sufficient nexus between their claims against a non-resident prescription manufacturer defendant when their claims were based solely on the manufacturer's operation of California laboratories and a relatively small sale percentage in California. *Id.*

Plaintiffs here, who originate from multiple states and D.C., bring 38 counts against a non-resident corporation, Gore, under the laws of 17 states and D.C. *See* ECF 12, at 6–9. Those counts include claims of fraudulent concealment, false advertising, unfair competition and trade, and consumer protection violations.[13] *See id.* For every named Plaintiff except Walton, this Court is

---

[13] The counts asserted under California law, which are the most numerous in the amended complaint as compared to other states, offer a representative example. The "[c]laims brought on behalf of the California Class" include Counts III through VI. *See* ECF 12, at 114–21. Count III of the amended complaint asserts a violation of the California Consumers Legal Remedies Act. *Id.* at 114–16. Plaintiffs allege that Gore violated the California law by "marketing" GORE-TEX "as an environmentally sustainable product" while "failing to disclose" that GORE-TEX "is a fundamentally unsustainable product and toxic to the environment," that the "PFC* Free Laminate label misconstrues the common definition of PFC by unilaterally excluding ePTFE and PTFE," that Gore "currently uses PFAS to manufacture its PFC* Free products," and Gore's "continuing violations of federal guidance on environmental marketing claims," among other things. *Id.* at 115 ¶ 260. Count IV asserts a claim for violation of California's false advertising law, stating that "[i]n purchasing GORE-TEX Fabric products, Plaintiffs and the other California Class members saw and were exposed to the omissions and/or misrepresentations of Gore with respect to environmental sustainability of GORE-TEX Fabric," primarily because "Gore's manufacturing processes are environmentally devastating." *Id.* at 117 ¶ 272 (capitalization altered). Count V, brought under California's unfair competition law, similarly alleges that "Gore intentionally

asked to "entertain claims involving no in-state injury and no injury to residents of the forum State." *DeBellis*, 728 F. Supp. 3d at 343 (quoting *Bristol-Myers Squibb Co.*, 582 U.S. at 267). For example, Plaintiff Justin Charron, "at all times relevant hereto, was a citizen of the State of Connecticut and resided in Tolland, Connecticut when he made his GORE-TEX Fabric purchases," and "purchased a hard shell jacket with GORE-TEX Fabric from REI in West Hartfield, Connecticut in approximately 2018" and "shoes with GORE-TEX Fabric from Merrell in Ma[]shantucket, Connecticut in approximately 2019." ECF 12, at 30 ¶ 45 (alteration added). While the GORE-TEX products purchased may have been "made in Maryland by Gore via its

---

concealed and suppressed material facts regarding its GORE-TEX Fabric" from consumers, including that:

> (i) Gore continues to manufacture its ePFTE membrane using PFAS, an extremely harmful "forever chemical" resistant to degradation even while claiming its products are "environmentally sound" and that Gore is highly committed to "environmental sustainability"; (ii) GORE-TEX Fabric PFC Free Laminate is regularly treated with a DWR waterproofing treatment that still contains PFAS; and (iii) that GORE-TEX Fabric sheds PFAS via ordinary use.

*Id.* at 118 ¶ 279 (capitalization altered). Likewise, the fraudulent concealment claim in Count VI avers that Gore "actively conceals from consumers the following with its Common Omissions and Misrepresentations:"

> (1) Gore continues to this day to use PFAS as part of its manufacturing of ePTFE; (2) Gore's manufacturing process for ePTFE has contaminated the land and waterways near Gore's manufacturing facilities in Maryland with extremely high levels of PFAS so the manufacturing of GORE-TEX products is not "environmentally sound" or made with a goal to "protect the environment" or "the planet and the people"; (3) GORE-TEX Fabric sheds PFAS via ordinary use, so outdoor enthusiasts, as well as those simply wearing GORE-TEX Fabric to keep dry, are inadvertently contaminating the environment areas and their water supply when they venture out in their GORE-TEX gear; (4) Gore uses the term "PFC" without also explaining that Gore's definition intentionally excludes ePTFE and materially differs from the standard definition typically used by academics, regulators, and consumers; and (5) Gore's direct-to-consumer sales website confuses consumers by using terms like PFAS, PFC, and PFC* interchangeably.

*Id.* at 120 ¶ 287 (capitalization altered).

ePTFE membrane manufacturing process" and/or "treated with DWR coating in Maryland," the injury relevant to the claims alleged—the misrepresentations allegedly made by Gore, largely including Plaintiffs' viewing of "the Products' labeling at point-of-sale, like the Hang Tags"—occurred in the states in which the non-Maryland Plaintiffs reside. *Id.* at 30 ¶¶ 45–48.

Plaintiffs argue that "Gore cannot seriously dispute that the manufacturing of GORE-TEX Fabric takes place in [Maryland]." ECF 18, at 12. That may be true, but it does not alter the Court's conclusion. No Plaintiff claims that there is a defect in their garment or the GORE-TEX fabric, nor do they claim to suffer any personal injury from the garment itself. Rather, Plaintiffs allege an economic injury based on having been misled by the Hang Tag and other statements, which all Plaintiffs but one allegedly encountered in their home states. *See, e.g.,* ECF 12 at 30 ¶¶ 45–48. "The nature of the underlying contacts and claim can be important to the establishment of a jurisdictional nexus." *DeBellis,* 728 F. Supp. 3d at 344 (citing *dmarcian, Inc. v. dmarcian Eur. BV,* 60 F.4th 119, 134 (4th Cir. 2023)). "For instance, courts are less likely to find a jurisdictional nexus when a plaintiff brings claims sounding in tort by pointing to contacts that are purely contractual in nature." *Id.* (first citing *Hardnett v. Duquesne Univ.,* 897 F. Supp. 920, 923 (D. Md. 1995); and then citing *Gatekeeper Inc. v. Stratech Sys., Ltd.,* 718 F. Supp. 2d 664, 668 (E.D. Va. 2010)). Here, Plaintiffs point to contacts primarily related to manufacturing to support the Court's assertion of specific jurisdiction related to advertising and labeling claims, thus minimizing the persuasive value of those contacts.

Neither have Plaintiffs persuaded the Court that the decisions related to GORE-TEX's marketing and advertising were made in Maryland. Stephen C. Young, the Fabrics Operating Unit Sales leader at Gore, asserts that less than half of Gore's "Fabrics Operating Unit team, which is responsible for the development, manufacturing, sales, and marketing of GORE-TEX laminates"

18

are "assigned to facilities in Maryland." ECF 16-2, at 2 ¶ 6. Moreover, several leaders of Gore's Fabrics Operating Unit team whose statements are referenced in the complaint sit in Germany, not Maryland. *Id.* at 3 ¶ 8; EC 12, at 84–85 ¶¶ 195–96. Although Plaintiffs cite and attach to their opposition a declaration from Young that supported the prior motion filed in the Eastern District of Washington, the Court does not read Young's statements to show that Gore's marketing decisions are made in Maryland, but rather that *associates* on the team also work in what Young calls the "Eastern Cluster," or Delaware and Maryland. *See* ECF 18-2, at 4–5 ¶¶ 11–12; ECF 18-5, at 9.

Plaintiffs point out that Gore "did not contest venue for the multiple lawsuits it is currently defending in this District, which all allege that Gore knowingly polluted Cecil County and the State of Maryland with egregious levels of PFAS when it used PTFE to manufacture GORE-TEX Fabric." ECF 18, at 6 (citing *Maryland v. W. L. Gore & Associates, Inc.*, Civ. No. RDB-24-03656; *Martin, et al. v. W. L. Gore & Associates, Inc.*, Civ. No. SAG-24-03549; *Wolf, et al. v. W. L. Gore & Associates, Inc.*, No. MJM-23-00280). However, those other suits arise out of claims that Gore polluted part of Maryland through its manufacturing at the Cherry Hill Facility. The Court is likely able to assert specific jurisdiction over Gore in those matters because the "claims at issue *arise from*" Gore's "continuous and systematic contacts with the forum state." *Fidrych*, 952 F.3d at 132 (emphasis added) (citing *Daimler AG*, 571 U.S. at 126–27). The same is not true here.

Ultimately, this case involves primarily non-resident Plaintiffs suing a non-resident defendant in Maryland based upon transactions and alleged tortious actions that, for the majority of the named Plaintiffs, did not occur in Maryland. *Cf. DeBellis*, 728 F. Supp. 3d at 346. The non-Maryland Plaintiffs have failed to prove a prima facie basis for the Court's exercise of specific jurisdiction over Gore because the non-resident Plaintiffs have not alleged facts that, if true, would

19

establish a sufficiently related nexus between Plaintiffs' claims against Gore and Gore's contacts with Maryland. Accordingly, § 1391(b)(1) does not support the District of Maryland as the proper venue for this class action.

### 2. Section 1391(b)(2)

Under § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). "In determining whether a substantial part of the events occurred in a state, the Court should review 'the entire sequence of events underlying the claim.'" *Laios v. MTM Builder/Dev., Inc.*, Civ. No. GJH-20-3337, 2021 WL 4478712, at *5 (D. Md. Sept. 30, 2021) (quoting *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)). "This standard does not require that 'a majority of the events occurred in the district where suit is filed, that the events in that district predominate, or that the chosen district is the best venue.'" *Id.* (quoting *Seidel v. Kirby*, 296 F. Supp. 3d 745, 752 (D. Md. 2017)). Rather, "Plaintiffs must merely 'show that a substantial part of the events giving rise to their claims occurred in the chosen district.'" *Id.* (quoting the same). The statute's use of the word "substantial," rather than "any," is important as "[e]vents that relate only tangentially to the claim cannot constitute a 'substantial part of the events or omissions giving rise to the claim'; indeed, strictly speaking, they do not 'give rise to' the claim at all." *MTGLQ Invs., L.P. v. Guire*, 286 F. Supp. 2d 561, 565 (D. Md. 2003).

Gore argues that venue is improper under § 1391(b)(2) because "Plaintiffs' claims are based on their alleged reliance on Gore hang tags before buying products containing GORE-TEX," and Plaintiffs "do not allege a *single* fact connecting any hang tag to Maryland." ECF 16-1, at 15 (emphasis in original). Plaintiffs respond that the sequence giving rise to their claims "is centered in Maryland." ECF 18, at 12. Gore's arguments prevail here as well.

20

"For claims sounding in tort, courts typically 'focus on where the allegedly tortious actions took place and where the harms were felt.'" *Nabong v. Paddayuman*, 289 F. Supp. 3d 131, 134 (D.D.C. 2018) (quoting 14D Charles Alan Wright et al., Federal Practice and Procedure § 3806 (4th ed. 2017)); *see also Cranford v. Tennessee Steel Haulers, Inc.*, Civ. No. ELH-17-2768, 2018 WL 3496428, at *9 (D. Md. July 20, 2018) ("When considering transactional venue for torts cases, courts will generally consider both where the activities arose *and* where the harm was felt." (quoting *Seidel v. Kirby*, 296 F. Supp. 3d 745, 752 (D. Md. 2017))). With the exception of Walton's allegations, the unlawful conduct alleged—the purportedly misrepresentative advertising and labeling—was carried out and had its effect in states other than Maryland, where the additional named Plaintiffs purchased and received the clothing and tags. *See, e.g.*, ECF 12, at 28 ¶ 38 ("Before buying the Products, Plaintiff Johnston saw and was exposed to the Products' labeling *at point-of-sale*[.]" (emphasis added)); *see also id.* at 84 ¶ 195 ("In a *global* marketing campaign, Defendant emphasized its focus on sustainability through a new line of high-performance apparel." (emphasis added)).

Where fraudulent misrepresentation claims are involved, federal courts have before held that particular communications made to or from a district that form the basis of the claims render venue in that district proper. *See Nabong*, 289 F. Supp. 3d at 136; *McQueen v. Woodstream Corp.*, 244 F.R.D. 26 (D.D.C. 2007); *cf. Citadel Group Ltd. v. Wash. Regional Medical Ctr.*, 2008 WL 5423553, *3 (N.D. Ill. 2008) ("Where the underlying events are essentially communications made by two parties located in separate districts, '[t]he requirements of § 1391(a)(2) may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action.'" (citation omitted)).

21

However, in those cases, defendants specifically transmitted targeted communications from the district to an individual. *See id.*

Here, Maryland is the point of manufacture for some of Gore's products, including GORE-TEX, but Plaintiffs do not allege that the Hang Tags, which are affixed to the products and were the primary point of contact between Gore's communications and the named Plaintiffs, were manufactured in Maryland or transmitted from Maryland directly to Plaintiffs. *See generally* ECF 12. Young's declaration from the Eastern District of Washington indicating that the Gore team responsible for the development and manufacture of Hang Tags have "contributing associates in the Eastern Cluster," ECF 18-2, at 5 ¶ 13, does not meaningfully shift the Court's analysis, because the unquantified contributions of unidentified associates do not constitute a "substantial part" of the "events or omissions giving rise" to the claims alleged. *Cf. Mitrano v. Hawes*, 377 F.3d 402, 405–06 (4th Cir. 2004) (concluding that the act "allegedly creat[ing]" a party's "*entitlement*" to the payment they sought was "substantial" for purposes of § 1391(b)(2) (emphasis added)). "The facts as currently pled are not 'sufficiently substantial' to support a finding that the District of Maryland is a proper venue for this suit." *Attkisson v. Rosenstein*, Civ. No. RDB-20-0068, 2021 WL 978821 (D. Md. Mar. 16, 2021) (quoting *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)).

Instructive is a Southern District of Texas case that considered venue where plaintiffs, a group of moving truck drivers, brought claims arising out of misrepresentations allegedly made by an out-of-state creditor. *Garcia v. Peterson*, 319 F. Supp. 3d 863 (S.D. Tex. 2018). There, the Court noted that "[w]ith regard to § 1391(b)(2), there [were] substantial allegations of alleged misrepresentations in this district." *Id.* at 877. "But, § 1391(b)(2) permits venue in 'a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred,'

22

and there [were] not allegations of alleged misrepresentations made to each plaintiff by the defendants in this district." *Id.* "Thus, the plaintiffs ha[d] not shown that venue [wa]s proper with regard to the claims of non-Texas plaintiffs under § 1391(b)(2)." *Id.* So too here. The amended complaint does not contain allegations of misrepresentations made to *each* named Plaintiff by Gore *in this* District. Accordingly, § 1391(b)(2) does not provide a basis for venue in the District of Maryland.

### 3.    Section 1391(b)(3)

"The first two paragraphs of § 1391(b) define the preferred judicial districts for venue in a typical case, but the third paragraph provides a fallback option[.]" *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 56 (2013). "[I]f there is no district in which an action may otherwise be brought as provided in this section," the civil action may be brought in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3). The Court agrees that § 1391(b)(3) is not applicable to this action because there is at least one other district in which this action could have been brought. *See* ECF 12, at 48 ¶ 121 ("Defendant W.L. Gore & Associates is a Delaware corporation, with its principal place of business and headquarters at 555 Paper Mill Road, Newark, Delaware 19711."); *Orbita Telecom SAC v. Juvare LLC*, 606 F. Supp. 3d 240, 250 (D. Md. 2022) ("The 'paradigm forums where corporations are fairly regarded as at home are the forums where it is incorporated and where it has its principal place of business.'" (quoting *Fidrych*, 952 F.3d at 132)). Consequently, § 1391(b)(3) does not transform the District of Maryland into a proper venue for this action.

### 4.    Transfer

If the Court finds that venue is improper under § 1406(a), it must "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been

23

brought." 28 U.S.C. § 1406(a). "When venue is improper in this district, the Court will ordinarily transfer the action rather than dismiss it." *Sewell v. Commodity Futures Trading Comm'n*, Civ. No. PX 16-2457, 2017 WL 1196614 (D. Md. Mar. 31, 2017), *aff'd*, 709 F. App'x 231 (4th Cir. 2018); *see also Corporate Universe, Inc.*, 2021 WL 3603040, at *2 ("Courts generally favor transfer over dismissal unless 'plaintiff is harassing the defendants or acting in bad faith or forum. shopping.'" (quoting *Ademiluyi v. Nat'l Bar Ass'n*, Civ. No. GJH-15-02947, 2016 WL 4705536, at *3 (D. Md. Sept. 8, 2016))).

As Gore observes, it is clear that Gore resides and is at home in Delaware for the purposes of both venue under 28 U.S.C. § 1391(b)(1) and personal jurisdiction. *See* ECF 12, at 48 ¶ 121 ("Defendant W.L. Gore & Associates is a Delaware corporation, with its principal place of business and headquarters at 555 Paper Mill Road, Newark, Delaware 19711."); *Orbita Telecom SAC v. Juvare LLC*, 606 F. Supp. 3d 240, 250 (D. Md. 2022) ("The 'paradigm forums where corporations are fairly regarded as at home are the forums where it is incorporated and where it has its principal place of business.'" (quoting *Fidrych*, 952 F.3d at 132)). Thus, Plaintiffs could have brought this action in the District of Delaware. Accordingly, the Court will grant Gore's motion to transfer the case to the District of Delaware under 28 U.S.C. § 1404(a).

## IV.   **CONCLUSION**

For the foregoing reasons, Gore's motion to transfer is granted. A separate implementing order will issue.

Dated: <u>March 23, 2026</u>                                    <u>         /s/         </u>
                                                         Brendan A. Hurson
                                                         United States District Judge